**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
       lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
5805 Sepulveda Blvd. #801
Sherman Oaks, CA 91403
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICK CHEN, individually and on behalf of all others similarly situated,<br><br>                               Plaintiff,<br>   v.<br><br> VESYNC CORPORATION,<br><br>                          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Rick Chen ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Vesync Corporation ("Defendant" or "Vesync").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is an action arising from the false and misleading representations that Defendant made for years about its Levoit-brand EverestAir Smart True HEPA, and Core 300 and Core 300S True HEPA air purifiers (the "Air Purifiers"), along with their respective replacement filters (collectively, the "Products").

2.      Specifically, Defendant represented that the Air Purifiers are equipped with High Efficiency Particulate Air (HEPA) filters when in fact they were not.  Defendant also represented that the replacement filters it sells for the Air Purifiers are "H13 True HEPA" filters, when in fact they were not.

3.      Independent testing by Plaintiff's counsel, and testing commissioned by Dyson, Inc. ("Dyson") as part of a challenge brought through the National Advertising Division of the Better Business Bureau (NAD), has shown that the replacement filters and the filters inside the Products do not meet HEPA standards.

4.      Reasonable consumers have had no opportunity to find this out for themselves because they cannot conduct HEPA standard testing.

5.      Defendant knew this but continued hocking its wares, making a killing selling the Air Purifiers *and* replacement filters since the outset of the COVID-19 pandemic.  Defendant claims on its Products' packaging that it is the "#1 Best Selling Air Purifier Brand in the US." There is good reason to believe Defendant, as its Core 300 and 300S Air Purifiers do tens of millions of dollars a month in sales on Amazon.com alone.

6.      In response to the NAD challenge brought by Dyson, Vesync has agreed to remove its false and misleading representations about HEPA-quality filtration from the product pages and packaging of its Products.  However, this attempt at remediation is a day late and a dollar short.

Defendant has profited greatly from the explosion in the air purifier market brought about by the ongoing COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires which have ravaged the United States.  Consumers are rightfully concerned about maintaining indoor spaces which are free of harmful pathogens and contaminants.  As a result, a large portion of Defendant's gargantuan profits are attributable to the HEPA filtration claims that it falsely made about its Products.

7.      Defendant's false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Products.  Had Plaintiff and all other similarly situated consumers known that, contrary to Defendant's knowing representations, the Products did not have HEPA-grade filtration, they would have paid less for the Products or not purchased them at all.

8.      Plaintiff asserts claims on behalf of himself and all other similarly situated purchasers of Defendant's Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; and (iv) fraud.

## PARTIES

9.      Plaintiff Rick Chen is a citizen of California, and resides in the city of San Francisco, California.  While in California, Plaintiff Chen purchased the Levoit Core 300 True HEPA Filter Air Purifier from Defendant's Amazon store webpage on September 27, 2020 for $99.99.  Plaintiff purchased another Core 300 Air Purifier ($99.99) along with a "H13 True HEPA" replacement filter ($23.99) from Amazon on December 31, 2020.  Plaintiff Chen reviewed and relied on Defendant's warranties and representations about the Product's HEPA-grade filtration capabilities prior to purchasing the Products.  Plaintiff Chen reasonably relied on Defendant's representations and believed that the Air Purifiers would filter contaminants at or above the HEPA standard.  Had Defendant not warranted and represented that the Products were capable of HEPA-grade filtration, Plaintiff Chen would not have purchased the Product or would have paid substantially less for it.

10.      Defendant Vesync Corporation is a California corporation with headquarters in Anaheim, California.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. §

1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a)

there are 100 or more members in the proposed classes; (b) some members of the proposed classes

have a different citizenship from Defendant; and (c) the claims of the proposed class members

exceed the sum or value of five million dollars ($5,000,000) in aggregate. See 28 U.S.C. §

1332(d)(2) and (6).

12.     This Court has personal jurisdiction over Defendant because Defendant was formed

under the laws of California and has its principal place of business in Anaheim, California.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts

significant business within this District, at least one Plaintiff resides within this District, and a

substantial part of the events giving rise to Plaintiff's claims took place within this District.

**FACTUAL ALLEGATIONS**

**A.     Air Purifiers And The Air Purifier Market**

14.     The Environmental Protection Agency estimates that "about 67 million tons of

pollution were emitted into the atmosphere in the United States" in 2021 alone.  This pollution

comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000

premature deaths in the United States each year."  Exposure to air particulates has also been linked

to symptoms of depression, cognitive decline, and increased feelings of anxiety.

15.     Air pollution can also be a visceral reminder of human-driven climate change: the

smoke from wildfires which have raged across both coasts of the United States since 2020 has

quite literally blocked out the sun and forced millions of people indoors.  For many, the smoke has

exacerbated health conditions such as asthma or emphysema.

16.     As a result, public concern about air pollution is high.  In fact, one 2019 survey

found that, of about 1000 responses, 43% of respondents indicated that they had a "great deal" of

concern about air pollution in the United States and 31% indicated that they had a "fair amount" of

concern for air pollution.  Taken together, 74% of respondents expressed concern about air

pollution.  This is in line with the EPA's concerns – the agency places indoor air pollution among the top five environmental health risks.

17.     Concern about air quality would skyrocket in 2020, however, as wildfires intensified and the airborne COVID-19 virus shut down the globe.

18.     As expected, consumer concern over airborne contaminants has helped the air purifiers market explode, from $8.05 billion in 2019 to $13.97 billion in 2022: "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination.  Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."

19.     Air purifiers come in various forms.  Among the most effective purifiers are those with HEPA filters.  HEPA is an acronym for "High Efficiency Particulate Air."  HEPA filters are strictly designed and must adhere to certain specifications in order to be called a HEPA filter.

20.     Specifically, a HEPA filter is a type of pleated mechanical filter which typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by aluminum separators.  To be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns.  0.3 microns is not the floor, however, it is the size at which a particle is most likely to escape from the filter.  Particles bigger or smaller than 0.3 microns have a greater than 99.97% chance of being caught in a HEPA filter.

//
//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10



11    21.    Thus, for example, even though the SARS-CoV-2 virus is about 0.125 microns in

12  diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including

13  viruses, in a home or confined space."

14    22.    The reason why consumers may care that the air purifier they purchase meets the

15  HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne

16  pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter

17  out pollution caused from events like wildfires, which are growing ever more frequent.

18    23.    Consumers, especially those with pre-existing conditions, want the assurance that

19  the HEPA standard provides, and are willing to pay more for filters which meet or exceed the

20  99.97% efficiency HEPA standard.  A 2020 study by Molekule, Inc. (makers of a competing air

21  purifier) confirms this: 77% of respondents were willing to pay more for an air purifier that

22  removes viruses.

23    24.    Being able to make a 99.97% filtration claim is thus a huge boon for manufacturers,

24  and they know it.  The HEPA standard claim is a signal to consumers that the product they are

25  purchasing has been constructed to exacting standards and is able to provide superlative levels of

26  filtration.

27    25.    Until at least August 4, 2023, Defendant's Products and replacement filters had not

28  ever met the HEPA standard.

26.     Despite this, Defendant has willfully plastered references to HEPA-grade filtration all over its Products' marketing and labeling in order to deceive customers into purchasing the Air Purifiers and replacement filters.

**B.     Defendant's Products And Advertising**

27.     At issue in this action are two models of air purifier: the Levoit EverestAir Smart True HEPA air purifier, and the Levoit Core 300 and 300S True HEPA air purifiers.

28.     The EverestAir is a slab-shaped device which accepts a rectangular filter.  It retails for $499.99.  The Core 300 Series purifier is a cylindrical device which accepts a circular filter. They retail for between $99.99 and $149.99.

 

29.     Defendant crafted unique false and misleading HEPA representations for each of these products.

30.     For instance, Defendant made the following express representations in the advertising for its EverestAir Air Purifier:

    a.   Levoit EverestAir® Smart True HEPA Air Purifier.

    b.   To be considered True HEPA by US standards, the HEPA filter must trap at least 99.97% of 0.3-micron airborne particles. The EverestAir achieves this high standard of excellence, trapping fine dust, pollen, smoke particles, and pet dander, keeping your air as clean as possible.

    c.   H13 True HEPA Filtration Traps at least 99.97% of 0.3-micron airborne particles.

    d.   H13 True HEPA Filter with HEPASmart™ Technology Enhanced with statically charged fibers to trap at least 99.97% of 0.3-micron airborne particles, such as fine dust, smoke particles, pollen, and pet dander.

    e.   H13 True HEPA Filter Captures 99.99% of Particles, Pet Allergies, Smoke, Dust

    f.   ANTI-ALLERGENS & ODORS: Premium 3-stage filtration includes a Washable Pre-Filter, H13 True HEPA Filter, and High-Efficiency Activated Carbon Filter. Trap at least 99.97% of 0.3-micron airborne particles, as well as odors, VOCs, fumes, and smoke.

    g.   The EverestAir provides premium filtration, trapping at least 99.97% of 0.3-micron airborne particles

    h.   H13 True HEPA Filter with HEPASmart Technology. Enhanced with statically charged fibers to trap fine dust, smoke particles, pollen, and pet dander, as well as bacteria, mold, and viruses*. *Testing Report No. 220614240GZU-001.

31.    As to the Core 300 and Core 300S, Defendant has made the following express representations:

    a.   Levoit Core 300 True HEPA Air Purifier.

    b.   Breathe in clean air with every breath using the Levoit Smart True HEPA Air Purifier.

    c.   [Includes a] H13 True HEPA Filter.

    d.   HEPASmart™ Technology enhances the H13 True HEPA filtration by capturing 99.99% of bacteria and mold, as well as 99.9% of viruses*.

    e.   Remove 99.97% Dust Smoke Mold Pollen, Core 300.

    f.   The H13 True HEPA Filter works alongside the Pre-Filter and High-Efficiency Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in size, such as dust, smoke, pollen, odor.

    g.   High Filtration ≥ 99.97%* *Filters at least 99.97% of 0.3-micron airborne particles.

    h.   Levoit Core 300 True HEPA 3-Stage Original Filter.

    i.   Fill your environment with fresh, clean air using Levoit's Core 300-RF 3-Stage Original Filter. An effective 3-stage filtration system captures at least 99.97% of airborne particles 0.3 microns in size, so your surrounding air is free of harmful contaminants.

32.    Defendant has conveniently scrubbed the products pages for each of these Purifiers of any reference to HEPA, after the NAD investigation spurred by Dyson's testing forced Vesync to remove false and misleading representations.  In fact, on July 23, 2023 Vesync removed the old product page for its Core 300 series Air Purifiers and uploaded a new one with a unique web address.[1]  The old webpage described the Core 300S as the "Levoit Core 300S Smart True HEPA Air Purifier."  The new webpage omitted any and all references to HEPA filtration.

---

[1] The product webpage changed from https://levoit.com/products/core-300s-smart-true-hepa-air-purifier to https://levoit.com/products/core-300s-smart-air-purifier.

33.     The changes to representations made about the Products were not constrained to

Defendant's website either.  Defendant has attempted to scrub reference to HEPA filtration from

all online store fronts where the Air Purifiers are sold.  However, this was only partially successful.

Some webpages were missed entirely and in others there are still misleading references to HEPA

filtration.  For instance, the Products can still be found in the "HEPA Air Purifiers" section of

Amazon.com.

34.     The following diagram is representative of the type of HEPA representations that

consumers interested in the Core 300/300S series of Air purifiers would encounter before the pages

were scrubbed:



//

//

//

//

//

//

//

35. Consumers interested in the EverestAir Purifier would encounter advertising such as this:



36. With both Products, Defendant makes the same implied representation: that the filters used in the EverestAir and Core 300/300S Air Purifiers had been tested and performed at or above the "HEPA" standards for filtration. In reality, they had not.

**C.    Defendant's Products Are Challenged And Fail To Meet HEPA Standards**

37. On August 4, 2023 the National Advertising Division released its "FINAL DECISION" on Case #7222 (the "Decision"), Dyson's challenge to Vesync's express and implied claims regarding the filtration capabilities of its EverestAir and Core 300 and Core 300S Smart True HEPA Air Purifiers. The Decision is attached to this complaint as **Exhibit A.**

38. Dyson alleged that the filters and replacement filters for the Air Purifiers in question did not actually meet HEPA standards, despite Defendant's express and implied representations, detailed above.

39. In support of this, Dyson presented the following evidence:

a.    the Institute of Environmental Science and Technology's ("IEST") Contamination Control Division's Recommended Practice CC001.6 (HEPA and ULPA Filters) and CC007.3 (Testing ULPA Filters) that Dyson argued are industry-recognized guides establishing the basic standards and definitions for HEPA-level filtration in the U.S.;

b.    third-party testing conducted by SGS IBR Laboratories on the filters used in the Levoit EverestAir® Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers that Dyson argued demonstrate that the filters do not meet the IEST HEPA standards;

     c.   EN 1822-1 (High-Efficiency Air Filters (EPA, HEPA, and ULPA), the European standard for performance classifications of air purification; and

     d.   U.S. Department of Energy Guidelines (DOE Technical Standard "Specification for HEPA Filters used by DOE Contractors").

40.    Defendant Vesync responded to Dyson's challenge by stating that "for reasons unrelated to Dyson's challenge, it had elected to permanently discontinue the challenged claims."

41.    Despite Defendant's tacit admission of fault in the face of Dyson's testing, Plaintiff's counsel commissioned their own independent third-party testing of the Core 300 filter.

42.    The lab chosen by Plaintiff's counsel is often used by companies to certify their filters, and is highly suited to rigorous and accurate testing of HEPA filters. The lab is capable of testing filters with efficiencies up to 99.9999% filtration. Defendant claimed that its filters could filter out 99.97% of particles, orders of magnitude below the efficiency limit that the lab is capable of testing.

43.    Just as Dyson had found before, testing by the lab the lab commissioned by Plaintiff's counsel found that Defendant's Core 300 and 300S filters were not truly HEPA-grade.

44.    Given that Defendant's use of substandard filter material for its Core 300 and 300S products does not meet the HEPA standard; that the EverestAir purifier and replacement filter was shown by Dyson's testing to not meet the HEPA standard; and that Defendant has already begun removing HEPA claims from EverestAir purifier advertising after the NAD Decision, Plaintiff has reason to believe that future testing by the lab commissioned by Plaintiff's counsel and the Dyson testing will both show that the EverestAir purifier and replacement filter also uses substandard filter material and does not meet the HEPA standard.

## CLASS ALLEGATIONS

45.    Pursuant to Cal. Code Civ. Proc. § 382 and Cal. Civ. Code § 1781, Plaintiff seeks to represent a nationwide class defined as follows (the "Nationwide Class"):

> All persons who purchased a Levoit Core 300, Core 300S, or EverestAir air purifier or replacement filter during the applicable statutory period.

46.     Plaintiff also seeks to represent a California subclass defined as follows (the "California subclass"):

> All California residents who purchased a Levoit Core 300, Core 300S, or EverestAir air purifier or replacement filter during the applicable statutory period.

47.     Excluded from the Classes are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

48.     Plaintiff reserves the right to modify or expand the definition of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendant's records.  Class members may be notified of the pendency of this action by mail, email, and/or publication.

50.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

a.     Whether the Products' filters are "HEPA" grade;

b.     Whether the Products can filter 99.97% of airborne particulate matter;

c.     Whether Defendant's express representations about the capability of its Products included false and/or misleading statements and/or omissions;

d.     Whether Defendant's implied representations about the capability of its Products included false and/or misleading statements;

e.     Whether Defendant's conduct violated the CLRA, FAL, and UCL;

f.     Whether Defendant's conduct occurred in California;

g.     Whether Defendant's conduct breached express and implied warranties, and amounted to fraud;

h.     The nature of damages suffered by Plaintiff, the Class, and Subclasses.

51.     Plaintiff's claims are typical of the claims of the proposed Classes they seek to represent because Plaintiff, like all members of the Classes, was induced by Defendant's false and misleading warranties to purchase Defendant's Products and subsequently did purchase one of Defendant's Products from an online retailer during the relevant class periods without knowing that the Defendant's claims about the Products' air purifying capabilities were false and misleading. The representative Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct in the very same way as the members of the Classes.  Further, the factual bases of Defendant's misconduct are common to all members of the Class and Subclasses and represent a common thread of misconduct resulting in injury to all members of the Classes.

52.     Plaintiff is an adequate representative of the Classes he seeks to represent because his interests do not conflict with the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

53.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violations of California's Unfair Competition Law ("UCL")**
**Business & Professions Code § 17200, *et seq.***

54.     Plaintiff Chen hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

55.     Plaintiff Chen brings this claim individually and on behalf of the members of the Class and proposed California subclass against Defendant.

56.     This claim is brought under the laws of California.

57.     Defendant violated California's UCL by engaging in unlawful. Fraudulent, and unfair conduct (*i.e.,* violating each of the three prongs of the UCL).

***The Unlawful Prong***

58.     Defendant engaged in unlawful conduct by violating the CLRA, and FAL as referenced herein.

***The Fraudulent Prong***

59.     As alleged in detail above, Defendant failed to disclose material facts about its air Purifiers, including by failing to disclose to consumers that the Products did not meet HEPA standards, despite expressly claiming that it did.

60.     Defendant, as manufacturer and marketer of the Products, was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had a greater purifying ability than they actually did.

61.     As a result of these false and misleading practices, Defendant induced Plaintiff and the Class and Subclass to purchase the Products that Plaintiff, the Class and members of the Subclass would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

***The Unfair Prong***

62.     Defendant's conduct was unfair because, by claiming that its air purifiers would purify 99.97% of airborne particulates, Defendant deceived consumers into believing that the Products' filters and replacement filters were HEPA grade – a high standard for air purifying –

even though they are not.  This is unfair because it led Plaintiff Chen and the members of the Class and the California Subclass to purchase the Products that they otherwise would not have, or would have paid substantially less for, had they known their true capabilities.  Defendant's misleading practice was also unfair because it gave Defendant an unfair advantage over competitors to the extent that Defendant's Core 300 series Air Purifier is the best-selling air purifier on Amazon.com, doing tens of millions of dollars in sales per month.

63.     Plaintiff Chen and the Class and California Subclass members could not have reasonably avoided the injury.  Only Defendant was aware that its air purifiers fell below the standard that it claimed.  Consumers did not become aware of the misleading warranties until the Consumer Reports results were published.

***

64.      For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiff Chen and members of the Class and the California Subclass saw, read, and reasonably relied on Defendant's false and misleading warranties about the filtration capabilities of its Air Purifiers and replacement filters.  Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff Chen and the Class and California Subclass's purchasing decision.

65.     Defendant's misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiff Chen and the members of the Class and the California Subclass.

66.     There was no benefit to consumers or competition from falsely claiming that the Products was of a quality that they were not.

67.     Plaintiff Chen and the members of the Class and the California Subclass have suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant conducted its business in a lawful and truthful manner.

**COUNT II**
**Violations of California's False Advertising Law ("FAL")**
**Business & Professions Code § 17500, *et seq.***

68.     Plaintiff Chen hereby incorporates by reference the allegations contained in the proceeding paragraphs.

69.     Plaintiff Chen brings this claim individually and on behalf of the members of the Class and proposed California subclass against Defendant.

70.     This claim is brought under the laws of California.

71.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or service, … or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

72.     During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by making false and misleading representations about its Products' ability to filter particulates from the air at a rate they are not actually capable of filtering (in short, by representing that they were HEPA-grade) to attract more purchasers than its Products would otherwise have received.  Likewise, Defendant's false advertising induced consumers to purchase the Products or pay more for the Products than consumers otherwise would have.

73.     Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' HEPA-grade filtration capabilities were untrue and misleading.

74.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

75.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff Chen and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff Chen and the Class and the California Subclass would not have purchased Defendant's Products or would have

paid substantially less for the Products had Defendant not made the false and misleading statements about the Products' purifying qualities and characteristics; (b) Plaintiff Chen and the Class and the California Subclass paid an increased price for the Products based on their artificially-inflated capabilities; and (c) the Products did not confer the value they promised to confer because they did not actually contain HEPA-grade filters.

76.     Plaintiff Chen and the Class and the California Subclass are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b) interest at the highest rate allowed by law; and (c) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code Civ. Proc. § 1021.5.

**COUNT III**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***

77.     Plaintiff Chen hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

78.     Plaintiff Chen brings this claim individually and on behalf of the members of the Class and proposed California subclass against Defendant.

79.     This claim is brought under the law of California.

80.     Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

81.     Plaintiff Chen and members of the Class and California Subclass are "consumers," as defined by Cal. Civ. Code § 1761(d).

82.     The Products purchased by Plaintiff Chen and the Class and California Subclass members are "goods" as defined by Cal. Civ. Code § 1761(a).

83.     The purchases by the Plaintiff Chen and the Class California Subclass members constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

84.     As alleged more fully above, Defendant has violated the CLRA by furnishing false and misleading statements about the quality and capabilities of its Products to attract and induce more consumers to purchase its Products than would have otherwise been induced and attracted to the Products without those false and misleading statements.

85.     As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

86.     Defendant's conduct was likely to deceive, and did deceive, Plaintiff Chen and the Class and California Subclass members, all of whom are reasonable consumers.  Defendant knew, or should have known through exercise of reasonable care, that its claims about its Product's filtration capabilities were false and misleading.

87.     Defendant's representations about its Product's capabilities were intended to induce reliance, and Plaintiff Chen and the Class and California Subclass members saw, read, and reasonably relied on the false and misleading affirmative representations when deciding to purchase Defendant's Products.  Defendant's deceptive conduct was a substantial factor in Plaintiff Chen's purchase decision and the purchase decisions of the proposed Class and California Subclass.

88.     Plaintiff Chen and members of the Class and California Subclass have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

89.     In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on August 29, 2023, informing Defendant of his intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

## COUNT IV
### Fraud

90.     Plaintiff Chen incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

91.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant under the laws of California.

92.     As discussed above, Defendant failed to disclose material facts about the Products, namely, by failing to disclose to consumers that the Products did not have HEPA-grade filters, despite expressly claiming that they did.

93.     Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had greater ability than they actually did.

94.     The omissions made by Defendant, upon which Plaintiff and the members of the Class and Subclass relied, were intended to induce and actually did induce Plaintiff and the members of the Class and Subclass to purchase the Products.  Defendant induced Plaintiff and the members of the Class and Subclass to purchase the Products that Plaintiff and the members of the Class and Subclass would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

95.     Defendant's fraudulent actions caused damages to Plaintiff, the Class, and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed classes the following relief against Defendant:

(a)     For an order certifying the Nationwide Class, and California Subclass and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

(b)     For an order declaring that Defendant's conduct violates the statutes reference herein;

(c)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order requiring Defendant to undertake a corrective advertising campaign;

(g)   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(h)   Granting such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 29, 2023

**BURSOR & FISHER, P.A**.

By:   ___*/s/ L. Timothy Fisher*___
      L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
           lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
5805 Sepulveda Blvd. #801
Sherman Oaks, CA 91403
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.     I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.     The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Rick Chen resides in this District.

3.     Plaintiff Rick Chen is a resident of San Francisco, California.

4.     Defendant Vesync Corporation is a California company with its principal place of business in Anaheim, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  Executed on August 29, 2023, at Walnut Creek, California.

_____*/s/ L. Timothy Fisher*_____
                                                    L. Timothy Fisher

**EXHIBIT A**

Case #7222             (08/04/2023)
**Vesync Co., Ltd.**
**HEPA Air Purifiers**
***Challenger****:*              *Dyson, Inc.*
***Product Type****:*            *Appliances*
***Issues****:*                  *Efficacy Claims; Health & Safety Claims; Performance Claims*
***Disposition****:*             *Modified / Discontinued*

## BBB NATIONAL PROGRAMS

### *NATIONAL ADVERTISING DIVISION*

| | |
|---|---|
| Dyson, Inc.,<br>        *Challenger*,<br><br>Vesync Co., Ltd.,<br>        *Advertiser*. | Case No. 7222<br>Closed 08/04/2023 |

## FINAL DECISION

## I.    Basis of Inquiry

The advertising industry established the National Advertising Division ("NAD") and the National Advertising Review Board ("NARB") in 1971 as an independent system of self-regulation designed to build consumer trust in advertising. NAD reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. Its decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. Challenger Dyson, Inc. ("Dyson" or "Challenger") challenged express and implied claims made by Advertiser Vesync Co., Ltd. ("Vesync" or "Advertiser") for its HEPA Air Purifiers. The following are representative of the claims that served as the basis for this inquiry:

### A.    Express Claims

EverestAir® Smart True HEPA Air Purifier & Replacement Filters

- Levoit EverestAir® Smart True HEPA Air Purifier.
- To be considered True HEPA by US standards, the HEPA filter must trap at least 99.97% of 0.3-micron airborne particles. The EverestAir achieves this high standard of excellence, trapping fine dust, pollen, smoke particles, and pet dander, keeping your air as clean as possible.
- H13 True HEPA Filtration Traps at least 99.97% of 0.3-micron airborne particles.
- H13 True HEPA Filter with HEPASmart™ Technology Enhanced with statically charged fibers to trap at least 99.97% of 0.3-micron airborne particles, such as fine dust, smoke particles, pollen, and pet dander.
- H13 True HEPA Filter Captures 99.99% of Particles, Pet Allergies, Smoke, Dust
- ANTI-ALLERGENS & ODORS: Premium 3-stage filtration includes a Washable Pre-Filter, H13 True HEPA Filter, and High-Efficiency Activated Carbon Filter. Trap at least 99.97% of 0.3-micron airborne particles, as well as odors, VOCs, fumes, and smoke.

1

- The EverestAir provides premium filtration, trapping at least 99.97% of 0.3-micron airborne particles.
- H13 True HEPA Filter with HEPASmart Technology. Enhanced with statically charged fibers to trap fine dust, smoke particles, pollen, and pet dander, as well as bacteria, mold, and viruses*. *Testing Report No. 220614240GZU-001.

Core 300 and 300S True HEPA Air Purifier & Replacement Filters

- Levoit Core 300 True HEPA Air Purifier.
- Breathe in clean air with every breath using the Levoit Smart True HEPA Air Purifier.
- [Includes a] H13 True HEPA Filter.
- HEPASmart™ Technology enhances the H13 True HEPA filtration by capturing 99.99% of bacteria and mold, as well as 99.9% of viruses*.
- Remove 99.97% Dust Smoke Mold Pollen, Core 300.
- The H13 True HEPA Filter works alongside the Pre-Filter and High-Efficiency Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in size, such as dust, smoke, pollen, odor.
- High Filtration ≥ 99.97%* *Filters at least 99.97% of 0.3-micron airborne particles.
- Levoit Core 300 True HEPA 3-Stage Original Filter.
- Fill your environment with fresh, clean air using Levoit's Core 300-RF 3-Stage Original Filter. An effective 3-stage filtration system captures at least 99.97% of airborne particles 0.3 microns in size, so your surrounding air is free of harmful contaminants.

### B.   Implied Claims

- The filters used in the Levoit EverestAir® and Core 300 air purifiers have been tested to and have passed "HEPA" standards.

## II.   Evidence Presented

The Challenger presented examples of product packaging and online advertising in which the challenged claims appeared.  The Challenger also presented (i) the Institute of Environmental Science and Technology's ("IEST") Contamination Control Division's Recommended Practice CC001.6 (HEPA and ULPA Filters) and CC007.3 (Testing ULPA Filters) that the Challenger argued are industry-recognized guides establishing the basic standards and definitions for HEPA-level filtration in the U.S.; (ii) third-party testing conducted by SGS IBR Laboratories on the filters used in the Levoit EverestAir® Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers that the Challenger argued demonstrate that the filters do not meet the IEST HEPA standards; (iii) EN 1822-1 (High-Efficiency Air Filters (EPA, HEPA, and ULPA), the European standard for performance classifications of air purification; and (iv) U.S. Department of Energy Guidelines (DOE Technical Standard "Specification for HEPA Filters used by DOE Contractors").

## III.   Decision

Dyson and Vesync are competing manufacturers of air purifiers.  Dyson challenged certain claims made by Vesync in advertising for Vesync's Levoit EverestAir® Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers and their respective replacement filters. Dyson argued that Vesync lacked adequate substantiation for its claims that the air purifiers filters have passed "HEPA" standards and that the challenged claims convey other false and misleading messages.

In its response, Vesync asserted its belief in the efficacy of its products and stated that the challenged claims were made based on pre-existing independent third-party data. Vesync informed NAD that it was in the process of updating its testing data, however, and that for reasons unrelated to Dyson's challenge, it had elected to permanently discontinue the challenged claims.

In reliance on Vesync's representation that the challenged claims had been permanently discontinued, NAD did not review the challenged claims on their merits. The discontinued claims will be treated for compliance purposes as though NAD recommended their discontinuance and Vesync agreed to comply.

## IV.    Conclusion

The discontinued claims will be treated for compliance purposes as though NAD recommended their discontinuance and the Advertiser agreed to comply.

## V.    Advertiser's Statement

Vesync thanks NAD for its attention to this matter and agrees to comply with its decision. We support the self-regulatory process and appreciate the opportunity to participate in it. The company does not concede that there was anything misleading about the claims but has decided to voluntarily discontinue the claims at this time.

Vesync is proud of the work it does to provide effective, high-quality appliances backed by rigorous research and engineering. The company will continue to devote its attention to bringing market-leading appliances to consumers across the globe. **(#7222 DR, closed 08/04/2023)**

© 2023  BBB National Programs

3