SARAH CARLSON (SBN 344266)
sarah.carlson@dentons.com
DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA 92121
Telephone:    619 236 1414
Facsimile:    619 232 8311

SAMUEL D. JUBELIRER (SBN 287649)
samuel.jubelirer@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, CA 94612
Telephone:    415 882 5000
Facsimile:    415 882 0300

KRISTEN T. ARABACI (SBN 341682)
kristen.arabaci@dentons.com
DENTONS US LLP
4675 Macarthur Court, Suite 1250
Newport Beach, CA 92660
Telephone:    949 732 3700
Facsimile:    949 732 3739

Attorneys for Defendant
VESYNC CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICK CHEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>VESYNC CORPORATION,<br><br>    Defendant. | Case No. 3:23-cv-04458-TLT<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>[Fed. R. Civ. P. 12(b)(1) and (6)]<br><br>Date:    March 5, 2024<br>Time:    2:00 PM<br>Dept:    Courtroom 9 - 19th Floor<br>Judge:    Trina L. Thompson<br>Date Action Filed:  August 29, 2023 |

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

INTRODUCTION ............................................................................................... 2

FACTUAL BACKGROUND ............................................................................... 3

I.      THE PRODUCTS MET THE RELEVANT TESTING PROTOCOL AT THE TIME OF PLAINTIFF'S PURCHASES. .......................................................... 3

     a.      "HEPA" Designation ........................................................................ 3

     b.      Testing Protocol ............................................................................. 4

II.      NATIONAL ADVERTISING DIVISION PROCEEDINGS ......................... 5

     a.      Dyson's Advertising Challenge ...................................................... 5

     b.      Voluntary Discontinuation of HEPA Advertising Claims .................... 5

III.      PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS ................ 6

ARGUMENT ..................................................................................................... 8

I.      MOTION TO DISMISS STANDARDS ...................................................... 8

II.      THE FAC MUST BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF ARTICLE III STANDING. ........................................................................ 9

     a.      Plaintiff Fails To Allege A Concrete Injury. ..................................... 10

     b.      Plaintiff Fails to Identify a Particularized Injury. .............................. 12

     c.      Plaintiff Lacks Article III Standing to Bring Claims for Products He Did Not Purchase on Behalf of Absent Putative Class Members. ............... 13

     d.      Plaintiff Lacks Article III Standing to Bring Suit Under California Law on Behalf of Non-California Putative Class Members. ............................ 15

III.      THE FAC FAILS TO STATE AN ACTIONABLE CLAIM AND MUST BE DISMISSED UNDER RULE 12(b)(6). ...................................................... 16

     a.      Plaintiff Fails to Allege that a Reasonable Consumer Would Have Been Deceived by Vesync's Statements. ................................................. 16

     b.      The FAC Fails to Meet the Heightened Pleading Standard of Rule 9(b). ..... 18

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

c.     Plaintiff Does Not  Plead the Requisite Intent for His Fraud Claim or Facts Sufficient to State a Claim for Punitive Damages. .................................................. 20

     i.     Plaintiff Fails to State a Viable Fraud Claim. ............................................. 20

     ii.     Plaintiff's Request for Punitive Damages Must Be Dismissed................... 21

CONCLUSION ............................................................................................................. 22

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Americopters, LLC v. Fed. Aviation Admin.*,
  441 F.3d 726 (9th Cir. 2006).................................................................................................. 9

*In re Arris Cable Modem Consumer Litig.*,
  No. 17-CV-01834, 2018 WL 288085 (N.D. Cal. Jan. 1, 2018) ............................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 9

*Bowen v. Energizer Holdings, Inc.*,
  No. cv 21-4356, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) ........................................ 13

*Brazil v. Dole Food Co., Inc.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................................. 18

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ................................................................................ 18

*Daniels-Hall v. Nat'l Educ. Ass'n.*,
  629 F.3d 992 (9th Cir. 2010) .................................................................................................. 8

*Darisse v. Nest Labs, Inc.*,
  No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)............................. 15

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) .............................................................................................. 18

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................................... 19

*Gutierrez v. Johnson & Johnson Consumer Inc.*,
  No. 19-CV-1345, 2021 WL 822721 (S.D. Cal. Jan. 22, 2021) ........................................ 18, 19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................................... 18, 19

*Khan v. CitiMortgage, Inc.*,
  975 F. Supp. 2d 1127 (E.D. Cal. 2013) ................................................................................ 20

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

*Lemus v. Rite Aid Corp.*,
  613 F. Supp. 3d 1269 (C.D. Cal. 2022)..................................................15, 16

*Lewis v. Casey*,
  518 U.S. 343 (1996) ...............................................................10, 13, 14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ..............................................................8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................9

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ..............................................................8

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .........................................................15, 16

*McGee v. S-L Snacks Nat'l*,
  982 F.3d 700 (9th Cir. 2020) .........................................................10, 11

*McKinney v. Corsair Gaming, Inc.*,
  646 F.Supp.3d 1133 (N.D. Cal. 2022) ...................................................15

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ..............................................................18

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .................................................................17

*Nazos v. Toyota Motor Corp.*,
  No. CV 22-2214, 2022 WL 17078882 (C.D. Cal. Oct. 13, 2022) .........................16

*Onaka v. Shiseido Americas Corp.*,
  No. 21-cv-10665, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ....................12, 13

*Razuki v. Nationstar Mortgage, LLC*,
  No. 18-cv-03343, 2020 WL 1478374 (N.D. Cal. Mar. 26, 2020)..........................16

*Savage v. Glendale Union High Sch. Dist.*,
  343 F.3d 1036 (9th Cir. 2003) ..............................................................9

*Schepler v. Am. Honda Motor Co.*,
  No. CV 18-6043, 2019 WL 398000 (C.D. Cal. Jan. 29, 2019)............................16

*Solis v. Coty, Inc.*,
  No. 22-cv-0400, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) .......................10, 12

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................. 9, 12

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746, 2009 WL 1635931 (N.D. Cal., June 5, 2009) ................................. 19

*Stephenson v. Neutrogena Corp.*,
    No. C 12-0426 PJH, 2012 WL 8527784 (N.D. Cal. July 27, 2012) ....................... 14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................................................... 10

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*,
    256 F.3d 879 (9th Cir. 2001) ............................................................................ 9

*Vinci v. Hyundai Motor Am.*,
    No. SA CV 170-0997, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) ............... 15, 16

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .......................................................................... 9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................... 14

*Wilson v. Colourpop Cosmetics, LLC*,
    No. 22-cv-05198-TLT, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) ................... 11

### California Cases

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ................................................................................... 16

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) .......................................................................... 17

**California Statutes**

Cal. Bus. & Prof. Code
    §§ 17200, *et seq.* ................................................................................ *passim*
    §§ 17500, *et seq.* ................................................................................ *passim*

Cal. Civ. Code
    §§ 1750, *et seq.* ................................................................................. *passim*
    § 3294 ............................................................................................. 20, 21

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## <u>Other Authorities</u>

Fed. Rule Civ. Pro

   9 ........................................................................................................................... *passim*

   12 ......................................................................................................................... *passim*

   23 ................................................................................................................................. 16

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 5, 2024, at 2:00 pm or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 9, 19th Floor, San Francisco, California 94102, the Honorable Trina L. Thompson presiding, Defendant Vesync Corporation ("Vesync") will and hereby does move the Court to dismiss Plaintiff Rick Chen ("Plaintiff")'s First Amended Class Action Complaint for Damages (the "Motion").

The Motion is brought under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6),and 9(b), in that Plaintiff has no Article III standing to bring the claims set forth in the First Amended Complaint; that the First Amended Complaint fails to state a claim upon which relief can be granted; that the First Amended Complaint fails to comply with heightened pleading requirements under Federal Rule of Civil Procedure 9(b); and that the First Amended Complaint fails to state a claim for punitive damages, all as more fully set forth in the accompanying Memorandum of Points and Authorities.

The Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice and exhibits thereto, and such other and further evidence and argument that may be presented at the hearing on this motion.

Dated:  November 22, 2023             DENTONS US LLP


By: _____*/s/ Sarah Carlson*_____
                  Sarah Carlson
Attorneys for Defendant
VESYNC CORPORATION

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In his First Amended Complaint ("FAC"), Plaintiff Rick Chen ("Plaintiff") alleges that he was somehow injured because the air purifiers and filters he purchased in 2020 from Defendant Vesync Corporation ("Vesync") did not meet the HEPA "standard," though advertised as such. He brings statutory claims, individually and on behalf of a putative nationwide class and a putative California sub-class, under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act, as well as a claim for common law fraud, regarding both products he claims to have purchased and products he never purchased. Plaintiff's claims are entirely without merit and must be dismissed for lack of Article III standing and for failure to state a claim upon which relief can be granted.

Plaintiff lacks Article III standing to bring this case and it must be dismissed under Rule 12(b)(1). Plaintiff has not pled a concrete or particularized injury—nor can he. At the time he made his purchases, there was no mandatory standard for how a personal-use air purifier product labeled "HEPA" had to be tested in order to be referred to as such.[1] His allegations are thus a house of cards, all premised on there being only *one* standard by which a "HEPA"-labeled personal use air purifier product must have been tested. Plaintiff's allegations all fall down because of the indisputable falsity of this foundational fact. Plaintiff also overreaches by bringing claims for products he never purchased and on behalf of non-California purchasers. He also clearly lacks standing to bring these claims.

Even if Plaintiff had standing to bring this action, Plaintiff's allegations are woefully lacking and must be dismissed under Rule 12(b)(6). His conclusory allegations come nowhere close to meeting the heightened pleading standard of Rule 9(b), applicable to all of his claims.

---

[1] There is no allegation that Vesync did not test the products that are at issue here. Indeed, they were tested in accordance with the ***non-binding protocol*** recommended by the Institute of Environmental Sciences and Technology (the "IEST"), the industry-recognized authoritative body on HEPA testing in the United States, and passed inspection, as Vesync will show if this case proceeds. The Products were manufactured in accordance with IEST RP CC001.6 Class H and per the standard, were tested as manufactured to meet IEST RP CC007.3. *See* Request for Judicial Notice ("RJN") Exs. C (IEST RP CC001.6) and D (IEST RP CC007.3).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Moreover, Plaintiff fails to allege, as he must, what a "reasonable consumer" would have understood Vesync's challenged statements to mean and how a reasonable consumer is likely to have been misled by them.

It is clear that this suit was initiated not because of any damage or harm, but because Plaintiff's counsel, while perusing proceedings brought before the National Advertising Division ("NAD"), saw that Vesync decided not to defend a HEPA-based challenge brought by one of its competitors. However, contrary to Plaintiff's flatly incorrect characterization—and as is obvious from the very documents he references—Vesync's decision in the NAD matter was not an admission that any of its products' labeling was false or misleading, and NAD never made any such finding. Plaintiff's counsel brought this suit no doubt hoping the *in terrorem* effect of a class pleading would lead Vesync to capitulate. Vesync will not do so, and respectfully requests that the FAC be dismissed with prejudice.

## **FACTUAL BACKGROUND**

### I. **THE PRODUCTS MET THE RELEVANT TESTING PROTOCOL AT THE TIME OF PLAINTIFF'S PURCHASES.**

Vesync manufactures and sells air purifiers and filters through its Levoit Co. ("Levoit") brand, including the "EverestAir® Smart True HEPA Air Purifier" and "Core 300[S] True HEPA Air Purifier" products and replacement filters (the "Products"). The Products are air purifiers and filters designed, manufactured, and sold for residential use. *See* FAC generally. Until July 2023, the Products were advertised as "HEPA" air purifiers and filters. On July 17, 2023, as discussed further below, Vesync elected to voluntarily discontinue its "HEPA" advertising statements relating to the Products. While the Products are not currently advertised as "HEPA," the decision was not related to a determination that the products were not HEPA-grade, but rather, was a business decision made by Vesync. *See* Request for Judicial Notice ("RJN") Ex. A (Vesync Co., Ltd. (HEPA Air Purifiers), Report #7222, NAD/CARU Case Reports (August 2023)).

#### a. **"HEPA" Designation**

The United States Environmental Protection Agency (the "EPA") defines a high-efficiency particulate air, or "HEPA" filter, as "a type of pleated mechanical air filter" that can

theoretically remove "at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns." RJN Ex. B (What is a HEPA filter?, EPA (Mar. 13, 2023) (last viewed on Nov. 22, 2023)).

To be considered a HEPA filter according to the most common method used in the U.S. market, a filter must capture at least 99.97% of airborne particles that are 0.3 microns mass mean diameter at the airflow rate of the filter. *See id.* The first HEPA filters intended for residential use (*i.e.*, in a non-hospital or military setting) were introduced in the early 1960s. Today, the HEPA filter industry has grown to include a large number of competitors producing a variety of "HEPA" air purifiers for residential use. The term "HEPA" gives assurance to consumers that their air filters have been tested in accordance with a recognized voluntary HEPA standard—but not any one ***particular*** voluntary standard. Rather, the relevant recommended testing protocols have sizeable differences that can affect results and the permissible advertising claims resulting therefrom. *See e.g.,* RJN Ex. C (IEST RP CC001.6).

### b.    Testing Protocol

While HEPA is generally defined by the EPA in terms of filtration ***performance*** (*i.e.*, 99.97% or greater removal of dust, pollen, mold, bacteria, and 0.3 micron particles), there is no governing body that has established mandatory testing protocols for residential use HEPA filters. Rather, there are two main standardization bodies which develop industry recommended best practices for testing personal use HEPA filters: (i) the Institute of Environmental Sciences and Technology (the "IEST"), which is the dominant industry-recognized authoritative body in the United States, and (ii) the International Organization for Standardization (the "ISO"), which is the industry-recognized authoritative body more commonly recognized in Europe and Asia.

The IEST's Contamination Control Division developed Recommended Practice 001.6 ("IEST RP CC001.6"), which is an industry-recognized guide establishing: (i) recommended basic standards and definitions for HEPA filters; and (ii) different tiers of HEPA performance through recommended testing protocols for each defined tier. *See* RJN Ex. C.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

## II. <u>NATIONAL ADVERTISING DIVISION PROCEEDINGS</u>

The National Advertising Division ("NAD") is an independent self-regulatory body to which advertisers voluntarily submit. *See* RJN Ex. E (Frequently Asked Questions, Better Business Bureau National Programs (2023) (last viewed on Nov. 22, 2023)). The NAD's stated purpose is to monitor the truth and accuracy of advertising claims made in national advertising through its own independent monitoring and through the facilitation of dispute resolution between competitors. *See id.* An entity may bring a "challenge" with respect to the perceived accuracy and truthfulness of a competitor's national advertising claims before the NAD. The challenged advertiser is then given the opportunity to respond by either opposing the challenge or by voluntarily agreeing to discontinue the challenged advertising claims. Only if the challenged entity elects to oppose the challenge will the NAD review the arguments submitted by each party and the claims substantiation submitted by the challenged party. In that instance, after a thorough review of the evidence, the NAD will issue a decision finding either that the advertising claims are supported or a recommendation that the claims should be discontinued. If the challenged party elects to voluntarily discontinue the challenged claims, the NAD "***will not render a decision on the merits regarding the permanently discontinued claims***. Rather, the NAD will treat the claims, for compliance purposes, as though it recommended their discontinuance and the advertiser agreed to comply." *Id.* (emphasis added).

### a. Dyson's Advertising Challenge

On May 12, 2023, Dyson, Inc. ("Dyson"), one of Vesync's direct competitors, filed a challenge with the NAD regarding some of Vesync's advertising statements relating to the Products. *See* RJN Ex. A (Vesync Co., Ltd. (HEPA Air Purifiers), Report #7222, NAD/CARU Case Reports (August 2023)). Specifically, Dyson challenged certain of Vesync's advertising claims involving the term "HEPA" and indicating that the Products "trap at least 99.97% of 0.3-micron airborne particles." *Id.*

### b. Voluntary Discontinuation of HEPA Advertising Claims

On July 17, 2023, Vesync submitted its response to Dyson's NAD advertising challenge, electing to voluntarily discontinue the challenged advertising claims. *Id.* As explained in

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

Vesync's response in the NAD proceedings, Vesync made the challenged claims at issue in good faith and based upon pre-existing independent third party testing, consistent with the authoritative, industry-recognized standards for HEPA filters as commonly applied to residential filters *during the time period covered by the challenge*. *See id.*; *see also* RJN Ex. C (IEST RP CC001.6). However, Vesync stated that it would voluntarily discontinue the challenged claims in light of independent business considerations. *See* RJN Ex. A (Vesync Co., Ltd. (HEPA Air Purifiers), Report #7222, NAD/CARU Case Reports (August 2023))*.* Additionally, in accordance with accepted NAD protocol, Vesync expressly reserved the right to a commercially reasonable "sell-through period" with respect to the original packaging of the relevant products. *Id.*

Given Vesync's decision to voluntarily discontinue the challenged advertising claims, Vesync did not submit any claims substantiation or opposition to Dyson's NAD challenge. NAD did not conduct any investigation whatsoever into the challenged claims, and did not render any decision on the merits regarding the accuracy or truthfulness of the challenged advertising claims. On August 4, 2023, the NAD issued its Final Decision on Dyson's challenge, certifying that Vesync had voluntarily elected to discontinue the challenged claims. *Id.*

### III.  PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS

On August 29, 2023 – less than one month after the NAD published its final decision certifying Vesync's voluntary discontinuation of the challenged advertising claims – Plaintiff filed his complaint on behalf of himself and a putative nationwide class, including a California sub-class. On October 16, 2023, Plaintiff filed his FAC.[2]

Plaintiff alleges that he is a resident of California who purchased the Products – two Levoit Core 300 True HEPA Filter Air Purifiers – from Vesync's Amazon store webpage on September 27, 2020 and December 31, 2020, and an H13 True HEPA replacement filter on December 31, 2020. FAC ¶ 9. Plaintiff further alleges that he "reviewed and relied on Defendant's warranties and representations about the Product's HEPA-grade filtration capabilities prior to purchasing the Products" and "believed that the Air Purifiers would filter contaminants at

---

[2] Plaintiff only made only one addition to the initial complaint, FAC ¶ 89.

or above the HEPA standard." *Id.* Plaintiff alleges neither dissatisfaction with the performance of the Products nor that the Products did not, in fact, perform as advertised. Rather, Plaintiff complains that, were it not for Vesync's alleged misrepresentations, he "would not have purchased the Product[s] or would have paid substantially less for [them]." *Id.* Nowhere does Plaintiff allege what it means to be "HEPA grade," demonstrate an understanding of the applicable, highly technical industry-recognized IEST standards, or allege with which iteration of the voluntary standards Plaintiff suggests Vesync did not comply. *See* FAC generally.

Instead, Plaintiff alleges that Vesync made false and misleading representations for years that the Products are equipped with HEPA filters when, in fact, they are not. FAC ¶¶ 1–2. Plaintiff alleges that to be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns. FAC ¶ 20. Plaintiff's belief that Vesync misrepresented the Products' performance is based on his allegation that the products that Plaintiff's *counsel* allegedly tested (using an undefined protocol) did not meet that HEPA definition. FAC ¶ 43. Plaintiff also specifically purports to rely on his *counsel's* own "independent third-party testing of the Core 300 filter" to support his allegations. FAC ¶ 41–43. But Plaintiff provides no information whatsoever about any of this alleged testing and what it supposedly showed (if anything). The FAC does not allege when any such testing took place, who conducted the purported testing, what testing methodology was used, which aerosol was used, or the flow rate that was used. *See* FAC generally. Nor does the FAC include a copy of any testing report or describe any result of such alleged testing. *See id.*

Instead, Plaintiff relies heavily on Dyson's NAD challenge, which he mischaracterizes as an NAD "investigation." *Id.* at ¶ 32. It was nothing of the sort. Plaintiff further misconstrues Dyson's testing as a catalyst that "forced Vesync to remove false and misleading representations" from its Product webpages. *Id.* Again, wrong. As explained above, NAD did not conduct an ***investigation*** of any kind into Dyson's challenge of Vesync's claims relating to the Products. This is expressly set forth in the NAD decision: "NAD did not review the challenged claims on their merits." RJN Ex. A, at 3. Therefore, by its own terms, the NAD decision is not a "fact" that supports an allegation that the Products did not meet the recommended HEPA standards in place

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

when the Products were tested.[3] Rather, Vesync's voluntary decision was prompted by independent business considerations. *See* RJN Ex. A, at 3. In addition, and critically, Plaintiff cannot have reviewed Dyson's testing, as it remains confidential pursuant to NAD protocol. *See* RJN Ex. F (NAD Rules and Procedures (2023)), at Section H. Plaintiff further cites to some unidentified "Consumer Reports" in an attempt to support his allegations. FAC ¶ 63. Plaintiff expressly relies on these unidentified hearsay "reports" as a basis for his claims. But—like his lawyers' claimed "testing" of some other Vesync product, not Plaintiff's own product (or one allegedly similar to it)—because Plaintiff does not actually identify or provide the alleged test reports, neither Vesync nor the Court can evaluate them to determine if they actually set forth the facts Plaintiff alleges.

The FAC alleges: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; and (iv) fraud. *Id.* at ¶ 8. Plaintiff seeks compensatory and punitive damages, restitution, and all other forms of equitable monetary relief, an order requiring that Vesync undertake a corrective advertising campaign, as well as fees, costs, and expenses, for himself and the putative class. *Id.* (Prayer for Relief).

## ARGUMENT

### I.     MOTION TO DISMISS STANDARDS

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted). In a putative class action, at least one named plaintiff must have standing. *See, e.g., Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (citation omitted).

---

[3] *See Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (holding that the court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice.").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

In resolving a subject matter jurisdiction question, and particularly one that is related to standing, the Court may look beyond the complaint and consider affidavits, declarations, and other materials. *See Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (trial and appellate courts must consider "affidavits" and "all materials of record" when analyzing Article III standing). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction. *Savage v. Glendale Union High Sch. Dist.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

Under Rule 12(b)(6), a case may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The plausibility standard goes beyond a mere probability requirement, demanding "more than a sheer possibility that a defendant acted unlawfully." *Id.* A court may disregard conclusory allegations or legal characterizations cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Ashcroft*, 556 U.S. at 678.

## II.  THE FAC MUST BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF ARTICLE III STANDING.

Plaintiff has failed to establish that he has standing to bring this putative class action. In order to have Article III standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

With respect to the "injury-in-fact" prong, a plaintiff must show that he or she has sustained "an invasion of a legally protected interest which is []concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). The party seeking to establish federal

jurisdiction "bears the burden of showing that [he/she] has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal citation omitted). Plaintiff himself must have standing, and cannot rely on the claims of absent, putative class members. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

### a. Plaintiff Fails To Allege A Concrete Injury.

Plaintiff attempts to show Article III standing from a purely ***economic***, not physical, alleged injury: specifically, that Plaintiff "purchase[d] the Products that [he] otherwise would not have, or would have paid substantially less for, had [he] known [the Products'] true capabilities." FAC ¶¶ 62, 67. It is not clear whether Plaintiff is purporting to allege a "benefit of the bargain" or "overpayment" theory of economic injury, but it does not matter because the FAC fails to sufficiently allege either.

In order to adequately allege a concrete economic injury under a "benefit of the bargain theory," a plaintiff must "allege[e] that [he/she] bargained for a product worth a given value but received a product worth less than that value." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705-06 (9th Cir. 2020) ("A plaintiff . . . must do more than allege that [he/she] did not receive the benefit she *thought* she was obtaining . . . [and] must show that [he/she] did not receive a benefit for which she actually *bargained*.'" (emphasis in original and internal citation omitted)). Thus, "the plaintiff must identify a specific misrepresentation about the elusive [alleged] benefit, which allegedly was baked into the purchase price of the consumer item at issue." *Solis v. Coty, Inc.*, No. 22-cv-0400, 2023 WL 2394640, at *6 (S.D. Cal. Mar. 7, 2023). As for the "overpayment" theory, a plaintiff must allege that he or she "paid more for a product than [he/she] otherwise would have due to [the] defendant's false representations about the product." *McGee,* 982 F.3d at 706. Courts have emphasized that "[a]n identifiable, affirmative misrepresentation is the lynchpin of both [the benefit of the bargain and overpayment economic injury] theories." *Solis*, 2023 WL 2394640, at *9.

Here, Plaintiff alleges that Vesync's purported false and/or misleading representations with respect to the Products are that they are "capable of HEPA-grade filtration." FAC ¶ 9. As discussed above, there was no single, binding HEPA "standard" that personal use air purifiers

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

and/or replacement filters had to meet at the time of Plaintiff's purchase in 2020 (nor is there any such binding standard now). *See* RJN Ex. C (IEST RP CC001.6), at 3. Because there was no HEPA testing standard for what a "HEPA"-grade air purifier or filter was (or that Plaintiff even understood what that term meant) when Plaintiff purchased the Products in 2020, Plaintiff cannot allege that his purported purchases were made ***on the basis of*** a particular false or misleading statement. He therefore lacks standing to bring this action.

This Court recently addressed a similar issue. In *Wilson v. Colourpop Cosmetics, LLC*, No. 22-cv-05198-TLT, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023), this Court granted a motion to dismiss for lack of standing under a "benefit of the bargain" theory of injury. In *Wilson*, the plaintiff alleged that she "spent money on Defendant's Products that she otherwise would not have had she known her Products were unsafe and carried unreasonable risk to use for their sole intended purpose." 2023 WL 6787986, at *5. But the Court found that "this 'loss of money' requires a showing that the products are *actually* harmful," (*id.*, original italics) and that *McGee* requires a plaintiff to show that he or she "actually bargained" for a benefit not received. *Id.*

As in *Wilson*, Plaintiff does nothing more than allege in a conclusory manner that his "personal expectations of the [product] [he] purchased are unmet" because he says so (FAC ¶ 9), but that is not enough. Plaintiff does not identify what—beyond words on a label—he bargained for when he purchased the Products. *Id.* There was no single, binding HEPA testing standard when Plaintiff allegedly made his purchases, and he does not allege that he expected the Products to meet any particular applicable HEPA testing standard at the time.

Moreover, a HEPA filter is a filter that ***performs*** a specific way under specific conditions. *See* RJN Ex. C (IEST RP CC001.6), at 11. Plaintiff does not allege he knew what filtration performance a "HEPA grade" filter exhibits. In order to plead he suffered a "concrete" injury, Plaintiff must plead, specifically, *what* actual product characteristic he bargained for, which, in this case, necessarily requires him to understand what "HEPA grade" actually meant in terms of product performance. He does not and he cannot, because the undisputed evidence shows that there *was no mandatory standard* by which a "HEPA grade" label had to be tested at the time Plaintiff alleges he purchased the Products, and Plaintiff was clearly unaware of what the

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

relevant, and very technical, industry-recognized IEST standards meant in the first place. Without those necessary allegations, there is no way to know whether he was *actually* deprived of something he knowingly, intentionally tried to buy. Plaintiff thus lacks Article III standing.

**b.      Plaintiff Fails to Identify a Particularized Injury.**

Article III standing also requires that a plaintiff allege a concrete injury that is *particularized*, traceable to a defendant's conduct and that can be redressed through the courts. *Spokeo*, 578 U.S. at 33.  In order to sufficiently allege a particularized economic injury, courts have generally found that, with respect to a purportedly defective product, "'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather the plaintiff[] must allege that *their* product *actually exhibited* the alleged defect.'" *Solis*, 2023 WL 2394640, at *10 (internal citation and quotation omitted) (emphasis in the original). Plaintiff makes no such allegation here. *See* FAC ¶ 3 (only identifying testing conducted on "the replacement filters and the filters inside the Products;"); ¶ 9 (alleging only that Plaintiff purchased his products, not that they did not perform a certain way); ¶¶ 37-44 (not identifying Plaintiff's own products as suffering from any alleged defect). Indeed, Plaintiff does not allege dissatisfaction with the performance of his purchased Products or that they failed to perform as advertised. *See* FAC generally. Instead, Plaintiff alleges that he was injured *only* in the sense that he "would not have purchased the Product or would have paid substantially less for it," had he known of Vesync's alleged misrepresentations pre-purchase. FAC ¶ 9.

Courts generally require a plaintiff to test their own products to show standing. *See e.g.*, *Onaka v. Shiseido Americas Corp.*, No. 21-cv-10665, 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023). Where courts do not explicitly require it, a plaintiff must still plead specific facts making it "at least plausible" that he purchased the allegedly nonconforming product(s). In *Onaka*, the court analyzed claims regarding the alleged presence of harmful chemicals in makeup, and held that the "single allegation of independent testing [contained in the complaint]" was "inadequate" to confer standing because the complaint alleged only that the testing was performed on the "*type* of Products [plaintiffs] purchased" without alleging when the independent testing was purportedly conducted, making it "nothing more than a sheer possibility" that

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

plaintiffs' purchased makeup contained harmful chemicals. *Id.* (emphasis in the original) (quotations omitted).

Here, as in *Onaka*, Plaintiff does not allege when the purported independent testing was performed (or any other details with respect to same). Plaintiff merely alleges that his counsel tested "the Core 300 filter[.]" FAC ¶ 41. He does not identify where that filter allegedly came from, whether the tested product was the Plaintiff's unit, the testing methodology utilized, the specific results shown, or how the results of that alleged testing could be applicable to the Products Plaintiff allegedly purchased. As in *Onaka*, there is no allegation that the nonconformance "is so widespread as to render it plausible that [Plaintiff] purchased a mislabeled Product at least once," because there are "no facts from which the Court could extrapolate that their isolated testing should apply broadly to Defendant's Products, regardless of when they were purchased." *Onaka*, 2023 WL 2663877, at *5; *see also Bowen v. Energizer Holdings, Inc.*, No. cv 21-4356, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) (dismissing claims regarding alleged benzene-contaminated sunscreen for lack of standing when plaintiff alleged a "**hypothetical** possibility that the products she purchased **may** have contained benzene—not that she purchased a product that demonstrably did contain benzene, such as from a batch identified" by testing.) (emphasis in original).[4]

Because Plaintiff cannot identify a *particularized* injury, Plaintiff lacks Article III standing. *Lewis*, 518 U.S. at 357 ("Unless an injury affects the 'plaintiff in a personalized and individual way,' it is not 'particularized' and, thus, cannot form the basis for Article III standing.").

### c. Plaintiff Lacks Article III Standing to Bring Claims for Products He Did Not Purchase on Behalf of Absent Putative Class Members.

Even if the Court were to find that Plaintiff had standing to bring claims regarding the products he allegedly purchased (despite his failure to properly allege a concrete or particularized

---

[4] Plaintiff's attempted reliance on Dyson's testing is equally unhelpful because, *inter alia*, he does not allege that Dyson tested the Products, when such testing was conducted, and/or when the Dyson-tested products were manufactured or purchased. FAC ¶ 3.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

1    injury even for the Products he alleges he actually purchased), he lacks standing to bring claims

2    relating to the air purifiers and filters he does not allege he purchased.

3            Indeed, Plaintiff purports to bring claims relating to Vesync's "Levoit-branded EverestAir

4    Smart True HEPA, and Core 300 and Core 300S True HEPA air purifiers [. . .] along with their

5    respective replacement filters." FAC ¶ 1. Yet, Plaintiff alleges only that he "purchased the Levoit

6    Core 300 True HEPA Filter Air Purifier from Defendant's Amazon store webpage on September

7    27, 2020" and "purchased another Core 300 Air Purifier [along] with a 'H13 True HEPA'

8    replacement filter" on December 31, 2020.  FAC ¶ 9.  Nowhere in the FAC does Plaintiff allege

9    that he purchased the EverestAir® Smart True HEPA Air Purifier, the Core 300S True HEPA Air

10   Purifier, or their respective replacement air filters.

11           Well-established Supreme Court precedent makes clear that a named plaintiff cannot

12   piggyback on the potential claims of absent class members to create standing where none

13   otherwise exists. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege

14   and show that they personally have been injured, not that injury has been suffered by other,

15   unidentified members of the class."); *Lewis*, 518 U.S. at 358 (district court could only consider

16   injury suffered personally by named plaintiff).  That is precisely what Plaintiff is doing here with

17   respect to products he did not purchase: attempting to recover for others' alleged injuries he did

18   not, and could not, have suffered.

19           Nor does Plaintiff allege that the EverestAir® Smart True HEPA Air Purifier, the Core

20   300S True HEPA Air Purifier, and their respective replacement air filters are "substantially

21   similar" to what Plaintiff allegedly purchase. *See, e.g.*, *Stephenson v. Neutrogena Corp.*, No. C

22   12-0426 PJH, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (dismissing claims based on

23   products not purchased because the purchased products were not "similar enough to the

24   unpurchased products such that an individualized factual inquiry was not needed for each

25   product.").

26           Accordingly, the Court must dismiss all of Plaintiff's purported claims based on products

27   that Plaintiff does not allege he actually purchased.

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

### d. Plaintiff Lacks Article III Standing to Bring Suit Under California Law on Behalf of Non-California Putative Class Members.

Plaintiff also improperly seeks to apply California law to the purported claims of the nationwide putative class. FAC ¶ 45. Plaintiff does not allege that he was injured by the Defendant's purported conduct outside of this state. Nor does Plaintiff even attempt to assert that California has any interest in adjudicating the claims of non-California resident putative class members. Regardless, Ninth Circuit precedent forecloses any such justification. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (decertifying "nationwide class" due to variances between California consumer protection laws and those of other states); *Vinci v. Hyundai Motor Am.*, No. SA CV 170-0997, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) (dismissing with prejudice nationwide CLRA, FAL, UCL, warranty, and fraud claims brought against defendant headquartered in California).

In *Mazza*, the Ninth Circuit held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."[5] 666 F.3d at 594. Indeed, each state has the greatest interest in protecting its own citizens. *Id.* at 593; *see, e.g.*, *McKinney v. Corsair Gaming, Inc.*, 646 F.Supp.3d 1133, 1145 (N.D. Cal. 2022) ("While Corsair is headquartered in California . . . Plaintiffs allege that the class 'includes citizens of most (or potentially all) states' . . . who presumably purchased Corsair's products while located in their home states."). The Ninth Circuit concluded that applying California law to non-residents who purchased their products outside of California was improper, despite the fact that the defendant was headquartered in California and the allegedly fraudulent misrepresentations emanated from California. *Mazza*, 666 F.3d at 590.

---

[5] Notably, California law differs materially from the laws of other states. *Mazza*, 666 F.3d at 590. *Vinci*, 2018 WL 6136828, at *7 (dismissing with prejudice nationwide CLRA, FAL, UCL, warranty, and fraud claims, and noting differences including, scienter, reliance, statutes of limitations, exemptions, and remedies); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1278 (C.D. Cal. 2022) (differences for express warranty); *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *11 (N.D. Cal. Aug. 15, 2016) (differences in privity, reliance, and notice for express warranty between all fifty states, and privity, notice, and class action availability for implied warranty claims).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

In that vein, federal courts in California have "dismissed multi-state claims at the pleading stage," and the Court should do the same thing here, rather than wait for the case to further develop. *Lemus*, 613 F. Supp. 3d at 1278. *See also Schepler v. Am. Honda Motor Co.*, No. CV 18-6043, 2019 WL 398000, at *6 (C.D. Cal. Jan. 29, 2019) (applying *Mazza* on a motion to dismiss, noting the absence of "an actual need for further relevant factual development"); *Razuki v. Nationstar Mortgage, LLC*, No. 18-cv-03343, 2020 WL 1478374, at *2 (N.D. Cal. Mar. 26, 2020) (holding that the two named California plaintiffs in a nationwide class action lacked standing to sue on behalf of out-of-state class members and that "this is a threshold issue of standing under Article III, which should be decided now and not deferred to Rule 23 proceedings.").[6]

## III. THE FAC FAILS TO STATE AN ACTIONABLE CLAIM AND MUST BE DISMISSED UNDER RULE 12(b)(6).

### a. Plaintiff Fails to Allege that a Reasonable Consumer Would Have Been Deceived by Vesync's Statements.

As explained above, at the time Plaintiff allegedly made his purchases in 2020, there was no mandatory standard for how a personal use air purifier product labelled "HEPA" had to be tested in order to be described as such (although, as previously indicated, Vesync's Products were, indeed, tested in accordance with the non-binding protocol recommended by the industry-recognized authoritative body in the United States). *See* RJN Ex. C (IEST RP CC001.6), at 4. Thus, Plaintiff has failed to allege that Vesync made any false statement or representation about the Products—which is the linchpin of each of his claims—because there was no mandatory standard against which they could be measured.

While courts have recognized that *truthful statements* about a product may be actionable under the FAL, UCL, and/or CLRA, it is well-settled that in order to bring a viable claim, a plaintiff must allege that "'members of the public are likely to be deceived'"—as viewed through the lens of the "reasonable consumer"—by the allegedly misleading advertisement or marketing material. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (internal citations omitted); *see also*

---

[6] *See also Nazos v. Toyota Motor Corp.*, No. CV 22-2214, 2022 WL 17078882, at *7 (C.D. Cal. Oct. 13, 2022) ("many district courts have applied *Mazza* at the pleading stage"); *Vinci*, 2018 WL 6136828, at *5 (collecting cases).

*Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) ("[O]nly those statements on a label that are 'likely to deceive' a 'reasonable consumer' are actionable under the [FAL, UCL, and/or CLRA]). Courts recognize that "a plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore v. Trader Joe's Co*., 4 F.4th 874, 882 (9th Cir. 2021) (internal citations omitted).

In order to meet the "reasonable consumer standard" in the context of bringing a viable FAL, UCL, and/or CLRA claim, a plaintiff "must demonstrate 'more than a mere possibility that [the seller's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner . . . [r]ather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id*. (internal citations omitted).

Here, Plaintiff alleges that he "reasonably relied on Defendant's representations and believed that the Air Purifiers would filter contaminants at or above the HEPA standard." FAC ¶¶ 7, 9. Plaintiff further alleges that "[t]he HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration." *Id*. at ¶ 24. But Plaintiff fails to allege, as he must, that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" into believing the above-quoted statements as is required for any of his claims to be actionable. *Moore*, 4 F.4th at 882. Plaintiff further fails to demonstrate that he had an understanding of the applicable, highly technical industry-recognized IEST standards under which Vesync appropriately advertised the Products, nor that a reasonable consumer had an understanding of these very intricate standards. Instead, Plaintiff makes several sweeping, conclusory allegations concerning alleged misrepresentations, not only without establishing any understanding whatsoever of the relevant industry-recognized HEPA testing standards, but also based upon consumers' purported rising "concerns" about air quality and pollution over the last few years (FAC ¶¶ 6, 14, 15) rather than any specific alleged expectation.

The FAC is wholly devoid of any allegations sufficient to demonstrate that a "reasonable consumer" would view the term "HEPA" to mean that the Products have met an undefined, non-

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

mandatory, higher standard than the industry-recognized appropriate IEST standards.

Accordingly, Plaintiff's UCL, CLRA, and FAL claims fail and must be dismissed.

### b. The FAC Fails to Meet the Heightened Pleading Standard of Rule 9(b).

Rule 9(b) expressly requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022–23 (9th Cir. 2000) (fraud must be pled "with a high degree of meticulousness"). The "particularity" requirement mandates that a plaintiff specifically plead: (1) the contents of the misrepresentation; (2) the identity of the speaker and their authority to speak; (3) when and where the statements were made; (4) whether the statements were oral or written and, in the later instance, the specific documents containing the representations; and (5) how the representations are allegedly false or misleading. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989). "Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged with specificity." *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1097 (C.D. Cal. 2012).

All of Plaintiffs' claims here fall (and fail) under Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to [alleged] violations of the CLRA and UCL"); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d. 947, 963-64 (N.D. Cal. 2013) (applying the heightened pleading standard of Rule 9(b) to FAL, CLRA, and UCL claims). Rule 9(b) expressly requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to comply, the plaintiff must "articulate the who, what, when, where, and how of the misconduct alleged." *Kearns*, 567 F.3d at 1126.

In a case such as this, that involves purportedly deceptive or false advertising, Rule 9(b) requires that the plaintiff sufficiently plead "'what' [he/she] actually viewed and read" and "actual reliance" by the plaintiff on the specifically identified advertisements and/or promotional materials. *Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 19-CV-1345, 2021 WL 822721, at *4-5 (S.D. Cal. Jan. 22, 2021); *see also In re Arris Cable Modem Consumer Litig.*, No. 17-CV-

01834, 2018 WL 288085, at *8 (N.D. Cal. Jan. 1, 2018) ("[A] plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon.").

In *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1013-14 (N.D. Cal. 2014), the court, in dismissing plaintiff's UCL, FAL, and CLRA claims for failure to satisfy Rule 9(b), held that, despite the fact that the complaint "reference[d] a number of specific statements [allegedly made by defendant], plaintiff failed to allege "with sufficient detail what representations he reviewed, when he first reviewed them, or which ones he relied on in deciding to purchase [the product at issue]." The court further explained that plaintiff's allegation that he reviewed the alleged (non-specific) misrepresentations "before purchasing [the product] [was] not enough, as there is no indication as to how long before the purchase his review occurred." *Id*. at 1014-15.

Here, Plaintiff alleges only that he "reviewed and relied on Defendant's warranties and representations about the Products' HEPA-grade filtration capabilities prior to purchasing the Products." FAC ¶ 9. And, although he lists several allegedly false or misleading statements that the Defendant made about the Products, he does not plead (much less with specificity) ***which*** alleged "warranties and representations" regarding the Products he "reviewed" and/or ***when*** he allegedly reviewed same. *Id.* Instead, Plaintiff only alleges, in a wholly conclusory manner, that he reviewed the unspecified "warranties and representations" at some time "prior to purchasing the Products." *Id*. Accordingly, even if Plaintiff had standing to bring this action (which he does not), each of his claims must still be dismissed. *Kearns*, 567 F.3d at 1125-26 (affirming dismissal where plaintiff did not specify in the complaint which advertisements he purportedly "found material in" and "relied upon in making his decision to buy" the product at issue); *see Gutierrez*, 2021 WL 822721, at *4-5 (in dismissing putative named plaintiffs' UCL, FAL, and CLRA claims with prejudice, the court stressed that plaintiffs failed to "identify *which specific advertisement* [p]laintiffs relied on or *what the advertisement explicitly said*" and also failed to "identify *which particular advertisement* they relied on.") (emphasis in the original); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *11 (N.D. Cal., June 5, 2009) ("Merely stating

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

that a purchaser [read] a statement and then purchased a product in a particular year is not

sufficient" to meet Rule 9(b)'s specificity requirements.).

### c. Plaintiff Does Not Plead the Requisite Intent for His Fraud Claim or Facts Sufficient to State a Claim for Punitive Damages.

#### i. Plaintiff Fails to State a Viable Fraud Claim.

Fraud is defined under California law as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code, § 3294(c)(3). To sufficiently plead fraud under California law, a plaintiff must plead: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127 (E.D. Cal. 2013). There must be a showing that the defendant intended "to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Id.* at 1139. The absence of any of the required elements precludes recovery. *Id.*

Plaintiff has failed to plead any of the requisite elements of a fraud claim under California law. As described above, Plaintiff has not alleged that Vesync made any statement or representation that is false with respect to the Products, as there was no mandatory testing standard at the time Plaintiff made his purchases for personal use air purifier products labeled "HEPA." Plaintiff further fails to plausibly allege that Vesync intended to defraud consumers, and makes no allegation that Vesync did not test the Products. This dooms Plaintiff's fraud claim. Moreover, despite the inclusion of several conclusory allegations about the purported concerns of individuals living "across both coasts of the United States" with respect to air quality and pollution (*see* ¶¶ FAC 6, 14, 15), the FAC is wholly devoid of any allegations sufficient to demonstrate that Plaintiff "justifiably relied" on the term "HEPA" in connection with the Products to mean that the Products have met a mandatory testing standard (that does not exist).

Finally, Plaintiff has failed to allege that he has been injured by Vesync's purported conduct such that he is entitled to any damages. As described above, Plaintiff alleges that he has

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

suffered a purely economic injury, but makes no allegation that the products he purchased actually exhibited the alleged defect. *See* FAC ¶ 3 (only identifying alleged testing conducted on "the replacement filters and the filters inside the Products);" ¶ 9 (alleging only that Plaintiff purchased the Products, not that they did not perform a certain way); ¶¶ 37-44 (not identifying Plaintiff's own products as suffering from any alleged defect). Indeed, Plaintiff neither alleges dissatisfaction with the performance of his purchased Products nor that they failed to perform as advertised. Accordingly, Plaintiff's fraud claim must be dismissed.

### ii.    Plaintiff's Request for Punitive Damages Must Be Dismissed.

Plaintiff's Prayer for Relief contains a request for punitive damages (FAC ¶ 17), but the FAC contains no allegations on which a claim for punitive damages could possibly be recovered. Punitive damages are only available under California law when a plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code, § 3294(a). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.*, (c)(2).

The FAC is utterly devoid of allegations that Vesync subjected Plaintiff to "cruel and unjust hardship." *See* FAC generally. "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the or safety of others." Cal. Civ. Code, § 3294 (c)(1). Again, the FAC contains no allegation that Vesync intended to injure Plaintiff or anyone else, nor that it willfully and consciously disregarded anyone's rights or safety (which is the only appropriate way to describe these facts). Indeed, the FAC does not allege – nor can it allege – that anyone was physically harmed in any way by the Products or that the Products were unsafe, or less safe than any other product. Any claim for punitive damages is wholly unsupported by the allegations in the FAC, and the Court should dismiss it.

Moreover, a punitive damages claim against an entity defendant must allege that such entity "authorized or ratified the wrongful conduct for which the damages are awarded" and that the "act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code, § 3294(b). The FAC contains no allegation that Vesync

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612-4709
415 882 5000

1  authorized or ratified any allegedly false statements about the Products. Nor does the FAC allege

2  that any Vesync officer, director, or managing agent authorized or ratified any such purported

3  conduct. To the contrary—while Vesync denies that it made any false or misleading statements

4  whatsoever —the FAC alleges in detail that ***Plaintiff*** himself believes that Vesync affirmatively

5  discontinued making the allegedly false statements once they were challenged by competitor

6  Dyson through the NAD process. Accordingly, Plaintiff's request for punitive damages must be

7  dismissed.

8  <u>**CONCLUSION**</u>

9  For the foregoing reasons, the Court should dismiss the FAC in its entirety and with

10  prejudice.

11

12  Dated:  November 22, 2023                    DENTONS US LLP

13

14  By: ____*/s/ Sarah Carlson*_____

15  Sarah Carlson

16  Attorneys for Defendant
   VESYNC CORPORATION

17

18

19

20

21

22

23

24

25

26

27

28