**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
5805 Sepulveda Blvd. #801
Sherman Oaks, CA 91403
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK CHEN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>VESYNC CORPORATION,<br><br>          Defendant. | Case No. 3:23-cv-04458-TLT<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 5, 2024<br>Time: 2:00 PM<br>Room: Courtroom 9 – 19th Floor<br>Judge: Hon. Trina L. Thompson |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION .................................................................................................................1

THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS...................................3

I.      LEGAL STANDARD .............................................................................................3

II.     PLAINTIFF HAS STANDING TO BRING HIS CLAIMS .................................4

        A.      Plaintiff Alleges A Concrete Injury................................................................4

        B.      Plaintiff Alleges A Particularized Injury .......................................................6

        C.      Plaintiff Has Standing To Sue On Behalf Of Everest Air Purchasers
                Because The Products Are Substantially Similar ...........................................8

        D.      Plaintiff Can Assert Claims On Behalf Of The Nationwide Class...........................10

III.    PLAINTIFF'S CLAIMS ARE ACTIONABLE AND SHOULD NOT BE
        DISMISSED UNDER FRCP 12(b)(6) ...................................................................12

        A.      Reasonable Consumers Would Be Deceived By Defendant's
                Conduct.........................................................................................................12

        B.      Plaintiff Alleges That Defendant's Conduct Is Fraudulent With The
                Requisite Specificity.....................................................................................15

                1.      Plaintiff Pleads The "Who, What, When, Where, Why, And
                        How" Of Defendant's Conduct ........................................................15

                2.      Defendant's Conduct Is Fraudulent Under The Common Law
                        And Should Be Subject To Punitive Damages...............................16

CONCLUSION ...................................................................................................................19

**CASES**

*Ashton v. J.M. Smucker Co.*,
 2020 WL 8575140 (C.D. Cal. Dec. 16, 2020)...................................................... 11

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
 2012 WL 2990766 (N.D. Cal. July 20, 2012) .................................................... 9, 10

*Backus v. Gen. Mills, Inc.*,
 122 F. Supp. 3d 909 (N.D. Cal. 2015) .................................................................. 9

*Banh v. Am. Honda Motor Co., Inc.*,
 2019 WL 8683361 (C.D. Cal. Dec. 17, 2019) ...................................................... 10

*Barton v. Pret A Manger (USA) Limited*,
 535 F. Supp. 3d 225 (S.D.N.Y. 2021) .................................................................. 8

*Brown v. Food for Life Baking Co., Inc.*,
 658 F. Supp. 3d 732 (N.D. Cal. 2023).................................................................. 9

*Brown v. Hain Celestial Grp., Inc.*,
 913 F. Supp. 2d 881 (N.D. Cal. 2012).................................................................. 9

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
 598 F.3d 1115 (9th Cir. 2010) .............................................................................. 3

*Clinger v. Edgewell Personal Care Brands, LLC*,
 2023 WL 2477499 (D. Conn. Mar. 13, 2023) ...................................................... 8

*Cook v. Brewer*,
 637 F.3d 1002 (9th Cir. 2011) .............................................................................. 4

*Davidson v. Kimberly–Clark Corp.*,
 889 F.3d 956 (9th Cir. 2018) ................................................................................ 15

*DiGiacinto v. RB Health (US) LLC*,
 2023 WL 2918745 (N.D. Cal. Apr. 11, 2023)...................................................... 16

*Doe v. Roblox Corp.*,
 602 F. Supp. 3d 1243 (N.D. Cal., 2022)............................................................... 17

*Dyson, Inc. v. Bissell Homecare, Inc.*,
 951 F. Supp. 2d 1009 (N.D. Ill., 2013).................................................... 13, 14, 18

*Fine v. ConAgra Foods, Inc.*,
 2010 WL 11595914 (C.D. Cal. June 29, 2010)..................................................... 7

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. 2014) ..................................................... 10

*Freeman v. Indochino Apparel, Inc.*,
443 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................. 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ............................................................................... 3

*Gitson v. Trader Joe's Co.*,
2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ..................................... 10

*Henning v. Luxury Brand Partners, LLC*,
2023 WL 3555998 (N.D. Cal. May 11, 2023) ......................................... 5

*Hoffman v. 162 N. Wolfe LLC*,
228 Cal. App. 4th 1178 (2014) ............................................................. 17

*Hough v. Big Heart Pet Brands, Inc.*,
2020 WL 7227198 (N.D. Cal. Dec. 8, 2020) .......................................... 7

*Hrapoff v. Hisamitsu Am., Inc.*,
2022 WL 2168076 (N.D. Cal. June 16, 2022) ................................. 11, 12

*In re iPhone 4S Consumer Litig.*,
2013 WL 3829653 (N.D. Cal. July 23, 2013) ....................................... 11

*In re Plum Baby Food Litigation*,
2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) ....................................... 5

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................................................... 15, 16

*Kutza v. Williams-Sonoma, Inc.*,
2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ....................................... 12

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .............................................................. 12

*Lazar v. Superior Court*,
12 Cal. 4th 631 (1996) ........................................................................ 16

*LeGrand v. Abbott Labs.*,
655 F. Supp. 3d 871 (N.D. Cal., 2023) ................................................ 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................... 3

*Maisel v. S.C. Johnson & Son, Inc.*,
2021 WL 1788397 (N.D. Cal. May 5, 2021) ................................ 5, 9, 10

*Mancuso v. RFA Brands, LLC,*
   454 F. Supp. 3d 197 (W.D.N.Y. 2020) ................................................................. 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
   519 F.3d 1025 (9th Cir. 2008) ............................................................................. 3

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indemnity Co.,*
   225 F. Supp. 3d 1034 (N.D. Cal. 2016) ............................................................. 17

*Maya v. Centex Corp.,*
   658 F.3d 1060 (9th Cir. 2011) ............................................................................. 4

*Mazza v. Am. Honda Motor Co.,*
   666 F.3d 581 (9th Cir. 2012) ............................................................................. 11

*McGee v. S-L Snacks National,*
   982 F.3d 700 (9th Cir. 2020) ............................................................................... 5

*Melendres v. Arpaio,*
   784 F.3d 1254 (9th Cir. 2015) ................................................................... 9, 11, 12

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007 (9th Cir. 2020) ........................................................................... 19

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.,*
   2023 WL 5836976 (N.D. Cal. Sept. 8, 2023) ..................................................... 16

*Nguyen v. Barnes & Noble Inc.,*
   2015 WL 12766050 (C.D. Cal. Nov. 23, 2015) .................................................. 10

*Nunez v. Saks Inc.,*
   771 F. App'x 401 (9th Cir. 2019) ....................................................................... 12

*Onaka v. Shiseido Americas Corp.,*
   2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ...................................................... 8

*Rice-Sherman v. Big-Heart Pet Brands, Inc.,*
   2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ...................................................... 7

*Roney v. Miller,*
   705 F. App'x 670 (9th Cir. 2017) ....................................................................... 19

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC,*
   552 F. Supp. 3d 901 (N.D. Cal. 2021) ................................................................. 4

*Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.,*
   2023 WL 2324291 (N.D. Cal. Feb. 16, 2023) ...................................................... 6

*Swafford v. Int'l Bus. Machs. Corp.,*
   383 F. Supp. 3d 916 (N.D. Cal. 2019) ............................................................... 16

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................... 4

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. 15

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................... 3

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................... passim

*Wilson v. ColourPop Cosmetics, LLC*,
   2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) ...................................... 5, 6

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................................... 4

**STATUTES**

California Civil Code § 1770(a)(7) ................................................................ 13

**RULES**

Fed. R. Civ. P. 9 ................................................................................... 15, 16

Fed. R. Civ. P. 12 .................................................................................. 3, 12

**INTRODUCTION**

Plaintiff Rick Chen ("Plaintiff") brings this putative class action because Defendant Vesync Corporation d/b/a Levoit ("Defendant"), the self-proclaimed "#1 Best Selling Air Purifier Brand in the US," induced him to purchase a number of its Levoit branded air-purifier products based on false claims that its EverestAir Smart True HEPA, Core 300 and Core 300S air purifiers (the "Air Purifiers," or, the "Products") were equipped with HEPA filters.[1] First Amended Complaint ("FAC") ¶¶ 1-9. Unbeknownst to Plaintiff and all other consumers, the Products did not actually have HEPA filters. *Id.* ¶ 1.

This lie, which led to astronomical sales throughout the COVID-19 pandemic and numerous catastrophic wildfires, was exposed as part of a challenge by Dyson, Inc. ("Dyson"), a competitor, through the National Advertising Division of the Better Business Bureau ("NAD"). *Id.* The NAD Final Report, which summarizes the dispute, states that Dyson had commissioned industry-standard HEPA testing of Defendant's Products, and they failed. FAC Ex. A. Defendant claims it has test results that refute Dyson's challenge, but—instead of producing them—Defendant decided to permanently discontinue all claims that the Products have HEPA filters or HEPA performance. *Id.*

In an attempt to cover up and deflect its use of inferior filter materials, Defendant asserts in its motion that its decision to permanently remove the HEPA claim was for "independent business considerations." Defendant's Motion to Dismiss ("MTD") at 6.

Defendant now moves to dismiss Plaintiff's First Amended Complaint on a host of grounds, including Article III standing arguments that have no legal basis and are expressly contradicted by Plaintiff's allegations. *Id.* at 2-3.

Defendant's first argument is that Plaintiff lacks Article III standing because he does not have a concrete or particularized injury. This is unavailing because Plaintiff alleges that he

---

[1] According to the Centers for Disease Control and Prevention: "Using a **portable high-efficiency particulate air (HEPA) cleaner** can provide filtration if you don't have an HVAC system or can improve filtration if you do have an HVAC system. They are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing." CENTER FOR DISEASE CONTROL AND PREVENTION, *Improving Ventilation in Your Home*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilation-home.html (last visited Jan. 4, 2024).

suffered a concrete injury by paying for Defendant's products that he would not have purchased, or he would have paid substantially less for, had Defendant not made the false and misleading statements about the Products' purifying qualities and characteristics. *Id.* ¶ 7. In fact, Defendant's own motion concedes that this allegation alone is sufficient to support an alleged economic injury. MTD at 10 ("In order to adequately allege a concrete economic injury under a benefit of the bargain theory, a plaintiff must allege that [he/she] bargained for a product worth a given value but received a product worth less than that value." (cleaned up and citation omitted)).

With regard to a particularized injury, Plaintiff alleges that his counsel commissioned an industry-standard HEPA test on the Core 300 product, which it failed. FAC ¶¶ 41-44. And once again, Defendant cites to case law that supports Plaintiff's standing (this time a particularized injury), as "[c]ourts generally require a plaintiff to test their own products to show standing" or must plead facts making it "at least plausible" that the plaintiff purchased the allegedly nonconforming product(s). MTD at 12. Since this testing has been performed by Plaintiff, Defendant has refuted its defense in its own motion.

Defendant next argues that Plaintiff lacks standing to sue on behalf of consumers who purchased any of the other similar products. MTD at 13-14. That is not supported by the law or the facts. At the motion-to-dismiss stage, a plaintiff only needs to allege their own, individual standing--whether they can represent purchasers of similar products is a typicality question for class certification. Here, Plaintiff alleged individual standing, as noted above. Whether he can represent purchasers of other, similar purifiers, like the EverestAir, is an issue for class certification. Moreover, Plaintiff adequately alleges the Products are substantially similar because Defendant uses the same substandard filter material in all of the Products. FAC ¶ 44. That is sufficient to withstand dismissal at this early stage.

As to Rule 9(b)'s heightened pleading standard, Plaintiff pleaded his fraud claim with particularity by identifying the "who, what, when, where, and how" of Defendant's unlawful conduct. FAC ¶¶ 57-67. Plaintiff's claims are further bolstered by the fact that Defendant – as the designer, manufacturer, and marketer of the Products – was in a position of superior knowledge as to the substandard nature of its Products' filters. *Id.* ¶¶ 93-95.

Finally, Defendant's attempt to have the case dismissed because the allegations do not provide enough detail as to how a reasonable consumer would be misled by the false HEPA claims is premature. MTD at 16-17. Plaintiff's claims are undoubtedly plausible under already-existing law in this District. Plaintiff alleges that Defendant's representations on the label are patently false and have the capacity to mislead reasonable consumers seeking out HEPA air purifiers. That is more than sufficient to overcome Defendant's motion to dismiss.

In sum, this is a simple case: Defendant manufactures and sells Air Purifiers and replacement filters that are prominently labeled as HEPA-grade when Plaintiff has confirmed through industry-standard testing that they are not. The Court should deny Defendant's Motion to Dismiss in its entirety.

## THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court's subject-matter jurisdiction may be challenged for want of Article III standing. *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). To satisfy Article III's standing requirements, a plaintiff must demonstrate that "(1) [they] ha[ve] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "For purposes of ruling on a motion to dismiss for want of standing [under Rule 12(b)(1)], both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Similarly, in ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quotations and citation omitted). Additionally, "[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). If "the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief," the motion to dismiss must be denied. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 909-10 (N.D. Cal. 2021).

## II.    PLAINTIFF HAS STANDING TO BRING HIS CLAIMS

### A.    Plaintiff Alleges A Concrete Injury

Defendant first argues that Plaintiff has failed to "allege a concrete injury" sufficient to confer Article III standing. MTD at 10-11. That is wrong. Here, Plaintiff sufficiently alleges an economic injury-in-fact. In the First Amended Complaint, Plaintiff Chen asserts that "[h]ad Defendant not warranted and represented that the Products were capable of HEPA-grade filtration, [he] *would not have purchased the Product or would have paid substantially less for it*." FAC ¶ 9 (emphasis added); *see also id.* ¶ 61 ("As a result of these false and misleading practices, Defendant induced Plaintiff and the Class and Subclass to purchase the Products that Plaintiff, the Class and members of the Subclass *would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products*." (emphasis added)). Those allegations are more than sufficient to establish Article III standing.

In *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018), Judge William H. Orrick of this District held that "[a] 'quintessential injury-in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they would not have spent.'" *Id.* at 846 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)). In fact, the injury allegations in *Zeiger* are virtually identical to those here. *Id.* at 846 ("Plaintiffs' claims are premised on their allegations that were it not for defendants' labeling, which omit the presence of lead, arsenic, and

BPA in their Products, ***plaintiffs would not have purchased and spent money on their Products***." (emphasis added)).  In *McGee v. S-L Snacks National*, 982 F.3d 700 (9th Cir. 2020), the Ninth Circuit similarly declared, "We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *Id.* at 706.  Numerous courts in this District have reached the same conclusion.  *See, e.g.*, *Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *3 (N.D. Cal. May 11, 2023) (Thompson J.) ("Thus, Plaintiff plausibly alleged the risk of benzene and that she would not have purchased the Products had she known about the risk.  This is sufficient to plead standing based on economic injury."); *In re Plum Baby Food Litigation*, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022) ("The Court finds that plaintiffs have adequately alleged an injury in fact by alleging that they 'would not have paid [the purchase or the premium price] had they known that the Baby Foods included levels of Heavy Metals, perchlorate, and/or undesirable toxins or contaminants.'" (alteration in original)); *Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *3 (N.D. Cal. May 5, 2021) ("[B]ecause [plaintiff] alleges she purchased the [defendant's product] and would not have if she knew they were mislabeled, the Court finds she has Article III standing to bring this case.").

Ignoring the weight of authority, Defendant instead relies primarily on this Court's recent decision in *Wilson v. ColourPop Cosmetics, LLC*, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) (Thompson J.).  That case is distinguishable.  In *Wilson*, the plaintiff alleged that some of the defendant's eyeshadow and eyeliner products were "unsafe and unfit for use in the eye area" because of certain additives in the products.  *Id.* at *1.  This Court held that the plaintiff did not have Article III standing because "Plaintiff's allegation[] that the Products she purchased are unsafe is speculative."  *Id.* at *5.  The Court likewise emphasized that "the FDA has not made a scientific determination that [the products] are likely to cause injuries."  *Id.* at *4.  Here, by contrast, Plaintiff does not make any allegation about the safety of the Air Purifiers and has conducted actual testing on the Products which showed that their filters are not HEPA, despite Defendant's explicit representations to consumers.  *See* FAC ¶ 3 ("Independent testing by Plaintiff's counsel . . . has shown that the replacement filters and the filters inside the Products do

not meet HEPA standards."); *id.* ¶ 43 ("Just as Dyson had found before, testing by the lab …
commissioned by Plaintiff's counsel found that Defendant's Core 300 and 300S filters were not
truly HEPA-grade.").  Plaintiff's allegations are also bolstered by testing conducted by Dyson
showing that the Air Purifiers do not meet HEPA standards.  *Id.* Ex. A at 2.  Accordingly,
Plaintiff's allegations are not speculative, and this Court's decision in *Wilson* is inapplicable here.

Defendant also contends that Plaintiff cannot rely on its HEPA representations because
"there was no HEPA testing standard . . . when Plaintiff purchased the Products in 2020."  That
argument is incorrect and strays into issues of fact that cannot be determined on a motion to
dismiss.  *See Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.*, 2023 WL 2324291, at *13 (N.D.
Cal. Feb. 16, 2023) (Thompson J.) (refusing to decide a merits argument at the motion to dismiss
stage and ruling that "[w]hile Defendants may ultimately be correct, this is a question of fact that
the Court does not resolve on a motion to dismiss").  Plaintiff's complaint includes detailed
allegations about the HEPA standard that the Court must accept as true at this juncture.  *See* FAC
¶¶ 19-20 ("HEPA filters are strictly designed and must adhere to certain specifications in order to
be called a HEPA filter. . . . To be called a HEPA filter, the filter must capture at least 99.97% of
dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns.").  The FAC also
alleges that Plaintiff "believed that the Air Purifiers would filter contaminants at or above the
HEPA standard."  *Id.* ¶ 9.  Plaintiff's economic-injury allegations are more than sufficient to confer
Article III standing.

**B.  Plaintiff Alleges A Particularized Injury**

Next, Defendant contends that Plaintiff has failed to allege a particularized injury traceable
to Defendant's conduct.  MTD at 12-13.  Specifically, Defendant asserts that to have standing,
Plaintiff must have tested his own product.  *Id.* at 12 ("Courts generally require a plaintiff to test
their own product to show standing.").  It is not clear if Defendant believes that Plaintiff must have
tested the actual device he purchased or if it thinks it is sufficient to test the same model.
Defendant cites no case holding that Plaintiff's actual device has to be tested to have Article III
standing.  Regardless, both Plaintiff's counsel and Dyson tested the exact same model Air Purifier
that Plaintiff purchased, *i.e.* the Levoit Core 300 True HEPA Filter Air Purifier.  *See* FAC ¶ 9

("While in California, Plaintiff Chen purchased the ***Levoit Core 300 True HEPA Filter Air Purifier*** from Defendant's Amazon store webpage on September 27, 2020 for $99.99"); *id.* ¶ 39 (noting that Dyson relied upon "***third-party testing conducted by SGS IBR Laboratories on the filters*** used in the Levoit EverestAir® Smart True HEPA and ***Core 300*** and Core 300S True HEPA air purifiers that Dyson argued demonstrate that the filters do not meet the IEST HEPA standards" (emphasis added)); *id.* ¶ 43 ("Just as Dyson had found before, testing by the lab . . . commissioned by Plaintiff's counsel found that ***Defendant's Core 300 and 300S filters were not truly HEPA-grade.*** (emphasis added)).

Judge Orrick addressed the same argument Defendant makes in *Rice-Sherman v. Big-Heart Pet Brands, Inc.*, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020). In that case, the defendant argued that the "plaintiffs lack Article III standing because they do not specifically allege how, where, and why the 'independent testing' was performed, and whether each specific Nature's Recipe product purchased by each named plaintiff was tested." *Id.* at *5. The Court rejected that argument, holding that "[s]uch allegations are not necessary for Article III standing." *Id.* at *6. Other cases have likewise accepted allegations based on independent or third-party testing. *See, e.g.*, *Hough v. Big Heart Pet Brands, Inc.*, 2020 WL 7227198, at *2-3 (N.D. Cal. Dec. 8, 2020) ("But even though the "Report of Analysis" document reveals that the bag tested was not the exact bag Hough purchased, that does not dissolve her standing to bring these claims."); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 202 (W.D.N.Y. 2020) ("Defendant argues that because no testing was performed on plaintiff's own power bank and because plaintiff's claimed injury relied on speculative extrapolation of a single set of test results, plaintiff has failed to allege a plausible injury in fact . . . . At the pleading stage, however, more specific allegations are not necessary for Article III standing."). Indeed, some courts have determined that no testing is required either by the plaintiff or a third party to assert claims. *See, e.g.*, *Fine v. ConAgra Foods, Inc.*, 2010 WL 11595914, at *1 (C.D. Cal. June 29, 2010) ("While Plaintiff herself does not have direct knowledge of the presence of diacetyl in Defendant's products, Plaintiff relies on the work and statements of several health experts and alleges that '[k]nown substitutes for diacetyl still contain molecules of diacetyl.' At this stage of the litigation, the Court must view all material allegations in the

Complaint as true and thus accepts Plaintiff's contention regarding the presence of diacetyl in Defendant's products."); *Barton v. Pret A Manger (USA) Limited*, 535 F. Supp. 3d 225, 242 (S.D.N.Y. 2021) ("Defendant invites the Court to disregard another fundamental principal by asking the Court to discredit Plaintiff's allegations regarding the GMO content of Defendant's products in the absence of testing. As described above, Plaintiff specifically alleges that Defendant's products at issue in this case 'use plants or plant derivatives grown or created from GMOs.' This is a fact that the court is required to accept in the context of this motion to dismiss.").

Defendant relies primarily on a recent decision from a New York district court entitled *Onaka v. Shiseido Americas Corp.*, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023). In that case, the court granted the motion to dismiss because the plaintiffs had only tested "the same kind of Products from the same line of Products that they themselves had purchased." *Id.* at *4. Here, however, Plaintiff's counsel and Dyson tested the exact same model Air Purifier that Plaintiff purchased a total of three times. FAC ¶ 1. This distinction is critical; indeed, even the *Onaka* Court recognized that "[a] product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the same line of such products." *Onaka*, 2023 WL 2663877, at *5 (quoting *Clinger v. Edgewell Personal Care Brands, LLC*, 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023). The Court should reject Defendant's Article III standing argument concerning the testing Plaintiff relies upon.

## C. Plaintiff Has Standing To Sue On Behalf Of Everest Air Purchasers Because The Products Are Substantially Similar

Defendant next argues that Plaintiff "lacks standing to bring claims relating to the air purifiers and filters he does not allege he purchased." MTD at 14. Defendant's argument is unavailing for two key reasons.

First, that argument is premature. As the Ninth Circuit already explained, "[t]he question whether [a plaintiff] may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of

representation." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).  Thus, Defendant's

standing challenge should be addressed at class certification with a more developed record.

Second, even if not premature, the majority of courts to consider this issue have recognized

that "under the class action mechanism, a named plaintiff may properly include allegations in his

complaint involving products that he did not purchase, so long as those products are substantially

similar to the products that allegedly caused his own injuries." *Backus v. Gen. Mills, Inc.*, 122 F.

Supp. 3d 909, 924-25 (N.D. Cal. 2015); *see also Brown v. Food for Life Baking Co., Inc.*, 658 F.

Supp. 3d 732, 741 (N.D. Cal. 2023) (Thompson J.) ("As this alleged omission is the same for all of

the accused products, the Court finds that they are substantially similar.  Issues pertaining to

specific products can be addressed at the class certification stage.  Accordingly, the Court finds that

Plaintiffs have standing to include products they did not purchase at this stage.").  The critical

inquiry is "whether there is sufficient similarity between the products purchased and not

purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.,* 2012 WL 2990766, at *11 (N.D. Cal. July

20, 2012); *see also id.* at *12 ("[T]here is no bright line rule that different product lines cannot be

covered by a single class." (citations omitted)).[2]

Here, each of the Products at issue are substantially similar because each of the Air

Purifiers and their replacement filters are advertised as being "HEPA" filters when they are not.

*See* FAC ¶¶ 1-2 ("This is an action arising from the false and misleading representations that

Defendant made for years about its Levoit-brand EverestAir Smart ***True HEPA***, and Core 300 and

Core 300S ***True HEPA*** air purifiers . . . , along with their respective replacement filters. . . .

Specifically, Defendant represented that the Air Purifiers are equipped with High Efficiency

Particulate Air (HEPA) filters when in fact they were not.  Defendant also represented that the

replacement filters it sells for the Air Purifiers are 'H13 ***True HEPA***' filters, when in fact they

were not." (emphasis added)).  For the purposes of the issues in this litigation, there are no material

differences between the different Air Purifier products.  They are all advertised as "HEPA" Air

---

[2] Courts routinely permit plaintiffs to advance past the pleadings even when the products at issue
involve different brands, labels, uses, and ingredients, amongst other differences. *See, e.g.*, *Maisel
v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *1, *5 (N.D. Cal. May 5, 2021); *Brown v. Hain
Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 885 (N.D. Cal. 2012).

Purifiers and Filters. That is sufficient because "any concerns . . . about material differences are better addressed at the class certification stage rather than at the [pleadings] stage." *Astiana*, 2012 WL 2990766, at *13.[3] This Court should therefore reject Defendant's invitation to carve out substantially similar products before discovery even begins.

**D. Plaintiff Can Assert Claims On Behalf Of The Nationwide Class**

Defendant next argues that Plaintiff "improperly seeks to apply California law to the purported claims of the nationwide putative class." MTD at 15. Once again, Defendant is wrong. First, Defendant ignores the fact that it is a California corporation based in California. FAC ¶ 10 ("Defendant Vesync Corporation is a California corporation with headquarters in Anaheim, California."). Accordingly, contrary to Defendant's assertion, California has an interest in regulating conduct that occurred and emanated from this state, and courts have applied California law to a nationwide class under such circumstances. *See, e.g., Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *1-4 (C.D. Cal. 2014) (certifying nationwide class in a false advertising case involving a defendant headquartered in California).

Moreover, it is premature to make a determination as to what law applies to the proposed class and whether a nationwide class can be certified. "A detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record." *Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *4 (C.D. Cal. Dec. 17, 2019) (internal quotes and citations omitted)). Dismissal at this stage would be improper, as "most courts in this circuit hold that a claim should not be dismissed on a conflict of law analysis at the pleading stage, especially when dealing with a potential nationwide class action." *Nguyen v. Barnes & Noble Inc.*, 2015 WL 12766050, at *4 (C.D. Cal. Nov. 23, 2015) (quotations and citations omitted).

---

[3] Indeed, as one court noted in rejecting this argument for claims concerning 177 additional products, "where misrepresentations across product lines are identical, the dissimilarity of the accused products is relatively unimportant." *Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *2, *10 (N.D. Cal. Mar. 14, 2014) (internal quotation omitted); *Maisel*, 2021 WL 1788397, at *1, *5 (finding substantially similar "14 cleaning products under the Ecover brand name," including scrubs, powders, fabric softeners, laundry detergents, soaps, stain removers, and toilet cleaners and reasoning in part that "[t]he misleading effect of the Products' labels is the same for all Products").

Defendant's argument also confuses the requirements of standing with the analysis required under Rule 23. "[R]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citation omitted). Thus, the issue is whether Plaintiff's injuries are sufficiently similar to those of the putative class to justify application of California law to a nationwide class. *See id.* Such questions are premature.

Defendant cites *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) to assert that Plaintiff lacks standing to represent a nationwide class. MTD at 15. However, *Mazza* addressed whether "differences between California consumer protection laws and the consumer protection laws of other states **preclude class certification**." *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *8 (N.D. Cal. July 23, 2013) (emphasis added and quotations omitted). Yet "choice of law is not the same thing as standing." *Id. Mazza* "rejected the defendant's standing argument despite the court's conclusion that the application of multiple jurisdictions' consumer protection laws precluded class treatment." *Burs* (citing *Mazza*, 666 F.3d at 595).

Defendant's standing argument is contrary to not only *Mazza* but also to *Melendres*, 784 F.3d at 1261-62, in which the Ninth Circuit adopted the "class certification approach" to questions of standing, whereby "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." Following *Melendres*, courts have repeatedly rejected standing challenges like Defendant's at the pleading stage. *See*, *e.g.*, *Hrapoff v. Hisamitsu Am., Inc.*, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022) (citing *Melendres* and holding "the Court will not dismiss the complaint for failure to establish nationwide standing"); *Ashton v. J.M. Smucker Co.*, 2020 WL 8575140, at *7 (C.D. Cal. Dec. 16, 2020) ("Moreover, Plaintiffs are correct that Defendants 'appear[ ] to conflate the concept of standing with choice-of-law analysis.' The issue here is not whether the Article III standing requirements are met, but whether California law can apply to non-resident class members."). In short, Plaintiff's ability to represent class members

in other states does not turn on his own standing, but on whether "prerequisites for class certification [can be] met." *Melendres*, 784 F.3d at 1262; *see Hrapoff*, 2022 WL 2168076, at *2 (rejecting defendant's attempt to distinguish *Melendres*); *Nunez v. Saks Inc.*, 771 F. App'x 401, 402 (9th Cir. 2019) (plaintiff had individual standing, so the "court should have deferred consideration of whether he was an adequate class representative until the class certification stage"). Plaintiff here has standing to bring his own claims; Defendant's arguments concerning whether California law can be applied to the proposed nationwide class should be reserved for class certification.

## III. PLAINTIFF'S CLAIMS ARE ACTIONABLE AND SHOULD NOT BE DISMISSED UNDER FRCP 12(b)(6)

### A. Reasonable Consumers Would Be Deceived By Defendant's Conduct

Defendant argues that Plaintiff 's UCL, FAL, and CLRA claims fail because "Plaintiff fails to allege . . . that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled" as they do not "understand[] the very intricate [HEPA] standards." MTD at 17 (citation omitted). That is wrong.

To state a claim under the FAL, UCL, or CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer, *i.e.*, members of the public. *See Williams*, 552 F.3d at 938 ("[C]laims under these California statutes are governed by the reasonable consumer test. Under the reasonable consumer standard, Appellants must show that members of the public are likely to be deceived." (cleaned up)). Likely to deceive "indicates that the [label] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). The way in which a reasonable consumer would understand Defendant's labeling (*i.e.*, whether it is likely to deceive) is a question of fact that should be resolved on the evidence – not the pleadings. *See, e.g.*, *Williams*, 552 F.3d at 938 ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018) (same).

First, there is a misrepresentation. Plaintiff alleges that Defendant markets and labels its Products as having HEPA-grade filters. FAC ¶¶ 30-35. However, testing commissioned by Plaintiff's counsel, along with testing independently commissioned by Dyson, shows that the filters included with the Air Purifiers were not HEPA grade. *Id.* ¶ 42. Thus, Defendant misrepresented the "particular standard" of its Products' air filters. *Id.* ¶ 59; California Civil Code § 1770(a)(7). That misrepresentation was likely to deceive reasonable consumers because "they cannot conduct HEPA standard testing" at home and trust that manufacturers like Defendant will accurately describe their products. FAC ¶ 4.

Next, the misrepresentation was material because the HEPA representations directly influenced Plaintiff and the putative class's decision to purchase the Products. *Id.* ¶¶ 9, 62. The HEPA label has weight because "[t]he HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration." *Id.* ¶ 24. And, the HEPA label provides an "assurance" to consumers that the Air Purifier will "offer[] near certain protection against the transmission of airborne pathogens in the home . . . and [] also filter out pollution caused from events like wildfires, which are growing ever more frequent." *Id.* ¶ 22. At this juncture, those allegations are sufficient – whether consumers would be influenced or not by these representations is a quintessential question of fact and should not be resolved at the motion to dismiss stage. *Williams*, 552 F.3d at 938.

Defendant concludes, without evidence or argument, that it is implausible for consumers to specifically seek out air purifiers with HEPA filters unless they understand the "highly technical industry recognized IEST standards." MTD at 17. That is irrational on its face. For one, a federal district court has already held that it is plausible that "filtration efficiency [is] an important [material] feature to consumers." *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1032 (N.D. Ill., 2013). *Dyson* involved a challenge to Bissell's marketing of certain vacuum cleaners as providing "HEPA level performance" when in reality the filters in the vacuums did not perform at that level. *Id.* at 1009. Bissell put forth precisely the same arguments that Defendant asserts here, namely, that there is no one standard for HEPA and that, even if there was, HEPA

performance is not material to consumers.  *Id.* at 1032 ("Bissell now contends that the 2010 Statements [regarding HEPA filtration] were not material.").  The court found that "no reasonable trier of fact could find other than that the [HEPA statements] were material to the consumers when deciding to purchase the [products]" because Bissell's *own* consumer studies showed that "filtration efficiency was one of the 'key features that a customer [is] interested in.'"  *Id.*  Indeed, Defendant appears to concede materiality in its own Motion, stating that ***"[t]he term 'HEPA' gives assurance to consumers that their air filters have been tested in accordance with a recognized voluntary HEPA standard***."  MTD at 4 (emphasis added).  Consumers often purchase products because they have certain features or are of a particular grade, despite not knowing precisely what those features or grades mean.  For example, a consumer may purchase a certain appliance because it is "Energy Star Certified" or has the Energy Star logo, despite not knowing what the logo means or what testing methodology is used to determine if an appliance complies with the Energy Star certification standard.  The same applies here.  Consumers believe that a HEPA filter offers premium filtration, despite not necessarily knowing the contours of the HEPA testing protocol.  Defendant clearly knows this, or else it would not feature the term "HEPA" so prominently in its advertising and packaging.  *See* FAC ¶¶ 30-35.

Finally, Defendant argues "Plaintiff has failed to allege that Vesync has made any false statement or representation about the Products . . . because there was no mandatory standard against which [the HEPA claims] could be measured."  MTD at 16.  Plaintiff alleges that the Products fail under *any* standard, because all standards require at *least* 99.97% filtration efficiency at 0.3 microns.  FAC ¶ 43.  That is supported by Plaintiff's own testing, which was conducted according to the same industry-standard protocol (IEST RP CC001.6, Class H), Defendant purports to have used in its own Products tests.  MTD at 16.  Thus, a disagreement exists as to two material facts: did the Air Purifiers perform at 99.97% filtration efficiency, and are Defendant's test results reliable?  Dismissal would be inappropriate at this stage.  *Williams*, 552 F.3d at 938.

**B.** **Plaintiff Alleges That Defendant's Conduct Is Fraudulent With The Requisite Specificity**

**1.** **Plaintiff Pleads The "Who, What, When, Where, Why, And How" Of Defendant's Conduct**

Defendant next argues that Plaintiff's claims fall under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and must be dismissed because "he does not plead . . . *which* alleged 'warranties and representations' regarding the Products he 'reviewed' and/or *when* he alleged reviewed same [*sic*]." MTD at 19. Defendant is incorrect.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Stating with particularity means identifying "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false*." Davidson v. Kimberly–Clark Corp*., 889 F.3d 956, 964 (9th Cir. 2018); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiff's allegations meet Rule 9(b)'s heightened standard. First, Defendant appears only to take issue with the "what" and "when" of the misconduct alleged. *See* MTD at 19. They will be taken in turn.

As to the "what" and the "why," Plaintiff alleges that he "purchased the Levoit Core 300 True HEPA Filter Air Purifier from Defendant's Amazon store webpage on September 27, 2020, for $99.99." FAC ¶ 9. The name of the product (as listed on Amazon on the date of purchase) is the "what": it is fraudulent in and of itself because it explicitly describes the Product as having a "True HEPA Filter" when in truth the filter does not meet the filtration-efficiency requirements of *any* industry-standard HEPA testing. *Id.* Plaintiff alleges that he reviewed and relied on this descriptor in making his purchasing decision.[4] *Id.* By identifying the specific representation he observed, and how it influenced him, Plaintiff has described the "what" and "why" with the

---

[4] To the extent that there are other representations that Plaintiff Chen explicitly reviewed on the date of purchase, Defendant is correct that they have not been specifically described. Should the Court grant Plaintiff leave to amend his complaint, he will make sure to list out the other specific representations Plaintiff reviewed.

---

requisite specificity. *Cf. Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009) (affirming dismissal where plaintiff failed to allege what misleading advertisement or sales material led him to purchase defendant's vehicle).

The "when" is also clearly described: "September 27, 2020," the date that Plaintiff Chen made his purchase. *Id.* Logic dictates that Plaintiff Chen read the name of the product he was purchasing on the date he purchased it. And, if the fraudulent statement is in the name of the Product, then Plaintiff Chen read that statement on the date of purchase. Accordingly, Plaintiff's allegations comport with Rule 9(b)'s heightened pleading standard.

### 2. Defendant's Conduct Is Fraudulent Under The Common Law And Should Be Subject To Punitive Damages

Last, Defendant contends that Plaintiff's claim for common law fraud fails because he "has not alleged[]": (1) "that Vesync made any statement or representation that is false with respect to the Products, as there was no mandatory [HEPA] testing standard at the time Plaintiff made his purchases;" (2) "that Vesync intended to defraud consumers;" or (3) that he "'justifiably relied' on the term 'HEPA' in connection with the Products to mean that the Products have met a mandatory testing standard." MTD at 20. Defendant also argues that Plaintiff "has failed to allege that he has been injured by Vesync's purported conduct such that he is entitled to any damages" because Plaintiff "makes no allegation that the products he purchased actually exhibited the alleged defect." *Id.* Each of Defendant's arguments fail.

The elements of a claim for fraud are: "(1) a misrepresentation or omission of a fact that should have been disclosed; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *DiGiacinto v. RB Health (US) LLC*, 2023 WL 2918745, at *10 (N.D. Cal. Apr. 11, 2023) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). At the pleading stage, "intent, knowledge, and other conditions of a person's mind may be alleged generally." *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 2023 WL 5836976, at *2 (N.D. Cal. Sept. 8, 2023) (quoting FED. R. CIV. P. 9(b)); *see also LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 896 (N.D. Cal., 2023). And "circumstantial evidence may be used to prove a party's intent [to deceive]." *Swafford v. Int'l Bus. Machs. Corp.*, 383 F. Supp. 3d 916, 928 (N.D. Cal. 2019).

Lastly, "the plaintiff must show that the reliance was reasonable by showing that (1) the matter was material in the sense that a reasonable person would find it important in determining how he or she would act; and (2) it was reasonable for the plaintiff to have relied on the misrepresentation." *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal., 2022) (quoting *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014)).

Here, Plaintiff adequately states a claim for fraud. First, Plaintiff alleges that his counsel had multiple Air Purifiers tested and that they all failed to meet the filtration efficiency threshold (99.97%), which Defendant specifically represents the Products achieving (FAC ¶ 30), and which is required for a filter to qualify as HEPA-grade (*id.* ¶¶ 42-43). Plaintiff further alleges that Dyson commissioned its own testing of the Products that showed the same sub-HEPA performance (*id.*), the results of which Dyson shared with Defendant as part of the NAD Dispute (FAC Ex. A at 2 ("The Challenger presented . . . third-party testing conducted by SGS IBR Laboratories on the filters used in the [Products]")). Because the Products do not have HEPA filters, Defendant's use of the term on its packaging and in the name of the Products constitutes a misrepresentation.

Next, Plaintiff alleges that "Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' HEPA-grade filtration capabilities were untrue and misleading" (FAC ¶ 73), and "Defendant knew" that "the Products do not meet HEPA standards" (*id.* ¶¶ 3, 5). Circumstantial evidence supports the knowledge element: Defendant elected to remove its HEPA claims despite claiming to have HEPA test results that purportedly refuted Dyson's challenge (FAC Ex. A at 3) – one plausible explanation for this decision is that Defendant knew its test results would not hold up to scrutiny, but used them anyway to lend its HEPA representations an air of credibility; this worked for so long because no one had checked the integrity of their testing until Dyson did. Without the benefit of discovery, Plaintiff can only surmise based on the publicly available evidence, and what Defendant knew is a question of fact not suitable for disposition at this stage in the pleadings. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indemnity Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016) ("Knowledge, like the other elements of fraud, is a 'question of fact[.]'").

Regarding intent to induce reliance, Plaintiff alleges that "Defendant's false and misleading conduct was intended to induce reliance" because "Plaintiff and the members of the Class and Subclass would not have purchased [the Air Purifiers] or would have paid substantially less for [them]" had they known that Defendant's HEPA claims were false. FAC ¶ 94. Again, circumstantial evidence lends credence to the allegations: Plaintiff alleges that consumers seek out and are willing to pay more for HEPA air purifiers because they believe that "[t]he HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration." *Id.* ¶ 24. Furthermore, Plaintiff alleges that consumer demand for high-quality air purifiers has exploded since 2020 due to the COVID-19 pandemic, which dominated public attention and catalyzed national discussions about airborne pathogens and air quality. *Id.* ¶ 18. Defendant therefore knew that air-quality claims were important to consumers, and also knew that consumers associated the term "HEPA" with top-of-the-line filtration as a result of the increased public attention air purifiers were getting. *Id.* ¶¶ 16-18, 24. Thus – with consumer awareness, demand, and willingness to pay for HEPA air purifiers at unprecedented levels – the peri- and post-pandemic market presented Defendant with an exploitable opportunity: by labeling its Products as HEPA-grade, Defendant could charge more for its Air Purifiers and more consumers would be enticed into purchasing them. Thus, Defendant plastered its false HEPA claims all over the Product's packaging and marketing. *Id.* ¶¶ 29-36. Common sense dictates that Defendant's misrepresentations were intentional: if Defendant did not think the HEPA labeling was meaningful to consumers, it would not have spent the time and money designing advertising materials that describe what HEPA means, and including "HEPA" in the Products' very names. *See Bissell,* 951 F. Supp. 2d at 1032 ("Bissell's consumer research and the placement of the [HEPA Claims] on Bissell's website, products, and product packaging clearly shows that Bissell believed the 2010 Statements to be material to consumers.").

As to justifiable reliance, the first element is met because Plaintiff has alleged in the complaint that the HEPA labeling was material to consumers, even if they did not understand the technical underpinnings of HEPA testing. *See supra* Section III(A); FAC ¶ 24. Turning to the second element, Plaintiff alleges that consumers justifiably relied on Defendant's

misrepresentations because they "cannot conduct HEPA standard testing" on their own.  FAC ¶ 4.
Indeed, reasonable consumers have no reason to question the highly specific representations made
by the manufacturer of the best-selling air purifiers in the United States.  *Id.* ¶ 62.  Ultimately,
however, "whether a misrepresentation is sufficiently material to allow for an inference of reliance
is generally a question of fact that cannot be decided at the motion to dismiss stage."  *Moore v.*
*Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020).

Finally, Plaintiff sufficiently alleges damages because he alleges that (1) all of the Products
used non-HEPA filters (FAC ¶ 59), (2) he purchased the Product because it was advertised as
HEPA-grade (*id.* ¶ 61), and (3) he paid more for the Product than he otherwise would have had the
HEPA representations not been made about the Products (*id.*; *see supra* Section II(A)).

As Plaintiff has sufficiently alleged a claim for fraud against Defendant, his prayer for
punitive damages should not be dismissed.  *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d
1107, 1114-15 (N.D. Cal. 2020).  Indeed, "dismissal of plaintiff's request for punitive damages at
this stage is premature and without a substantial basis."  *Id.*

## CONCLUSION

The Court should deny Defendant's Motion to Dismiss in its entirety.  Alternatively,
Plaintiff respectfully requests leave to amend to address any curable deficiencies the Court may
identify.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in
denying leave to amend after dismissing first amended complaint).

Dated:  January 5, 2024          **BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com

*Attorneys for Plaintiff*