UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Trina L. Thompson, Judge

| | |
|---|---|
| RICK CHEN, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| VS. | ) **NO. 3:23-CV-04458 TLT** ) |
| VESYNC CORPORATION, | ) ) |
| Defendant. | ) ) ) |

San Francisco, California
Tuesday, August 13, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

BURSOR & FISHER PA
1990 North California Boulevard
Suite 940
Walnut Creek, California 94596
BY: **L. TIMOTHY FISHER, ATTORNEY AT LAW**
**LUKE W. SIRONSKI-WHITE, ATTORNEY AT LAW**

For Defendant:

DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, California 92121
BY: **SARAH E.S. CARLSON, ATTORNEY AT LAW**

DENTONS US LLP
2398 East Camelback Road, Suite 850
Phoenix, Arizona 85016-9007
BY: **ABBY DOCKUM, ATTORNEY AT LAW**

REPORTED BY: Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter

**P R O C E E D I N G S**

---o0o---

**THE COURT:**  We'll wait for all parties to approach, and we'll allow our courtroom deputy to place it on the record.

**THE CLERK:**  Now calling Case Number 23-cv-04458, Chen vs. Vesync Corporation.

Counsel, will you please state your appearances, beginning with the plaintiff.

**MR. FISHER:**  Good afternoon, Your Honor.  Timothy Fisher of Bursor & Fisher for plaintiff, Rick Chen.

**THE COURT:**  Good afternoon.

**MS. CARLSON:**  Hi.  I'm Sarah Carlson from Dentons on behalf of defendant, Vesync.

**THE COURT:**  Good afternoon.

And starting with the plaintiff, would you like to also introduce your colleague who's present.  But stay near the microphone so that your voice is picked up, please.

**MR. FISHER:**  Yes, Your Honor.  With me today is my associate Luke Sironski-White of my firm.

**THE COURT:**  All right.  Thank you.

And there seems to be yet another presenter on the table, in the box.

**MR. FISHER:**  Oh.  We do have the box here, if that would be helpful to Your Honor, but we'll get to that.

**THE COURT:** All right. I wasn't expecting demonstratives, but thank you.

And then on behalf of defense, if you could also introduce your colleague.

**MS. CARLSON:** Yes. I am pleased to introduce Abby Dockum, who is an associate at Dentons and is working with me on this matter.

**THE COURT:** Thank you. Good afternoon.

Now, will either of your colleagues be presenting during this discussion?

**MR. FISHER:** Not for plaintiff, Your Honor.

**MS. CARLSON:** Not for defendant.

**THE COURT:** All right. Each side will receive 20 minutes to give their presentation, and that includes any replies.

Please take into consideration the questions that were provided to you in advance. I know that you probably have prepared for this hearing in an order and fashion that you see fit, and I'm not going to interrupt that, but be sure that you answer each of the questions that were provided to you that are directed to you as a party.

Now then, the defendant has filed this motion to dismiss; so I would like to begin with the defense and, first, taking a look at the issue of standing and the questions that the Court proffered.

Counsel, you may begin.  And as you can tell from the questions that I have, the areas of which I'd like each to address are standing, the reasonable customer standard, and punitive damages.  Those are areas where I need the most information.

You may begin.

**MR. FISHER:**  Yes, Your Honor.

**THE COURT:**  As the moving party, you may begin.

**MS. CARLSON:**  I'm the --

**THE COURT:**  Oh, sorry.  The box is just distracting me.  I apologize.

**MS. CARLSON:**  I'm happy to begin, Your Honor, and to discuss standing also, in light of the questions that you have posited.

Your Honor, what we're here today to tell you is that plaintiff has not alleged facts sufficient to infer that his air purifier filter was not, in fact, HEPA compliant and, thus, lacks standing.  In other words, plaintiff has not alleged facts sufficient to allege that there is a particularized injury.

As this Court recently held in *Wilson v. ColourPop*, injury rests at the very heart of the Court's decision.  In *Wilson*, the plaintiff could not establish standing because she could not establish any injury that plausibly corroborated her assertion that the products were dangerous.

Just as in *Wilson*, Your Honor, any allegation that
plaintiff's product did not meet the HEPA standard is
speculative.

And you've asked about the Court holding in *Solis*, which
came -- which was cited within our briefing and came to a
different conclusion.  The reason that we have cited *Solis* --

**THE COURT:**  Okay.  I'm going to interrupt you and ask
you to slow down a little bit.  I can see smoke coming from my
court reporter's fingers.  So just a little bit.  Take a
breath, and just a little back from the microphone.

Okay.  You may proceed.

**MS. CARLSON:**  Yes, Your Honor.  Thank you for the
reminder.

The reason that we have cited *Solis* is for the premise
that a plaintiff must allege facts that are sufficient for
the Court to infer that the product actually exhibited the
defect.

And with respect to a purportedly defective product,
courts have generally found it is not enough for a plaintiff to
allege that a product line contains a defect or that a product
is at risk for manifesting this defect.  Rather, the plaintiff
must allege that their product actually exhibited the defect,
and that's *Bowen*.

So we've talked about that plaintiff did not plead facts
to plausibly allege.

So let's talk about plaintiff's counsel's independent third-party testing. And the Court has asked that I explain my standing argument without -- without relying on my request for judicial notice of the various testing standards that were in place at the time that plaintiff purchased his product. And I do not intend to rely on those, Your Honor, but I do intend to rely on the testing upon which plaintiff's complaint is predicated that was not attached to his complaint, however.

**THE COURT:** All right. Well, let me interrupt you for a moment.

The Court finds that Exhibit A, the NAD final decision, is incorporated by reference. It is a publicly available document that plaintiff attached as an exhibit to the first amended complaint and references it throughout the first amended complaint.

The Court declines to consider the exhibit to the extent that defendant relies on it to dispute the truth of the plaintiff's allegations. The Court finds that the remaining exhibits are not incorporated by reference as the first amended complaint references each exhibit once at most.

Since the Court grants the defendant's request for judicial notice of the remaining exhibits, it's only because they are public records; but keep in mind, the Court judicially noticed the existence of these documents but declines to notice any adjudicative fact from these documents.

Now, when I look at *Solis*, one of the questions that I do have -- you cite *Solis* for the proposition that the plaintiff didn't -- that the plaintiff needed to test their own purifier and allege that it did not meet HEPA, H-E-P-A, for sufficiently particularized allegation.

Unless I misread *Solis*, it appears to have an opposite holding.  Can you clarify?

**MS. CARLSON:**  Yes, I can clarify, Your Honor.

*Solis* was about a cosmetics, I believe, that contained PFAS ingredients, and the Court did ultimately conclude that the particularized product did not need to be tested in order to show standing.  But in that instance, each -- each product was labeled with the PFAS ingredient.  So on each and every package of each and every product, the manufacturer had already addressed the inclusion of the PFAS ingredient.

In this instance, Your Honor -- and I'm actually asking that the Court incorporate by reference testing that we did not have at the time of the initial filing.

Plaintiff filed his complaint and said that his HEPA result -- or the HEPA testing was based both on testing by his own lab and testing by Dyson, but plaintiff did not attach the testing to his complaint.  So we were never able to look at it or consider that when filing our motion to dismiss.

Notwithstanding, subsequently, by virtue of its responses to its interrogatories, plaintiff did provide the results of

its testing, which were conducted, by the way, in October 2023 and August of 2023, three years after plaintiff purchased this product.

The results of that testing were disparate.  There was a fractional derivation from the HEPA standard.  The testing results were at 97.831 and 99.589.  That last one is a 0.4 percentage variance.  And there was a 1.5 percent delta between the testing.

And because these tests are explicitly relied upon in the complaint, they can be considered under the incorporation by reference doctrine pursuant to *Ecological Rights Foundation v. Pacific Gas*, 713 F.3d 502.  That's the Ninth Circuit 2013.

Not only do these results show a derivation from just a fraction of a percentage from the actual HEPA standard, but perhaps even more telling is that amongst the two tests taken by the same lab three months apart, there were different findings of approximately 2 percent, which is the same delta that separates plaintiff's definition of a HEPA-compliant test from his lowest result.

So put simply, three years after plaintiff purchased this product, they tested two samples only separated by two months, and the test showed a difference of 2 percent.

Given these differing results, Your Honor, plaintiff's failure to test his own product is fatal as there's no basis for inferring that his product didn't meet the HEPA standard.

And you don't have to look just to plaintiff's testing, Your Honor.  You have incorporate- -- or you have taken judicial notice of the NAD proceeding, upon which we would assert that this case has been predicated.  And plaintiff subpoenaed those test results from Dyson last February.  We have them with us here today.  We're happy to file them with the Court, along with the interrogatory responses.

**THE COURT:**  Let me interrupt you here.

Relying on what's within the four corners of the complaint, what is your argument that plaintiff failed to sufficiently allege a concrete and particularized injury?  And I'm focused on the fact that plaintiff alleges that a filter meets the HEPA standard when it is 99.97 percent effective.

It also does not escape me that these were probably purchased around the time of COVID in 2020.  That was probably the time in which people were most concerned about air quality, both inside and outside.

We also had the fires.  That was also a huge concern when we all went outside and the sky was orange and everybody was concerned about particulates and whether they were breathing clean air or not within their homes.

So with that in mind, the four corners of the complaint, what is your best argument regarding whether plaintiff sufficiently pled that the EverestAir Purifier and Series 300 Purifier -- one, do you believe that they're substantially

1   similar?

2       And then, going back to the standard of 99.97 and keeping

3   your argument focused on the four corners of the complaint, how

4   did the plaintiff fail to sufficiently allege a concrete and

5   particularized injury?

6       **MS. CARLSON:** Your Honor, I'm happy to focus on the

7   four corners of the complaint; but I think my point is that

8   there is no complaint without plaintiff's discussion within the

9   four corners of their failing test -- allegedly failing test

10  results and Dyson's allegedly failing test results.  That

11  plaintiff chose not to attach those documents to the complaint

12  I would argue was to avoid the fact that the distinction is

13  *de minimis* and that there are different results.

14      But even if you wipe that out, you can't allow the

15  specific facts that are actually reflected in the documents

16  upon which the complaint are predicated to belie the argument.

17  The specificities belie the argument of the generalities.

18      And so what I'm trying to say, Your Honor, is that we

19  now -- the complaint, within the four corners, discusses the

20  testing, doesn't posit the results, but the results show four

21  different results on four different tests from four different

22  dates.  They all are within a range of a margin of error; and,

23  Your Honor, the fact of the matter is none of them have been

24  tied -- plaintiff hasn't even alleged how they could be tied to

25  the product that he purchased three years later.  Doesn't

allege they're from the same batch.  Doesn't allege that

they're from the same production run line.  Doesn't allege that

there is anything that ties these two products together other

than threadbare conclusory allegations, Your Honor.

And so I think that the Court should not -- or plaintiff

should not be entitled to rely on, quote/unquote, failing test

results that are belied by the actual test results.  And so,

Your Honor, I do think that it is incorporated by reference

within the complaint, these results.

**THE COURT:**  All right.

**MS. CARLSON:**  Can I please ask you -- I'm sorry.  The

other question that you asked, I want to focus on it.  I don't

want to miss it.

**THE COURT:**  I believe you've answered it as best you

can.  I asked about what is your best argument about whether

*Solis* applies in the way that you believed it did, given that

the holding seems to be contrary or having the opposite

argument that you've provided me.

And then I asked you to let me know or to provide me with

your best argument regarding whether plaintiff sufficiently

pled that EverestAir Purifier and Series 300 Purifier are

substantially similar.

**MS. CARLSON:**  Yes, Your Honor.  I would like to point

to that and discuss whether there's any substantial similarity.

As you've identified -- or as I can identify right now,

1    the Ninth Circuit courts are split as to whether or not a

2    plaintiff is entitled to assert claims on behalf of a product

3    that the plaintiff did not purchase.

4        And here, I would argue that even if the Court were to

5    find that plaintiff had standing to bring claims on behalf of

6    the Core 300 products, plaintiff has actually pled that there's

7    a substantial dissimilarity between the Core 300 products and

8    the EverestAir products.

9        This substantial similarity test was reiterated in the

10   recent Judge Chesney *Guardian* decision, which found that the

11   fraudulent claims hadn't been sufficiently pled.  And we can

12   talk about that afterwards.

13       But plaintiff can't bring a claim over any product he

14   wants.  He has to show that the products are substantially

15   similar.  And if you look at the complaint itself, the first

16   amended complaint, and you look at paragraphs 28 through 31,

17   they effectively serve as a way to distinguish one product from

18   the other.

19       The EverestAir is a large rectangular unit.  Core 300 is

20   it small and cylindrical.  This is all within the four corners

21   of the pleading.  The filters used in the products are totally

22   different shapes and sizes.  One has a price point of about

23   $500.  The other has a price point of about $100.

24       And plaintiff doesn't even allege that they tested an

25   EverestAir product.  So how does plaintiff know that there is

1   any problem with respect to same?  These are two totally

2   different filters, and nobody in this litigation has any stake

3   over the EverestAir product.

4      Your Honor, I do want to talk about one more point that

5   I think is very important.  I would argue today that the

6   plaintiff cannot show injury.  It's not a matter of whether

7   they can measure injury or how they measure it, if it's a

8   benefit of the bargain.  They cannot show injury because their

9   complaint relies on testing that belies their argument.

10      But even beyond that, the Court has recently dismissed a

11   case by this very same -- these very same attorneys that looks

12   largely identical to the case here.  And that supplemental

13   authority was filed here, and that is in the *Felice v. Guardian*

14   matter, and that is Judge Chesney.

15      In his background, Judge Chesney acknowledged that the

16   plaintiff cited a number of statements made by the defendants,

17   alleging they reviewed and relied on warranties and

18   representations; but Judge Chesney found that the plaintiff had

19   not identified which precisely of the statements they saw and

20   relied on; and in no uncertain terms, Judge Chesney said that a

21   plaintiff does not satisfy Rule 9(b) when he generally

22   identifies allegedly misleading statements but fails to specify

23   which of those he saw and relied on.  And because of this

24   failure, the Judge said that the plaintiff hadn't made an

25   adequate showing under the UCL, the FAL, and the CLRA.

And I want to say that like in *Guardian*, plaintiff's failure to identify the particular statements upon which they rely is a deficiency that's fatal to their claims.

Now, I think they'll probably point you to that box and say that the name of the product has HEPA in it and that surely and certainly that must have been what plaintiff relied upon in bringing this case.

But they've also acknowledged in Footnote 4 of the briefing to their motion to dismiss that they have not alleged all the specific representations upon which plaintiff relied, and they would ask the Court for leave to amend their complaint in order to specify those representations.

The bottom line is that plaintiff has now admitted that they have not alleged the specific representations, which means under *Felice v. Guardian*, this case must be dismissed because they must state what they relied on with particularity, and they can't use a shotgun approach that makes my client defend against just doing a wrong without actually specifying what that wrong is.

And I want to be very clear again. There are 90-plus paragraphs in this complaint, and only one of them speak about what the plaintiff saw or relied upon, and that is paragraph, I believe, 9. And in that paragraph, there are generalized representations about what the plaintiff saw, but it speaks in plural, in representations and warranties. And my client

deserves to know the exact claims that it is defending against.

And I would say that at a minimum, Your Honor, the Court must dismiss this case without prejudice and allow the plaintiff to amend, which it has already said that it wants to do and that it needs to do, in order to specify with particularity the statements upon which plaintiff relied.

**THE COURT:** Thank you.

**MS. CARLSON:** Thank you.

**THE COURT:** All right. I would like you to address the last question so that you at least have five minutes reserved for reply.

Your best argument for whether plaintiff sufficiently alleged punitive damages, including case law establishing the pleading standard. I believe the questions were provided in advance so you'd know exactly what concerns I had.

**MS. CARLSON:** Yes, Your Honor. We received the questions.

So what I would say, I would like to incorporate by reference our argument that's in the briefing. I don't have arguments that are beyond what is in the briefing, except for that as -- for the same reasons that we've identified now today that there is, number one, no viable injury and no standing and, number two, an utter failure to plead these facts with the requisite degree of particularity under 9(b), there certainly is not clear and convincing evidence here that the defendant

has been guilty of oppression, fraud, or malice.  And that is what is required by the California Civil Code Section 3294. And there's not even an allegation within the 90-plus-paragraph FAC that talks about the things that are required -- statutorily required, like cruel and unjust hardship or malice.

And so in the absence of even being able to show that plaintiff sustained an injury and, therefore, depriving this Court of subject-matter jurisdiction to hear this case, the plaintiff, by extension, certainly can't make any arguments relative to punitive damages.

**THE COURT:**  Thank you.

All right.  Counsel for the plaintiff, first, let's just deal with whether you feel you've sufficiently pled that the EverestAir Purifier and the Series 300 Purifier are substantially similar.

**MR. FISHER:**  Sure, Your Honor.  And thank you again for the questions.  They really help focus the argument, and it's appreciated, I know, by both counsel to have these to help us answer the questions Your Honor has.

On the substantial similarity argument, both the EverestAir and the Core 300 were products that were tested by Dyson and challenged in the NAD proceeding; and then, ultimately, defendant chose to remove the HEPA representation from those products.

We did not independently test the EverestAir Air Purifier,

1    and if given the opportunity to do so, we would add allegations

2    about the similarities between the products.  We did not go

3    into detail about how these are similar kinds of air purifiers.

4    I think they use basically the same kind of filtration system.

5         And in Dyson's testing, which I have now, it showed that

6    neither the EverestAir or the Core 300 are HEPA compliant.  And

7    when faced with that in the NAD proceeding, defendant chose to

8    withdraw those representations from their representations in

9    the marketplace.

10        So have we, you know, laid out for Your Honor everything

11   to show how similar they are?  No, I don't think, candidly, we

12   have.  And if given the opportunity to do so, we would add

13   allegations about the similarities between the air purifiers,

14   and we could do that.

15        But I think we rest our argument primarily on these are

16   both products that were challenged by Dyson and, ultimately,

17   unrebutted by defendant, they chose to stop advertising them as

18   HEPA compliant.

19        They are both air purifiers.  I think they're used for the

20   same purpose.  I think they're sort of different models, and

21   they may have some different features that I don't think are

22   really germane to this case.  But I think in terms of their

23   filtration, they're the same, and we could allege that, I

24   think, Your Honor.

25             THE COURT:  All right.  And then turning -- I'm going

backwards a little bit.  Turning to the citation of *Solis vs. Coty*, C-o-t-y, *Incorporated*, any comments you'd like to make with regards to that?

And then we'll go to the split of authority regarding the Ninth Circuit discussing the standard -- the standing approach and the class certification approach.

**MR. FISHER:**  Sure, Your Honor.

**THE COURT:**  You made proceed.

**MR. FISHER:**  I don't have the *Solis* case in front of me, and I do not recall the specific provision that Your Honor is referring to.

My recollection is consistent with Your Honor that *Solis* did not require the plaintiff to have done their own testing, and I think that's consistent with the other courts that have looked at this issue.

Judge Orrick looked at this in the -- let me make sure I get the name of the case right, Your Honor -- the *Hough vs. Big Heart Brands* case, as well as the *Rice-Sherman* case.  We cited several others.

So I think Your Honor is on the right track that there's no requirement in the law that we have tested our client's own product.  Our client's product was bought in 2020.  To test it now, I think, would be difficult and would be sort of imposing an impossible bar on us.

There's also no allegations in this case that there's any

difference between the product we tested, that Dyson tested

than the one that our client used.  It's the exact same one.

They haven't said, "Oh, we changed it all around."

Sometimes we do testing, and then there's a change in the

product and the defense lawyer will call me up and say, "Oh,

that's an old product.  You need to be looking at the new

product" or something like that.  Nothing like that's happened

here, Your Honor.  So --

THE COURT:  What she did say is that this 99.97 and

any discrepancies are somewhat marginal at best.

MR. FISHER:  Well, Your Honor, they're either HEPA or

they aren't.  There's a standard, and it's 99.97.  And that's a

high standard because that is a superlative level of filtration

that is offered by this product.  And it's why, on this box,

they have a --

THE COURT:  I'm not going to take into evidence a box.

MR. FISHER:  Sure, Your Honor.

But they say "HEPA" all over the place on the box, in

their advertising, because it matters to consumers.  Consumers

know that HEPA means you're getting better filtration.

Do consumers know what the testing protocol is for HEPA?

Of course not; right?  Just as I don't know, when my

refrigerator says that it's Energy Star or I'm wearing an N95

mask, how they make that determination.  I just know that with

an Energy Star refrigerator, that's more energy efficient than

1    one that isn't or an N95 mask is better for me in terms of what

2    it filters out than one that doesn't.

3        So people know what HEPA means.  And of course people

4    don't know what -- how HEPA is tested.  And experts in this

5    case are going to fight about how HEPA is -- you know, how you

6    determine that.  That's normal in any kind of case where you

7    have experts.

8        I was telling me colleague earlier, I had a case in this

9    courthouse about whether there was enough tuna in a tuna fish

10    can.  And in that case, the experts battled hammer and tongs

11    over how do you weigh how much tuna is in a can.

12        That's a common thing, and it is not unusual that there's

13    going to be differences in terms of how testing is conducted.

14    But that's way past the pleadings.  That's something that comes

15    up at summary judgment or on *Daubert* or at class certification.

16    It's not an issue for today about whether or not we have

17    adequately alleged an injury or a harm to these plaintiffs.

18        Let me touch on --

19        **THE COURT:**  Well, Counsel invited me to take the

20    standing approach, indicating that there's a split in the

21    circuit.  So anything you'd like to share in terms of that

22    position as to which would be the most persuasive for the Court

23    to follow?

24        And since we're at this juncture, we can also talk about

25    the reasonable customer and whether they would be deceived by

the labeling.

**MR. FISHER:** Sure. Let me touch on that because I don't think we've really addressed that issue and I know it's something that's important to Your Honor from your questions.

So there is sort of a split, the standing approach and the class action certification approach.

From where I stand, I think the class certification approach makes the most sense because then we get to make a determination on a more fully developed factual record what -- whether or not we can bring a nationwide class.

I've alleged -- I think I routinely allege nationwide classes, and then I get into discovery and I had find out, oh, maybe the product wasn't sold in certain places or it was designed somewhere else, and then I choose to narrow down the class I assert. It's much easier for me to start broad and then narrow it down at class certification when I have a more fully developed class certification record.

And I think the weight of authority supports that approach, and I think most courts -- maybe even Your Honor. I can't remember if Your Honor has addressed this issue before. But I know a number of judges in this courthouse have addressed this issue and tend to fall on the side of the class certification approach, just because sometimes these issues sort themselves out on their own or, you know, the case gets resolved. Rather than, you know, throwing the baby out with

the bathwater when we don't know anything about where was this
product designed, where do the officers of the company sit, how
much of a connection is there to California on this record, to
make a determination now seems premature to me.

THE COURT: All right. Now, there seems to be some
concessions, from what I'm hearing as you're making your
argument, and you're saying "Defense is right about this.
Defense is right about that."

Are you inviting the Court to -- if the Court were to
dismiss in part or dismiss in whole to allow you to amend; or
is this a situation where, now having seen the questions of
the Court, having heard the argument of counsel, you intend to
file an amended complaint, making this motion moot because you
want to amend and add additional language?

That's helpful to us to be able to discern the amount of
resources to place into this particular case.

MR. FISHER: Appreciate that question, Your Honor.
And let me be clear about how we're thinking about this case.

So since we filed this case, we've been contacted by both
other firms, as well as other plaintiffs, who seek to assert
claims. So it has been our intention to amend the complaint to
add in those claims and those plaintiffs as well. So it is our
intent to amend one way or the other.

So if Your Honor got on the bench today and said,
"Mr. Fisher, you're close, but I got some problems, maybe

substantial similarity" or something like that, I would say, "Thank you, Your Honor. I want to let you know we have other things that we want to do to the complaint."

I think if I was just thinking about Mr. Chen and his claims on behalf of the class, I think this complaint is sufficient, and I think it clearly crosses the bar.

But in terms of how we want to proceed with the case, we do want to amend, and we --

**THE COURT:** Well, because that's what I'm saying. If you want to amend, this is kind of a dress rehearsal. And it may be better to take that route and amend your complaint. You know what the Court's questions are. You know where there's what we call a rub. You've heard counsel's argument. And if that is your desire, we would just conclude the proceeding, give you 21 days to amend with 14 days to reply.

**MR. FISHER:** That would be fine, Your Honor.

I feel as though -- and you don't have to tell me, but I feel as though from the tenor of the Court's questions, that you're not throwing the entire case out. That's not your inclination. I feel like you're finding in my favor generally on standing. And so, you know, of course, I would like the benefit of that ruling so I don't have to do this all over again down the road.

**THE COURT:** Well, it sounds like you're indicating to the Court that you're going to do this all over again with an

1  amended complaint, with new people and --

2       **MR. FISHER:**  I am.

3       **THE COURT:**  -- new claims.

4       **MR. FISHER:**  That is correct, Your Honor.  We are

5  going to do that.

6      The only -- I just would rather not have to brief all

7  these same issues all over again if Your Honor -- Your Honor,

8  I think, is giving some very helpful guidance here, and maybe

9  that's going to resolve things.  But often, unless there's an

10  order, defendants will sometimes restate things or take another

11  shot at it; or now they'll say, you know, "We want to talk

12  about their testing," things like that.

13      But that is our intent, Your Honor.  And just to get our

14  ducks in a row, I know Your Honor indicated 21 days.  I think

15  if we could get 30 just --

16       **THE COURT:**  21.

17       **MR. FISHER:**  21?  Okay.  21 it is, Your Honor.

18       **THE COURT:**  Usually, I'm leaning at 14.

19       **MR. FISHER:**  Okay.  All right.

20       **THE COURT:**  I'm giving you 21 because you brought a

21  box.

22       **MR. FISHER:**  I won't push it.  All right.

23       **MS. CARLSON:**  May I have a few additional days to

24  respond?

25       **THE COURT:**  14.  14.

1       **MS. CARLSON:** 14. All right. That's fine.

2       **THE COURT:** Anything further from defense counsel?

3       **MS. CARLSON:** I do want to respond to one thing, and

4 this will obviously manifest itself in the first amended

5 complaint.

6       But all of the cases that plaintiff relies on to suggest

7 that they can rely on standing when there are test results as

8 to one product do not show -- there's not in evidence four

9 different test results with four different -- four different

10 test results, four different -- each one different from the

11 other and each within a margin of error.

12       And I would just ask that when plaintiff -- we will

13 reassert that plaintiff cannot show injury unless they plead

14 something wildly different that we are not prepared for, and we

15 believe that the plaintiff should attach the test results to

16 the complaint since the complaint is predicated on those test

17 results so we don't have to take judicial notice and

18 incorporate by reference.

19       **THE COURT:** All right. Submitted?

20       **MR. FISHER:** Submitted, Your Honor.

21       **THE COURT:** All right. And you may be seated for a

22 moment.

23       The motion to dismiss the first amended complaint for

24 damages, brought by the defendant, has come before the Court,

25 and all appearances have been noted.

I've read and considered all the papers that were filed in support of the motion and the arguments of counsel; and good cause appearing and the invitation by counsel to allow leave to amend, the Court makes the following rulings:

The request for judicial notice is granted. Specifically, the Court finds that Exhibit A, the National Advertising Division, is incorporated by reference.

The Court will take judicial notice of the existence of the remaining exhibits but declines to take judicial notice of any adjudicative fact.

Plaintiff has adequately alleged Article III standing to bring all claims alleged in the first amended complaint. The Court acknowledges that there are some areas that can be amended and should be amended as it relates to particularized injury, as well as whether the items are substantially similar.

With regards to the review, the Court finds that it will take the class certification approach in this particular case.

With regards to the other items that counsel has indicated, the Court is giving leave to amend, and counsel has 21 days to amend the complaint.

The Court only has made its decision on standing and which standard applies.

Counsel for the plaintiff has 21 days to file an amended complaint, 14 days for reply from the defense -- I mean, strike that. Exactly. I was correct. I almost gave defense counsel

1    a little bit more, but no, looking at our schedule, 21 days to

2    amend the complaint, 14 days to respond.

3        So ordered.

4        That concludes this matter, and this order resolves

5    ECF 25, granted in part, denied in part --

6            **MR. FISHER:**  Thank you, Your Honor.

7            **THE COURT:**  -- with leave to amend.

8        Thank you.

9            **THE CLERK:**  Court is in recess.

10            (Proceedings adjourned at 2:36 p.m.)

11                    ---o0o---

12

13                **CERTIFICATE OF REPORTER**

14        I certify that the foregoing is a correct transcript

15    from the record of proceedings in the above-entitled matter.

16

17    DATE:  Wednesday, August 21, 2024

18

19

20    _____

21        Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
          CSR No. 7445, Official United States Reporter

22

23

24

25