**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiffs*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK CHEN and MINDY AIELLO, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br>  v.<br><br>VESYNC CORPORATION,<br>                         Defendant. | Case No. 3:23-cv-04458-TLT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:   December 10, 2024<br>Time:  2:00 PM<br>Room: Courtroom 9 – 19th Floor<br>Judge: Hon. Trina L. Thompson |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................................... 1

THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS ................................... 4

I. PLAINTIFF'S CLAIMS ARE ACTIONABLE AND SHOULD NOT BE
DISMISSED UNDER FRCP 12(B)(6) ............................................................................. 4

    A. Plaintiffs Allege Multiple Misrepresentations ..................................................... 4

        1. The Products Were Falsely Advertised As HEPA-Grade
Based On The Very Same Testing That Defendant Employed ................ 5

        2. Plaintiffs' Adequately Allege That Defendant's 99.97%
Claim Is False .......................................................................................... 7

        3. The Air Purifiers Also Failed Under The European HEPA
H13 Standard ........................................................................................... 9

    B. Reasonable Consumers Would Be Deceived By Defendant's
Conduct .................................................................................................................. 9

II. PLAINTIFFS DO NOT ALLEGE THAT DEFENDANT LACKED
SUBSTANTIATION FOR ITS CLAIMS ....................................................................... 12

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Felice v. Guardian Techs. LLC*,
  2024 WL 3642187 (N.D. Cal. July 30, 2024) ............................................................................... 8

*Forcellati v. Hyland's, Inc.*,
  2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) ............................................................................. 12

*Kutza v. Williams-Sonoma, Inc.*,
  2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ............................................................................. 10

*Kwan v. SanMedica International*,
  854 F.3d 1088 (9th Cir. 2017) ................................................................................................... 12

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) .................................................................................................... 10

*Mollicone v. Universal Handicraft, Inc.*,
  2017 WL 440257 (C.D. Cal. Jan. 30, 2017) .............................................................................. 12

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*,
  107 Cal. App. 4th 1336 (2003) .................................................................................................. 12

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................................................... 9, 10, 11

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 4

# INTRODUCTION

Plaintiffs Rick Chen and Mindy Aiello ("Plaintiffs") bring this putative class action because Defendant Vesync Corporation d/b/a Levoit ("Defendant"), the self-proclaimed "#1 Best Selling Air Purifier Brand in the US," induced them to purchase a number of its Levoit branded air-purifiers[1] based on false claims that the Air Purifiers were equipped with HEPA filters (the "HEPA Claim").[2] Second Amended Complaint ("SAC") ¶¶ 1-9. Unbeknownst to Plaintiffs and all other consumers, the Products did not actually have HEPA-grade filters. *Id.* ¶ 2.

This lie, which led to astronomical sales throughout the COVID-19 pandemic and numerous catastrophic wildfires, was exposed as part of a challenge by Dyson, Inc. ("Dyson"), a competitor, through the National Advertising Division of the Better Business Bureau ("NAD"). SAC Ex. A. The NAD Final Report, which summarizes the dispute, states that Dyson had commissioned industry-standard HEPA testing of Defendant's Products, and they failed. *Id*. Defendant claims it has test results that refute Dyson's challenge but, instead of producing them, Defendant decided to permanently discontinue all claims that the Products have HEPA filters or HEPA performance. *Id.*

At the hearing on Defendant's Motion to Dismiss the First Amended Complaint ("FAC"), the Court found the following: "Plaintiff has adequately alleged Article III standing to bring all claims alleged in the first amended complaint. The Court acknowledges that there are some areas that can be amended and should be amended as it relates to particularized injury, as well as whether the items are substantially similar. With regards to the review, the Court finds that it will take the class certification approach in this particular case." ECF No. 80, Transcript of Oral Argument at 26:11-17.

---

[1] The products at issue include the EverestAir Smart True HEPA, Core 300, Core 300-RAC, Core 300-RF, Core 300S, and Core P350 air purifiers (the "Air Purifiers," or, the "Products")

[2] According to the Centers for Disease Control and Prevention: "Using a **portable high-efficiency particulate air (HEPA) cleaner** can provide filtration if you don't have an HVAC system or can improve filtration if you do have an HVAC system. They are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing." CENTER FOR DISEASE CONTROL AND PREVENTION, *Improving Ventilation in Your Home*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilation-home.html (last visited Jan. 4, 2024).

In accordance with the Court's findings, Plaintiffs amended the FAC to: 1) add a new plaintiff that purchased the Everest Air unit – eliminating the substantial similarity issue; 2) add a host of discrete advertising representations that Plaintiffs saw when making their purchases; 3) add language explaining that "[t]hough consumers may not know the filtration efficiency requirement of the HEPA standard, or the technicalities of the HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling" (SAC ¶ 31); and 4) add more clarity as to how the HEPA testing performed by Plaintiffs' counsel—which was conducted under the very IEST test standard which Defendant admits it used to test its Products —proved the Products were not HEPA-grade.

Despite the host of creative arguments that Defendant now brings for the <u>first time</u> in its <u>second motion to dismiss</u>, the core allegations in the FAC and SAC have remained consistent. Namely: 1) that the Products did not contain HEPA filters (established through industry standard testing) (SAC ¶ 54); and 2) had Defendant not warranted and represented that the Products had HEPA filters, Plaintiffs would not have purchased the Products. *Id.* ¶¶ 12, 14. Despite this fact, Defendant now moves to dismiss the SAC under a host of fact-dependent and convoluted arguments.

First Defendant contends that Plaintiffs have not alleged a misrepresentation because its use of HEPA in its advertising (the "HEPA Claim") was not made in isolation. Rather, Defendant claims that it defined HEPA as "99.97% at 0.3 microns" (the "99.97% Claim"). Therefore, Defendant argues, its HEPA Claim can be false only if it is first shown that its 99.97% Claim is false. Defendant thus argues because the testing conducted by Plaintiffs' counsel does not disprove the 99.97% Claim that Plaintiffs have not shown the HEPA Claim to be false either. This argument is disingenuous to its core. How so? Because: 1) Defendant has already acknowledged that the IEST standard is the very standard that it utilized to test its Products, <u>and that Defendant admits formed the basis for both the HEPA Claim and the 99.97% Claim</u>. ECF No. 25, Defendant's Motion to Dismiss the First Amended Complaint ("MTD FAC") at 4 ("Vesync made the [99.97% Claim] at issue in good faith and based upon pre-existing independent third-party testing, <u>consistent with the authoritative, industry-recognized standards for HEPA filters</u>…*see also*

RJN Ex. C (IEST RP CC001.6)." (emphasis added); and 2) Defendant knows very well that the IEST test protocol does not report findings by specific particle sizes – rather it reports its findings in particle ranges. Thus, any HEPA testing performed by any party (including Defendant) would not report results for 0.3 microns specifically. It is clear the 99.97% Claim is nothing more than a shorthand and a reference to the more involved and authoritative IEST HEPA testing that Defendant and Plaintiffs conducted. Notwithstanding the same, as will be discussed below—despite unambiguous and unchanged allegations in the SAC that that the Products did not include HEPA filters as established by IEST testing—**Plaintiffs also allege that the discrete 99.97% Claim is false within the four corners of the SAC**. SAC ¶¶ 36-37 & 62. The allegations also explain how the results from Plaintiffs' testing (incorporated by reference and attached to the accompanying Request for Judicial Notice) prove that the Products' filtration at 0.3 microns was necessarily less than 99.97%. *See* RJN Ex. A.

In addition, though Defendant may wish to ignore it, it also makes an H13 HEPA claim. H13 is governed by the European EN1822 standard, and Plaintiffs' testing proves the Products failed to meet the H13 standard as well. SAC ¶ 58. Defendant provides no argument to the contrary.

Next, Defendant's argument that reasonable consumers could not be misled by its representations is both unpersuasive and premature. MTD at 8. Defendant argues that the HEPA Claim and the 99.97% Claim are inextricably linked. But that is conclusory. As Defendant is aware, the 99.97% Claim was merely ancillary to the HEPA Claim. What's more, the allegations make clear, Plaintiffs made their purchases because they thought the Products had HEPA filters, not because they thought the Products could filter particles at or above a certain arbitrary percentage. SAC ¶¶ 12-14. Because Plaintiffs have alleged the Products are not HEPA-grade pursuant to the very standard Defendant tested under, Defendant's HEPA Claim is false and misleading. That is more than sufficient to overcome Defendant's motion to dismiss. Determining how consumers would interpret the 99.97% Claim and the HEPA Claims together is a question of fact not suitable for disposition at this stage.

Last, Plaintiffs do not assert a lack of substantiation claim. Plaintiffs' testing shows both the 99.97% Claim and the HEPA Claim are false. Plaintiffs also allege that Defendant's own testing proved the same. SAC ¶ 61.

In sum, this is a simple case: Defendant manufactures and sells Air Purifiers and replacement filters that are prominently labeled as HEPA-grade, and Plaintiffs have confirmed through industry-standard testing that they are not. The Court should deny Defendant's Motion to Dismiss in its entirety.

## THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS

### I. PLAINTIFF'S CLAIMS ARE ACTIONABLE AND SHOULD NOT BE DISMISSED UNDER FRCP 12(b)(6)

#### A. Plaintiffs Allege Multiple Misrepresentations

Defendant first asks the Court to dismiss Plaintiffs' claims under Rule 12(b)(6), arguing that Plaintiffs have not alleged a misrepresentation because "Plaintiffs have not alleged any facts to plausibly show that the Products fell short of [the 99.97% Claim], as the testing alleged in the SAC was performed at 0.0340 and 0.1 microns." MTD at 5. That argument is a red-herring and fails for several discrete reasons.

As an initial matter, Defendant does its best to complicate things by introducing a plethora of fact-based arguments. However, the allegations are straightforward: Plaintiffs allege that Defendant crafted unique false and misleading HEPA representations, including that the Products were HEPA-grade and that they could filter out 99.97% of particles at 0.3 microns. SAC ¶¶ 36-37 (detailing Defendant's specific representations). Plaintiffs then allege their testing showed **all of these claims are false.** *Id.* ¶ 62 ("Defendant made repeated express representations on the Product's packaging and in its marketing … that the Products included a HEPA-grade filter that even exceeded the HEPA standard. Plaintiffs' testing proves otherwise. Defendant's advertising is thus false and highly misleading."). At this stage, these allegations are more than sufficient for Plaintiffs' claims to survive. Nevertheless, Plaintiffs will explain the technical deficiencies in Defendant's arguments in further detail below.

1. **The Products Were Falsely Advertised As HEPA-Grade Based On The Very Same Testing That Defendant Employed**

First, both the HEPA Claim and the "99.97% at 0.3-Microns" Claim are based on the same IEST testing. Defendant knows this because Defendant has already acknowledged that the IEST standard is the very standard under which it tested <u>and which Defendant admits formed the basis for its advertising</u>. ECF No. 25, Defendant's Motion to Dismiss the First Amended Complaint ("MTD FAC") at 4 ("Vesync made the [99.97% Claim] at issue in good faith and based upon pre-existing independent third-party testing, <u>consistent with the authoritative, industry-recognized standards for HEPA filters</u>…*see also* RJN Ex. C (<u>IEST RP CC001.6</u>)." (emphasis added)). Defendant confirmed that its Products were "manufactured in accordance with IEST RP CC001.6 Class H and per the standard, were tested as manufactured to meet IEST RP CC007.3." MTD FAC at 2 fn.1. Defendant also attached the referenced IEST HEPA testing publications as exhibits. ECF No. 24-2, Declaration of Samuel D. Jubelirer ISO Motion to File Under Seal ("Jubelirer Decl."), Exhibits 1 and 2. Plaintiffs allege that they tested the Products under the very same standard, and they failed. SAC ¶ 59. Plaintiffs also allege that Defendant's testing also showed a failing result. *Id.* ¶ 61.

While the topic of IEST reporting can be quite technical and subject to expert opinions, Defendant did place the applicable testing standard into the record. RJN Ex. C (<u>IEST RP CC001.6</u>) and it warrants some explanation in the context of this matter. The IEST publications define what "Class H" HEPA filters are and set forth a protocol for testing them. Per the IEST, a Class H HEPA filter is defined as a filter which is "99.97% efficient… <u>determined as the lower efficiency at 0.1-0.2 [microns] or 0.2-0.3 microns</u>." Jubelirer Decl. Ex. 2 at 32 (emphasis added). Put simply, a Class H filter must filter <u>at least</u> 99.97% of particles at both 0.1-0.2 microns **and** 0.2-0.3 microns in size to qualify as HEPA. This means that even if the Products were tested and showed a 99.97% or greater efficiency at 0.3-microns, they would still fail if they fell below 99.97% efficiency at 0.1-0.2 microns or 0.2-0.3 microns.

Now, however, Defendant attempts to muddy the waters by claiming that HEPA "lacks a definitive definition." MTD at 1. Defendant is correct that HEPA is "defined in different ways," but that is only because <u>different classes of filters are tested differently</u>. *See* Jubelirer Decl. Ex. 2

at 32. Here, however, Defendant states it was only using one class of filter in its products: Class H. Thus, for Defendant's HEPA claims to be true, the Purifiers <u>must</u> have qualified as Class H. Voluntary or not, Defendant married itself to the Class H standard when it manufactured and tested the Products in accordance with it. The Class H HEPA standard is the standard under which Defendant tested its Products and is therefore the definition to which "HEPA" refers.

Plaintiffs tested Defendant's Products under the Class H HEPA standard and found that the Products failed to qualify as Class H because they did not filter 99.97% of particles at 0.1-microns. SAC ¶ 59. Per the standard, this measurement constitutes a failing result, regardless of the filter's performance at 0.3 microns.[3] Jubelirer Decl. Ex. 2 at 32. That is why Plaintiffs only provide the 0.1-micron filtration efficiency measurement in their SAC[4], rather than reproducing all measurements at all tested particle sizes. *See* SAC ¶ 59. Because Plaintiffs' testing proves the Products failed under the Class H standard, Defendant's Products are not HEPA-grade, and Defendant's HEPA Claim in its marketing is false and misleading. *Id.* Try as it may, Defendant simply cannot change the reality that its Products had to pass a HEPA standard test to be called HEPA-grade. Defendant's 99.97% Claim is a merely a simplification of the HEPA standard it tested under. Indeed, Defendant cites to the Class H testing standard as the very basis for its 99.97% Claim. *See* MTD FAC at 4 ("Vesync made the [99.97% Claim] at issue in good faith and based upon pre-existing independent third-party testing, <u>consistent with the authoritative, industry-recognized standards for HEPA filters</u>…*see also* RJN Ex. C (IEST RP CC001.6)." (emphasis added)). Because the Products failed under the official standard, they are not HEPA, and Defendant's use of HEPA in its marketing is a misrepresentation. Plaintiffs allege that Defendant knew this. *Id.* ¶ 61 ("Defendant knew through its own testing—under IEST and EN1822 standards,

---

[3] Defendant makes much hay that the "testing alleged in the SAC was [only] performed at 0.0340 and 0.1 microns," but this is a clear mischaracterization of the allegations. MTD at 5. The reason those two data points are specifically called out in the SAC is because they were the lowest filtration efficiencies measured for each test (the "most penetrating particle size"). *See* SAC ¶ 58-59. But, as Plaintiffs make clear, both the EN1822 test and the American IEST HEPA tests are conducted over a range of particle sizes. *Id.* It would be nonsensical to report the "most penetrating particle size" if only one particle size was measured.

[4] As a point of clarification, Plaintiffs stated the measurement was at "0.1 microns" but, as the testing shown in Exhibit A makes clear, Plaintiffs were referring to the testing done at the 0.1-0.2-micron range. *See* RJN Exhibit A.

which were in place at all times during the Class Period—that its Products were being falsely advertised as having HEPA filters.").

Second, Defendant knows very well that the IEST test protocol does not report findings by a particular particle size – rather it reports its findings in particle ranges (e.g., 0.1 to 0.2 microns, 0.2 to 0.3 microns). Consequently, there is no specific testing done at 0.3-microns exactly. Accordingly, it is clear that the 99.97% Claim is merely a shorthand for the more nuanced IEST Class H testing. What the IEST testing protocol also shows is that testing is not conducted specifically at 0.3 microns. Rather, particles within certain size ranges are tested. Plaintiffs detail this in their SAC as well. Plaintiffs allege that their IEST Class H HEPA test was conducted on "[p]articles ranging in size from 0.1 microns to 5.0 microns." SAC ¶ 57. They further state that the "test [was] done over eight stages, with each stage measuring the filtration efficiency for a subset of particle sizes (*i.e.*, measuring how the filter performs for particles between 0.1 and 0.2 microns)." *Id.* The fact that Defendant has admitted that it was testing its Products under the IEST Class H standard is proof that Defendant knows that testing is conducted in this manner. And being familiar with the standard and knowing that tests are not conducted specifically at 0.3 microns, it is clear that Defendant's 99.97 Claim is merely a shorthand used for marketing purposes.

### 2. Plaintiffs' Adequately Allege That Defendant's 99.97% Claim Is False

Notwithstanding the unambiguous and unchanged allegations in the SAC that that the Products did not include HEPA filters as established by IEST testing, <u>Plaintiffs also allege that the discrete 99.97% Claim is false within the four corners of the SAC</u>. Plaintiffs specifically allege that: 1) Defendant crafted unique false and misleading HEPA representations for its products; 2) The representations were made (among other places) on its website (which has since been altered), in its advertising, and on the websites of its online stores; and 3) <u>these false and misleading advertisements include the 99.97% Claim</u>. SAC ¶¶ 36-37 (detailing Defendant's specific representations). Plaintiffs further allege their testing showed **all of these claims are false.** *Id.* ¶ 62 ("Defendant made repeated express representations on the Product's packaging and in its marketing … that the Products included a HEPA-grade filter that even exceeded the HEPA

standard. Plaintiffs' testing proves otherwise. Defendant's advertising is thus false and highly misleading."). These allegations alone should be taken as true and override any purported arguments as to whether or not the test results provided by Plaintiffs are adequate to show a misrepresentation.

In addition, the SAC explains in detail that 0.3 microns "is the size at which a particle is most likely to escape from the filter" and that "particles bigger or smaller than 0.3 microns have a greater [] chance of being caught in a HEPA filter." SAC ¶ 24. In essence, if performance were graphed with particle sizes on the X-axis and performance on the Y-axis, Plaintiffs allege that the graph would be U-shaped with 0.3 microns at the bottom of the U, where performance is lowest. Thus, if measurements are taken of particles bigger and smaller than 0.3 microns, it can be proven what the filter's maximum performance would be at 0.3 microns exactly. For instance, if a filter has an average performance of 99.95% at the 0.2-0.3-micron range and 99.95% at the 0.3-0.4-micron range, then it must be true that performance at 0.3 microns exactly can be no greater than 99.95% as that is the size at which particles are <u>most likely</u> to escape.

Turning to Plaintiffs' testing, the results show unequivocally that Defendant's Products could <u>not</u> filter 99.97% of particles at 0.3 microns. Performance at 0.2-0.3-microns was measured at 99.699%, and performance at 0.3-0.5-microns was measured at 99.866%. RJN Ex. A. Because performance on either side of 0.3-microns was lower than 99.97%, then it is necessarily true that performance at 0.3 microns specifically was also lower than 99.97%.[5]

Taking Plaintiffs' allegations as true, Plaintiffs have adequately alleged that Defendant's Products were not HEPA-grade and therefore that both Defendant's HEPA Claim and 99.97% Claims are false. To the extent Defendant would contest Plaintiffs' allegations about the

---

[5] As the argument in this section makes clear, Defendant's citation to *Felice v. Guardian Techs. LLC*, 2024 WL 3642187 (N.D. Cal. July 30, 2024) is misplaced. Even though Defendant knows its 99.97% Claim does not reflect how testing is done, Plaintiffs have properly alleged that their testing proves that the Products' performance at 0.3 microns was below 99.97%. SAC ¶¶ 36-37 & 62. Plaintiffs have also produced their full test results in their Request for Judicial Notice, which verifies their allegations. Here, then—unlike the scenario described in the *Felice* Order—Plaintiffs point to a specific claim Defendant makes in its marketing and allege they have tested the claim and shown it to be false. Thus, *Felice* is wholly inapplicable.

mechanics of filtration efficiency, that is a dispute of fact not fit for resolution on a motion to dismiss.

### 3. The Air Purifiers Also Failed Under The European HEPA H13 Standard

In addition to claiming that its Products meet the American Class H HEPA standard, Defendant also claims that its Products are H13 under the European (HEPA-proximate) EN1822 standard. SAC ¶¶ 37-38. Indeed, in nearly every representation that Defendant makes about the Products Defendant claims their filters are both H13 and HEPA-grade. *Id.* H13 is its own standard, however, and is defined by, and tested pursuant to, the European EN1822 protocol. MTD at 5. Plaintiffs explain what H13 under EN1822 means, and Defendant does not offer a different definition. SAC ¶ 56. Per the SAC, an H13 filter is one that filters 99.95% of particles at the "most penetrating particle size." *Id.* Plaintiffs allege that their testing showed that Defendant's Products failed to meet the H13 standard because the filtration efficiency measured at the "the most penetrating particle size (0.0340 microns) was 98.701%, resulting in a grade of E11." *Id.* ¶ 58. Plaintiffs further allege that Defendant tested its Products pursuant to EN1822 and that it knew the Products failed to qualify as H13 grade. *Id.* ¶ 61. Accordingly, Plaintiffs have properly alleged that Defendant's H13 claims are false and misleading.

### B. Reasonable Consumers Would Be Deceived By Defendant's Conduct

Taking a second bite at the HEPA apple, Defendant argues that Plaintiff 's UCL, FAL, and CLRA claims fail because "Levoit's advertising of the Products repeatedly and conspicuously stated that the Products filter 99.97% of particles at 0.3 microns" and therefore "it would be entirely unreasonable for a consumer to interpret Levoit's 'HEPA' representations to mean that the Products filter 99.97% of particles at 0.034 microns, 0.1 microns, or any other particle size." MTD at 9-10. That is wrong.

To state a claim under the FAL, UCL, or CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer, *i.e.*, members of the public. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[C]laims under these California statutes are governed by the reasonable consumer test. Under the reasonable consumer standard, Appellants must show that members of the public are likely to be deceived.")

(cleaned up). Likely to deceive "indicates that the [label] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). The way in which a reasonable consumer would understand Defendant's labeling (*i.e.*, whether it is likely to deceive) is a question of fact that should be resolved on the evidence – not the pleadings. *See, e.g., Williams*, 552 F.3d at 938 ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018) (same).

Defendant argues at length that its 99.97% Claim and HEPA Claim must be read together (*i.e.*, that HEPA means 99.97% at 0.3 microns), and that any other reading would be unreasonable. MTD at 8. As an initial matter, whether and how consumers would interpret these two claims—either as distinct statements, or as informing one another—is a question of fact not suitable for disposition at this stage. *Williams*, 552 F.3d at 938. Furthermore, Defendant's characterization of Plaintiffs' allegations is incorrect - they did not primarily rely on the 99.97% Claim, they relied on the HEPA Claim: "Plaintiff Chen reasonably relied on Defendant's representations and believed that the Air Purifiers had HEPA filters. Had Defendant not warranted and represented that the Products had HEPA filters, Plaintiff Chen would not have purchased the Product or would have paid substantially less for it." SAC ¶ 12; *Id.* ¶ 13 (same). From the allegations it is clear that the 99.97% Claim is ancillary to the HEPA Claim: if there had been no 99.97% Claim but the HEPA Claim remained, Plaintiffs would still have purchased the Products. SAC ¶ 12; *Id.* ¶ 13 (same). Indeed, as Plaintiffs note in the Complaint, "[t]hough consumers may not know the filtration efficiency requirement of the HEPA standard, or the technicalities of the HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling." *Id.* ¶ 31. In short, the HEPA Claim, alone, was the condition precedent for Plaintiffs' purchase.

Here, as discussed in detail above, Defendant's HEPA Claim was false: Plaintiffs' testing proves that the Air Purifiers failed the Class H HEPA standard, contrary to Defendant's representations. *See supra* Section II(A); *and see* RJN Ex. A. Plaintiffs and consumers did not

know this and were thereby misled because "they cannot conduct HEPA standard testing" at home and trust that manufacturers like Defendant will accurately describe their Products.[6] SAC ¶ 4. Defendant attempts to sidestep liability by arguing, essentially, that the HEPA standard is whatever it claims it is in its marketing. That is not how standards work. The 99.97% Claim Defendant trots out in the current Motion to Dismiss is not the precise standard under which the Products were tested. Rather, as described above, the 99.97% Claim is merely a shorthand. *See supra* Section II(A)(1). A shorthand may be useful for marketing purposes because it gives consumers an easy-to-digest summarization of a complicated standard, but that does not change the fact that for Defendant's HEPA claim to be true, the Products still would have needed to meet the "authoritative, industry-recognized" Class H HEPA standard. MTD FAC at 6. Yet Defendant would ask the Court to accept that because consumers do not know better, Defendant can define HEPA however it would like, standards be damned. MTD at 6. To top it all off, even Defendant's 99.97% Claim is false, as Plaintiffs have shown in Section II(A)(2) above. No matter how Defendant would like to slice it, its claims are false and its Products have not met the grade.

Next, the HEPA misrepresentations were material because they directly influenced Plaintiffs and the putative class's decisions to purchase the Products. *Id.* ¶¶ 8, 62. The HEPA Claim has weight because "[t]he HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration." *Id.* ¶ 30. And, the HEPA Claim provides an "assurance" to consumers that the Air Purifier will "offer[] near certain protection against the transmission of airborne pathogens in the home . . . and [] also filter out pollution caused from events like wildfires, which are growing ever more frequent." *Id.* ¶¶ 28-29. At this juncture, those allegations are sufficient; whether consumers would be influenced or not by Defendant's representations is a quintessential question of fact that should not be resolved at the motion to dismiss stage. *Williams*, 552 F.3d at 938.

---

[6] To the extent that Defendant claims its own HEPA and EN1822 testing supports its filtration efficiency and performance grade claims, Plaintiffs allege that this is false, and that Defendant's testing does not support any of its claims. Accordingly, a disagreement exists as to at least two material facts: did the Air Purifiers perform at 99.97% filtration efficiency, and are Defendant's test results reliable? Dismissal would be inappropriate at this stage. *Williams*, 552 F.3d at 938.

## II. PLAINTIFFS DO NOT ALLEGE THAT DEFENDANT LACKED SUBSTANTIATION FOR ITS CLAIMS

Defendant claims that "[t]o the extent Plaintiffs allege that Levoit lacks substantiation for its HEPA advertising, they cannot state a claim on that basis." MTD at 11. Plaintiffs make no such allegation.

In California, when a company makes a claim about its product that "purport[s] to be based on factual, objective, or clinical evidence," but which appears false, a plaintiff may only bring suit if they can prove that the claim is false. *See National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.,* 107 Cal. App. 4th 1336, 1344 (2003). Said another way, "[p]rivate plaintiffs, unlike prosecuting authorities, do not have the power to require defendants to substantiate their advertising claims, [] private plaintiffs … have the burden of proving that the marketing claims are false or misleading." *Kwan v. SanMedica International*, 854 F.3d 1088, 1095 (9th Cir. 2017). However, California law is clear that a motion to dismiss for lack of substantiation is not appropriate when a Plaintiff provides "testing, scientific literature, or anecdotal evidence." *Forcellati v. Hyland's, Inc.*, 2015 WL 9685557, at *4 (C.D. Cal. Jan. 12, 2015) (quoting *King Bio*, 107 Cal. App. 4th at 1348)); *Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *11 (C.D. Cal. Jan. 30, 2017) ("Plaintiff does not merely allege that defendants' representations about the anti-aging benefits of the Adore Products are inconclusive or lack scientific evidence. Rather…she avers… the process of preparing PhytoCellTec necessarily results in an ingredient in which there are no living plant stem cells").

Here, Plaintiffs have provided concrete evidence proving that Defendant's HEPA and filtration efficiency claims are false. Plaintiffs have alleged that under two different testing protocols Defendant's Products do not qualify as HEPA. *See supra* Section II. Crucially, Plaintiffs allege "that Defendant <u>knew through its own testing</u>—under IEST and EN1822 standards, which were in place at all times during the Class Period—that its Products were being falsely advertised as having HEPA filters." SAC ¶ 61 (emphasis added). Rather than claiming Defendant had no evidence, Plaintiffs allege Defendant had concrete evidence that its claims were false. Defendant's lack of substantiation argument is baseless.

## CONCLUSION

In accordance with the Court's findings at the hearing on the Motion to Dismiss the FAC, the SAC now includes factual allegations on matters that were specifically addressed at the hearing. Most significantly, the core allegations have not changed between the FAC and the SAC (*i.e.*, the Products did not contain HEPA filters (established through industry standard testing), and had Defendant not warranted and represented that the Products had HEPA filters, Plaintiffs would not have purchased the Products). As such, the Court should deny Defendant's Motion to Dismiss the Second Amended Complaint in its entirety. Alternatively, Plaintiffs respectfully request leave to amend to address any deficiencies the Court may identify.

Dated: October 1, 2024

**BURSOR & FISHER, P.A**.

By: _/s/ L. Timothy Fisher_
      L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman
Janine L. Pollack
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (917) 983-2707
Fax: (888) 421-4173
Email : lfeldman@4-justice.com
Email: jpollack@4-justice.com
Email : Eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George
Brittany Sackrin
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BSackrin@4-justice.com
Email: EService@4-justice.com

**TAUS, CEBULASH & LANDAU, LLP**
Miles Greaves
Archana Tamoshunas
123 William Street
Suite 1900a
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
mgreaves@tcllaw.com
atamoshunas@tcllaw.com

**MIGLIACCIO AND RATHOD LLP**
Jason Samual Rathod
Nicholas A. Migliaccio
412 H Street N.E.
Washington, DC 20002
(202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Attorneys for Plaintiffs*