| | |
|---|---|
| SARAH CARLSON (SBN 344266) | |
| sarah.carlson@dentons.com | |
| DENTONS US LLP | |
| 4655 Executive Drive, Suite 700 | |
| San Diego, CA 92121 | |
| Telephone: 619 236 1414 | |
| Facsimile: 619 232 8311 | |
| | |
| DEBORAH H. RENNER (*pro hac vice*) | SAMUEL D. JUBELIRER (SBN 287649) |
| deborah.renner@dentons.com | samuel.jubelirer@dentons.com |
| DENTONS US LLP | DENTONS US LLP |
| 1221 Avenue of the Americas | 1999 Harrison Street, Suite 1300 |
| New York, NY 10020 | Oakland, CA 94612 |
| Telephone: 212 768 6700 | Telephone: 415 882 5000 |
| Facsimile: 212 768 6800 | Facsimile: 415 882 0300 |
| | |
| GRANT J. ANKROM (*pro hac vice*) | ABIGAIL M. DOCKUM (*pro hac vice*) |
| MICHAEL E. HARRISS (*pro hac vice*) | abby.dockum@dentons.com |
| grant.ankrom@dentons.com | DENTONS US LLP |
| michael.harriss@dentons.com | 2398 E. Camelback Road, Suite 850 |
| DENTONS US LLP | Phoenix, AZ 85016 |
| 101 S. Hanley Rd., Suite 600 | Telephone: 602 508 3900 |
| St. Louis, MO 63105 | Facsimile: 602 508 3914 |
| Telephone: 314 241 1800 | |
| Facsimile: 314 259 5959 | |

Attorneys for Defendant
VESYNC CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RICK CHEN and MINDY AIELLO, individually and on behalf of all others similarly situated, | Case No. 3:23-cv-04458-TLT |
| Plaintiffs, | **DEFENDANT'S RESPONSES TO THE COURT'S QUESTIONS FOR THE PARTIES IN LIEU OF HEARING (RE: DKT. NO. 82)** |
| v. | |
| VESYNC CORPORATION, | [Fed. R. Civ. P. 12(b)(6)] |
| Defendant. | Date: December 10, 2024<br>Time: 2:00 p.m.<br>Dept: Courtroom 9 - 19th Floor<br>Judge: Trina L. Thompson |
| | Date Action Filed: August 29, 2023 |

**1-1(a). Please explain your definition of a HEPA filter, and the definition of a H13 filter, and whether it is represented in the Plaintiff's Second Amended Complaint ("SAC").**

There is no single, authoritative definition of HEPA. Rather, the common understanding of the terms HEPA and H13 vary by individual and context. In its advertising, Levoit has consistently described both HEPA and H13[1] as meaning able to "capture 99.97% of airborne particles 0.3 microns in size." This is evident from the face of the SAC. *See, e.g.*, SAC ¶¶ 11(f) (alleging that Levoit advertised "[t]he H13 True HEPA Filter works alongside the Pre-Filter and High Efficiency Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in size, such as dust, smoke, pollen, odor"), 11(e), 11(g), 11(i), 13(c), 13(d), 25, 37(b), 37(c), 37(d), 37(g), 37(h), 38(e), 38(f), 38(g), 38(i), Figure 6, Figure 7.

**2-2(a). The reasonable consumer test is typically inappropriate for resolution at the motion to dismiss stage. *Williams v. Gerber Prods. Co.*, 522 F.3d 934, 939. Please explain whether it would be appropriate here and why.**

It is appropriate to dismiss this case on a motion to dismiss. Ninth Circuit caselaw calls for dismissal of claims based on the reasonable consumer test in certain circumstances where, as here, "plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) (internal quotations and citations omitted); *see* ECF No. 82 at 13–16; ECF No. 87 at 6–8. To determine whether a proffered interpretation of an ambiguous term is unreasonable or fanciful, courts "must consider what additional information . . . was available to consumers." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098–99 (9th Cir. 2023).

The term "HEPA," standing alone, is inherently ambiguous, as evidenced by the three different definitions described in the SAC. SAC ¶¶ 25, 56, 57. Thus, just like in *Moore*, "reasonable consumers would necessarily require more information before they could reasonably conclude" that HEPA, in the context of Levoit's products, meant that the filters were able to capture 99.97% of airborne particles at 0.0340 or 0.1 microns, as Plaintiffs' newest theory maintains. *Moore*, 4 F.4th at 882. And, here, the additional information available to Levoit's

---

[1] Although Levoit always has defined HEPA and H13 synonymously in its advertising, Plaintiffs cannot state a claim based on any H13 representation because, as Plaintiffs have said themselves, "the HEPA Claim, alone, was the condition precedent for Plaintiffs' purchase." ECF No. 83 at 10.

customers—*i.e.*, Levoit's repeated and consistent advertising that HEPA, in the context of its Products, means able to capture 99.97% of airborne particles at 0.3 microns—would "quickly dissuade[]" reasonable consumers "from Plaintiffs' 'unreasonable or fanciful' interpretation." *See id.* at 883. Accordingly, a reasonable consumer would not be misled as a matter of law, and dismissal at the pleading stage is appropriate. *See, e.g.*, *McGinity*, 69 F.4th at 1098–99 (affirming dismissal at the pleading stage because other statements on the product packaging clarified an ambiguous marketing phrase such that a reasonable consumer could not be misled); *Prescott v. Rite Aid Corp.*, 667 F. Supp. 3d 1011, 1014 (N.D. Cal. 2023) (Chhabria, J.) (dismissing claims at the pleading stage because "[a] reasonable consumer understands that over-the-counter products differ from products that are available with a prescription," such that the reasonable consumer purchasing an over-the-counter product "would not understand the phrase 'maximum strength' to mean the highest dose that money can buy," as plaintiff alleged).

### 3. If the Court were to grant the motion to dismiss, is leave to amend futile? If so, why?

Plaintiffs cannot cure the inherent deficiencies of their pleading with their current theory of liability, which is that the Products were falsely advertised because they did not capture 99.97% of particles sized 0.0340 or 0.1 microns. Plaintiffs already have alleged that the Products' packaging and webpages clearly and consistently described its "HEPA" filters as able to "capture 99.97% of airborne particles *0.3-micron* in size." Those allegations cannot be undone without contradicting prior allegations, which is impermissible. *See, e.g.*, *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (leave to amend should be denied where the plaintiff cannot cure the fundamental defects with additional allegations "that do not contradict the allegations in the original complaint"); *Garmon v. County of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016) ("A district court does not abuse its discretion in denying leave to amend where it would have been impossible for the plaintiff to amend the complaint to state a viable claim without contradicting any of the allegations of his original complaint.").

Moreover, any attempt by Plaintiffs to amend their theory of liability to conform with Levoit's actual HEPA representations—that its HEPA filters were able to capture 99.97% of airborne particles sized 0.3 microns—would also be futile. Plaintiffs' test report (improperly

submitted here) shows, at best, that the efficiency of the Products at 0.3 microns is within a small margin of error of 99.97% even when compared to other tests submitted by the same counsel concerning the very same Products in other cases against Levoit in other jurisdictions.[2] That is not enough to plausibly demonstrate that the Products purchased by Plaintiffs were less than 99.97% efficient at 0.3 microns as advertised. Accordingly, amendment would be futile. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility.").

Finally, the Court has "particularly broad" discretion to deny leave to amend where, as here, "plaintiff has amended the complaint previously." *Mobile Emergency Hous. Corp. v. HP, Inc.*, 2022 WL 18098217, at *7 (N.D. Cal. Dec. 7, 2022). Plaintiffs have pursued, in what is now their third complaint, a theory of liability that they knew was contrary to Levoit's advertising, and Plaintiffs also deliberately chose to exclude their October 26, 2023 test report from the SAC. *See e.g.*, *Ward v. Crow Vote LLC*, 2022 WL 17882162, at *4 (C.D. Cal. Oct. 11, 2022), *aff'd*, 2024 WL 2239010 (9th Cir. May 17, 2024) (denying plaintiff's request for leave to amend because "Plaintiffs were aware of Defendants' challenges" that it was now seeking to address and "knew or should have known the facts and theories raised by the proposed amendments at the time of the original pleading"). Indeed, Levoit specifically requested that such testing be incorporated into the SAC during the August 13, 2024 Hearing (Tr. at 8:9–12), yet Plaintiffs refused. Enough with the dress rehearsals. Plaintiffs' gamesmanship has needlessly consumed Levoit's and the Court's time and resources and should not be further permitted. *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013) ("litigation costs" can "become prejudicial when the additional costs could easily have been avoided had the proposed amendments been included within the original pleading").

---

[2] For example, the test report attached to Plaintiffs' Request for Judicial Notice shows 99.699% efficiency at a size range of 0.2-0.3 microns, which is just 0.271% short of 99.97%. ECF No. 84 at 6. Meanwhile, test reports submitted by Plaintiffs' counsel in other cases against Levoit show that the same Products were on average 99.847% efficient in the same size range—merely 0.123% short of 99.97%—and a notable variance of 0.148% from Plaintiffs' counsel's other test, suggesting a margin of error that would encompass the 99.97% threshold. *See Menter v. Vesync Corp.*, No. 3:24-cv-12786 (D. Mass.), ECF No. 6-2; *Tepper v. Vesync Corp.*, No. 7:24-cv-8430 (S.D.N.Y.), ECF No. 5-2.

Dated: November 21, 2024

DENTONS US LLP

By: */s/ Sarah Carlson*
Sarah Carlson

Attorneys for Defendant
VESYNC CORPORATION