**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
       lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Additional Counsel Listed on Signature Page*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK CHEN and MINDY AIELLO, individually and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br>    v.<br><br> VESYNC CORPORATION,<br><br>                         Defendant. | Case No. 3:23-cv-04458-TLT<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

**REDACTED VERSION**

1    Plaintiffs Rick Chen and Mindy Aiello ("Plaintiffs") bring this action on behalf of

2    themselves and all others similarly situated against Defendant Vesync Corporation ("Defendant" or

3    "Vesync").  Plaintiffs make the following allegations pursuant to the investigation of their counsel

4    and based upon information and belief, except as to the allegations specifically pertaining to

5    themselves, which are based on personal knowledge.

6                                          **NATURE OF THE ACTION**

7        1.        This is an action arising from the false and misleading representations that

8    Defendant made for years about its Levoit-brand EverestAir Smart True HEPA, Core 300, Core

9    300-RAC, Core P350, and Core 300S True HEPA air purifiers (the "Air Purifiers"), along with

10   their respective replacement filters  (collectively, the "Products").[1]

11       2.        Specifically, Defendant represented that the Air Purifiers were equipped with High

12   Efficiency Particulate Air (HEPA) and H13 filters when in fact they were not.  Defendant also

13   represented that the replacement filters it sells for the Air Purifiers were "H13 True HEPA" filters,

14   when in fact they were not.

15       3.        Independent testing by Plaintiffs' counsel, and testing commissioned by Dyson, Inc.

16   ("Dyson") as part of a challenge brought through the National Advertising Division of the Better

17   Business Bureau (NAD) (attached as **Exhibit A**), has shown that the replacement filters and the

18   filters inside the Products do not meet HEPA standards, nor do they capture 99.97% of particles at

19   0.3 microns as promised in Defendant's advertising.[2]

20       4.        Reasonable consumers have had no opportunity to find this out for themselves

21   because they cannot conduct HEPA standard testing.

22       5.        Defendant knew this but continued hocking its wares, making a killing selling the

23   Air Purifiers *and* replacement filters since the outset of the COVID-19 pandemic.  Defendant

---

[1] The "Core Series" of air purifiers listed in Paragraph 1 all use the same type of filter and replacement filter.  The EverestAir uses a different type of filter and replacement filter.

[2] Plaintiffs' testing is attached hereto as **Exhibits B & C** and ▮▮▮▮▮▮▮ is attached hereto as **Exhibit D**.  As explained in Paragraphs 47-61 of this Complaint, the particle sizes and ranges tested in these reports conclusively prove that the Products do not capture 99.97% of particles at 0.3 microns.

claims on its Products' packaging that it is the "#1 Best Selling Air Purifier Brand in the US." There is good reason to believe Defendant, as its Air Purifiers do millions of dollars a month in sales on Amazon.com alone.

6.      In response to the NAD challenge brought by Dyson, Vesync agreed to remove its false and misleading representations about the Products' filters from the Product pages and packaging of its Products.  However, this attempt at remediation is a day late and a dollar short. Defendant has profited greatly from the explosion in the air-purifier market brought about by the ongoing COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires that have ravaged the United States.  Consumers are rightfully concerned about maintaining indoor spaces that are free of harmful pathogens and contaminants.  As a result, a large portion of Defendant's gargantuan profits are attributable to the HEPA filtration claims that it falsely made about its Products.

7.      But for Defendant's HEPA claims, the fair value of its Levoit Air Purifiers would have been substantially lower, i.e., their market price would have been closer to non-HEPA filters, which sell at a discount compared to air purifiers with HEPA filters. Put differently, Defendant's HEPA misrepresentations allowed it to overcharge the class in the amount of the HEPA-related price premium—even assuming there would be a market for Defendant's non-HEPA filters at all.

8.      Relatedly, Defendant's false and misleading representations induced reasonable consumers like Plaintiffs into purchasing the Products.  Had Plaintiffs and all other similarly situated consumers known that—contrary to Defendant's knowing representations—the Products did not have HEPA filters, they would have paid less for the Products or not purchased them at all.

9.      Vesync appreciates the importance of truthfully representing compliance with HEPA standards, as it has initiated business to business proceedings against competitors for false advertising of HEPA compliance through NAD.

10.      Plaintiffs are now seeking a return of the HEPA-related premiums that Defendant charged for its Products, on behalf of themselves and other similarly situated purchasers. Plaintiffs assert claims on behalf of themselves and all other similarly situated purchasers of Defendant's Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. &

1   Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act

2   ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iv) fraud; and (v) unjust enrichment.

3   <u>**PARTIES**</u>

4       11.     Plaintiff Rick Chen is a citizen of California and resides in the city of San Francisco,

5   California.  While in California, Plaintiff Chen purchased the Levoit Core 300 True HEPA Filter

6   Air Purifier from Defendant's Amazon store webpage on September 27, 2020, for $99.99.  Plaintiff

7   purchased another Core 300 Air Purifier ($99.99) along with a "H13 True HEPA" replacement

8   filter ($23.99) from Amazon on December 31, 2020.  Plaintiff Chen reviewed and relied on

9   Defendant's warranties and representations about the Product's HEPA filter and filtration

10  capabilities prior to purchasing the Product.  Specifically, Plaintiff Chen saw on the Amazon store

11  page that Defendant's Air Purifier was advertised with the following representations and warranties

12  (directly quoted):

13      a.  Levoit Core 300 True HEPA Air Purifier.

14      b.  Breathe in clean air with every breath using the Levoit Smart True HEPA Air
            Purifier.

15

16      c.  [Includes a] H13 True HEPA Filter.

17      d.  HEPASmart™ Technology helps capture 99.99% of bacteria and mold, as well
            as 99.9% of viruses*.

18

19      e.  Filters at least 99.97% of airborne particles 0.3 microns in size, including fine
            dust, pet dander, smoke, and pollen.

20      f.  The H13 True HEPA Filter works alongside the Pre-Filter and High-Efficiency
            Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in
21          size, such as dust, smoke, pollen, odor.

22      g.  Filters at least 99.97% of 0.3-micron airborne particles.

23      h.  Levoit Core 300 True HEPA 3-Stage Original Filter.

24
        i.  Fill your environment with fresh, clean air using Levoit's Core 300-RF 3-Stage
25          Original Filter. An effective 3-stage filtration system captures at least 99.97% of
            airborne particles 0.3 microns in size, so your surrounding air is free of harmful
26          contaminants.

27

28

12.     Plaintiff Chen reasonably relied on Defendant's representations and believed that the Air Purifiers had HEPA filters.  Had Defendant not warranted and represented that the Products had HEPA  filters, Plaintiff Chen would not have purchased the Product or would have paid substantially less for it.

13.     Plaintiff Mindy Aiello is a citizen of California and resides in the city of Walnut Creek, California.  While in California, Plaintiff Aiello purchased the Levoit EverestAir True HEPA Filter Air Purifier from Target.com on December 13, 2023, for $546.23.  Plaintiff Aiello reviewed and relied on Defendant's warranties and representations about the Product's HEPA filter and filtration capabilities prior to purchasing the Products.  Specifically, Plaintiff saw on Target.com that Defendant's Air Purifier was advertised with the following representations and warranties:

    a.  Smart True HEPA Air Purifier.

    b.  3-Stage H13 True HEPA Filtration.

    c.  3-Stage Filtration: Filter at least 99.97% of 0.3-micron airborne particles, as well as smoke, odors, and VOC's.

    d.  The Levoit EverestAir Smart Air Purifier filters at least 99.97% of 0.3-micron airborne particles and uses filters to help trap viruses, bacteria, and mold with statically charged fibers.

14.     Plaintiff Aiello reasonably relied on Defendant's representations and believed that the EverestAir had a HEPA filter.  Had Defendant not warranted and represented that the Product had HEPA filters, Plaintiff Aiello would not have purchased the Product or would have paid substantially less for it.

15.     Defendant Vesync Corporation is a California corporation with headquarters in Tustin, California.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes

have a different citizenship from the defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

17.     This Court has personal jurisdiction over Defendant because Defendant was formed under the laws of California and has its principal place of business in Anaheim, California.

18.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District; at least one Plaintiff resides within this District; and a substantial part of the events giving rise to one of the Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

**A.     Air Purifiers and the Air-Purifier Market**

19.     The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.  This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000 premature deaths in the United States each year."  Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

20.     Air pollution can also be a visceral reminder of human-driven climate change: the smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors.  For many, the smoke has exacerbated health conditions such as asthma or emphysema.

21.     As a result, public concern about air pollution is high.  In fact, one 2019 survey found that, of about 1000 responses, 43% of respondents indicated that they had a "great deal" of concern about air pollution in the United States and 31% indicated that they had a "fair amount" of concern about air pollution.  Taken together, 74% of respondents expressed concern about air pollution.  This is in line with the EPA's concerns—the agency places indoor air pollution among the top five environmental health risks.

22.    Concern about air quality skyrocketed in 2020, however, as wildfires intensified and the airborne COVID-19 virus shut down the globe.

23.    As expected, consumer concern over airborne contaminants has helped the air-purifier market explode, from $8.05 billion in 2019 to $16.83 billion in 2024:[3] "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination.  Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."

24.    Air purifiers come in various forms.  Among the most effective purifiers are those with HEPA filters.  HEPA is an acronym for "High Efficiency Particulate Air."  HEPA filters are strictly designed and must adhere to certain specifications to be designated as  HEPA.

25.    Specifically, a HEPA filter is a type of pleated mechanical filter that typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by aluminum separators.  The EPA states that a HEPA filter can "remove at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns (μm)."[4]  However, the EPA clarifies that "the diameter specification of 0.3 microns corresponds to the worst case; the most penetrating particle size (MPPS)," and that "[p]articles that are larger or smaller are trapped with even higher efficiency."[5]  Accordingly, the EPA states that "[u]sing the worst case particle size results in the worst case efficiency rating (i.e. 99.97% or better for all particle sizes)."[6]  Manufacturers often define HEPA as "99.97% at 0.3 microns" in their advertising, but this is merely a shorthand for the true HEPA definition: "99.97% or better for all particle sizes."  For example, in the event a filter captures 99.97% of particles 0.3 microns, but *does not* reach 99.97%

[3] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022–2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited September 3, 2024).

[4] https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter

[5] *Id.*

[6] *Id.*

at 0.2 microns, the filter would not qualify as HEPA per the EPA's definition.



**Figure 1:** *A Graphic Example of a HEPA Filter*

26.    According to the Centers for Disease Control and Prevention (CDC), HEPA filters "are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing."[7]

27.    For example, even though the SARS-CoV-2 virus is about 0.125 microns in diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including viruses, in a home or confined space."[8]

28.    The reason why consumers may care that the air purifier they purchase meets the HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne

---

[7] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your Home, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilationhome (last accessed September 3, 2024).

[8] *Id.*

pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter out pollution caused from events like wildfires, which are growing ever more frequent.

29.    Consumers want the assurance that the HEPA standard provides, and they are willing to pay more for HEPA filters, i.e., consumers are willing to pay a premium for filters that meet the HEPA standard. A review of current sales prices, across brands that sell both HEPA and non-HEPA filters (what marketers sometimes call "HEPA-type" purifiers), indicates that HEPA purifiers sell—on average—at a 41% premium to non-HEPA filters within the same brand:

### TABLE A

| Model | HEPA | | | Non-HEPA | | | HEPA premium |
|---|---|---|---|---|---|---|---|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | |
| Molekule | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holme | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |
| Crane | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| **Average premium:** | | | | | | | **41%** |

30.    Being able to make a 99.97% "HEPA-filtration" claim is thus a huge boon for manufacturers, and they know it.  The HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration.

31.    Accordingly, the phrase "True HEPA" is now ubiquitous in air purifier marketing, including Defendant's. The reason for this is that the phrase carries weight.  It is a signal of quality to consumers—that the air purifier they are buying is of a high grade and worth more than purifiers that do not have a HEPA filter.  Though consumers may not know the filtration efficiency requirements of the HEPA standard, or the technicalities of the various HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling.  If having a HEPA filter was not material to consumers, then manufacturers like Defendant would not advertise the feature so heavily, nor would Defendant bring HEPA false advertising disputes through NAD.  In fact, given consumer preference for

HEPA filters, there are few, if any, non-HEPA filters left on the market, i.e., there is little to no demand for filters that do not bear the HEPA designation.

32.     The materiality to consumers of HEPA representations is further confirmed by enforcement actions taken by regulators including the Federal Trade Commission, which has, among other things, entered into Consent Decrees with manufacturers of air purifiers for claims made about the efficacy of their HEPA purifiers and filters. *See, e.g., In the Matter of Honeywell,* FTC File No. 962-3154.[9]

33.     The representation used by Defendant of "True HEPA" also carries greater significance to consumers: that there may be a "false" or inauthentic HEPA filter out there. The use of the term "True HEPA" is thus an affirmation by manufacturers like Defendant that a HEPA is a standardized term with prescribed qualities.

**B.      Defendant's Products and Advertising**

34.     At issue in this action are the following models of air purifiers: the Levoit EverestAir Smart True HEPA air purifier, and the Levoit Core 300, Core 300-RAC, Core 300S, and Core P350 True HEPA ("Core Series") air-purifier line of products, along with their respective replacement filters.

35.     The EverestAir is a slab-shaped device that comes with a rectangular filter which is replaceable. The filter that comes with the unit and the replaceable filter that can be purchased separately by consumers are identical, and they are both falsely advertised by Defendant as being HEPA grade and capable of trapping 99.97% of airborne particles at 0.3 microns. The Core Series purifiers are cylindrical devices that utilize the same circular filter between all of them that is interchangeable and replaceable. These Core Series purifiers have some unique features between them (*e.g.*, the Core 300S may be controlled by an app while the Core 300 cannot be controlled by an app), but they are substantially similar in that the filter that comes with the units and the replaceable filter that can be purchased separately by consumers are identical, and they are both falsely advertised by Defendant as being HEPA grade and capable of trapping 99.97% of airborne

---

[9] *Available at https://www.ftc.gov/legal-library/browse/cases-proceedings/962-3154-honeywell-inc-matter.*

particles at 0.3 microns.  Moreover, Plaintiffs are informed and believe that Defendant applied

HEPA test results from one filter to all of the Core Series air purifiers.



**Figure 2:** *Levoit EverestAir and Core 300 Series Air Purifiers and Replacement Filters*

36.    Defendant crafted unique false and misleading HEPA representations for each of

these Products, including that they trap at least 99.97% of 0.3 micron airborne particles.

37.    For instance, Defendant made the following express representations in the

advertising for its EverestAir Air Purifier. These representations were made (among other places)

on its website (which has since been altered), in its advertising, and on the websites of online stores

that sell these filters, such as Amazon (these webpages have also been altered):

    a.  Levoit EverestAir® Smart True HEPA Air Purifier.  (Product webpage).

    b.  To be considered True HEPA by US standards, the HEPA filter must trap at
       least 99.97% of 0.3-micron airborne particles.  The EverestAir achieves this
       high standard of excellence, trapping fine dust, pollen, smoke particles, and pet
       dander, keeping your air as clean as possible.  (Product webpage).

    c.  H13 True HEPA Filtration Traps at least 99.97% of 0.3-micron airborne
       particles. (Product package).

    d.  H13 True HEPA Filter with HEPASmart™ Technology Enhanced with
       statically charged fibers to trap at least 99.97% of 0.3-micron airborne particles,
       such as fine dust, smoke particles, pollen, and pet dander.  (Product package).

e. H13 True HEPA Filter Captures 99.99% of Particles, Pet Allergies, Smoke, Dust.  (Product package).

f. ANTI-ALLERGENS & ODORS: Premium 3-stage filtration includes a Washable Pre-Filter, H13 True HEPA Filter, and High-Efficiency Activated Carbon Filter.  (product webpage).

g. Trap at least 99.97% of 0.3-micron airborne particles, as well as odors, VOCs, fumes, and smoke.  (Product package).

h. The EverestAir provides premium filtration, trapping at least 99.97% of 0.3-micron airborne particles.  (Product webpage).

i. H13 True HEPA Filter with HEPASmart Technology. Enhanced with statically charged fibers to trap fine dust, smoke particles, pollen, and pet dander, as well as bacteria, mold, and viruses*. *Testing Report No. 220614240GZU-001. (Product webpage).

38.     As to the Core Series, Defendant has made the following express representations. These representations were made (among other places) on its website (which has since been altered), in its advertising, and on the websites of online stores that sell these filters, such as Amazon (these webpages have also been altered):

a. Levoit Core 300 True HEPA Air Purifier.  (Product package).

b. Breathe in clean air with every breath using the Levoit Smart True HEPA Air Purifier.  (Product page and Amazon page).

c. [Includes a] H13 True HEPA Filter.  (Product package and Amazon page).

d. HEPASmart™ Technology helps capture 99.99% of bacteria and mold, as well as 99.9% of viruses*.  (Product package and Amazon page).

e. Filters at least 99.97% of airborne particles 0.3 microns in size, including fine dust, pet dander, smoke, and pollen. (Product package and Amazon page).

f. The H13 True HEPA Filter works alongside the Pre-Filter and High-Efficiency Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in size, such as dust, smoke, pollen, odor. (Product webpage and amazon page).

g. Filters at least 99.97% of 0.3-micron airborne particles.  (Product package and Amazon page).

h. Levoit Core 300 True HEPA 3-Stage Original Filter.  (Product package and Amazon Page).

i. Fill your environment with fresh, clean air using Levoit's Core 300-RF 3-Stage Original Filter. An effective 3-stage filtration system captures at least 99.97% of airborne particles 0.3 microns in size, so your surrounding air is free of harmful contaminants. (Product page and Amazon page).

39. Throughout the class period, the packaging of the Core 300, 300S, and Core P350 also included HEPA claims:

 

 

**Figure 3:** *Packaging for the Substantially Similar "Core" Series Air Purifiers at Issue*

40. The packaging for the EverestAir makes a similar claim:



**Figure 4**

41.     And so does the packaging for the EverestAir replacement filter:



**Figure 5**

42.     Defendant has scrubbed the product pages for each of these Purifiers of any reference to HEPA—having apparently conceded to Dyson's NAD challenge rather than producing evidence to refute Dyson's claims.  In fact, on July 23, 2023, Vesync removed the old product page for its Core 300 series Air Purifiers and uploaded a new one with a unique web address.[10]  The old webpage described the Core 300S as the "Levoit Core 300S Smart True HEPA Air Purifier."  The new webpage omits any and all reference to HEPA filtration.



**Figure 6:** *A Diagram of the Core Series Replacement Filter from the Levoit Website*

---

[10] The product webpage changed from https://levoit.com/products/core-300s-smart-true-hepa-air-purifier to https://levoit.com/products/core-300s-smart-air-purifier.

43.     The changes to representations made about the Products were not constrained to Defendant's website, either.  Defendant has attempted to scrub reference to HEPA filtration from all online storefronts where the Air Purifiers are sold.  However, this was only partially successful.  Some webpages were missed entirely and in others there are still misleading references to HEPA filtration.  For instance, at the time the first Complaint was filed, the Products could still be found in the "HEPA Air Purifiers" section of Amazon.com.

44.     The following diagram is representative of the type of HEPA representations that consumers interested in the Core Series of Air Purifiers would encounter before the pages were scrubbed:

45.     Consumers interested in the EverestAir Purifier would encounter advertising such as this:



**Figure 7:** *A Diagram of the EverestAir Replacement Filter from the Levoit Website*

46.     With both Products, Defendant makes the same representation: that the filters used in the EverestAir and Core Series Air Purifiers had been tested and performed at or above the "HEPA" standards for filtration.  In reality, they had not.

## C.     Defendant's Products Are Challenged And Fail To Meet HEPA Standards

47.     On August 4, 2023, the National Advertising Division released its "FINAL DECISION" on Case #7222, Dyson's challenge to Vesync's express and implied claims regarding

the filtration capabilities of its EverestAir and Core 300, and Core 300S Smart True HEPA Air Purifiers and replacement filters.  The decision is attached to this complaint as **Exhibit A**.

48.     Dyson alleged that the filters and replacement filters for the Air Purifiers in question did not actually meet HEPA standards, despite Defendant's express and implied representations, detailed above.

49.     In support of this, Dyson presented the following evidence:

a.  the Institute of Environmental Science and Technology's ("IEST") Contamination Control Division's Recommended Practice CC001.6 (HEPA and ULPA Filters) and CC007.3 (Testing ULPA Filters), which Dyson argued are industry-recognized guides establishing the basic standards and definitions for HEPA-level filtration in the U.S.;

b.  third-party testing conducted by SGS IBR Laboratories on the filters used in the Levoit EverestAir® Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers, which demonstrated that the filters do not meet the IEST HEPA standards;

c.  EN 1822-1 (High-Efficiency Air Filters (EPA, HEPA, and ULPA)), the European standard for performance classifications of air purification; and

d.  U.S. Department of Energy Guidelines (DOE Technical Standard "Specification for HEPA Filters used by DOE Contractors").

**Ex. A** at 2.

50.     Defendant Vesync responded to Dyson's challenge by stating that "for reasons unrelated to Dyson's challenge, it had elected to permanently discontinue the challenged claims." *Id.* at 3.

51.     Despite Defendant's tacit admission of fault in the face of Dyson's testing, Plaintiffs' counsel commissioned their own independent third-party testing of the Core Series filter.

52.     The lab chosen by Plaintiffs' counsel is often used by companies to certify their filters and is an industry leader in the rigorous and accurate testing of HEPA filters.  The lab is certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations.  Moreover, the lab is well known for its stringent adherence to the various HEPA testing protocols set forth by the European Union, the

International Standards Organization, and the United States.  The lab is capable of testing filters with efficiencies up to 99.9999% filtration.

53.    Defendant claimed that its filters could filter out 99.97% of particles at 0.3 microns. The lab is more than sufficiently equipped to test such a claim.

54.    Just as Dyson had found before, testing by the lab commissioned by Plaintiffs' counsel found that Defendant's Core Series filters did not capture 99.97% of particles at 0.3 microns and were not truly HEPA-grade.

55.    The testing was conducted in accordance with European and American testing protocols.  In America the protocol used to establish HEPA-grade is IEST-RP-CC001.7.  In Europe the protocol used to establish HEPA classification is the EN1822 test.  Both protocols test for a filter's ability to filter out fine particles, but they employ differing testing methodologies and naming conventions.  The Core Series filters were tested twice under the IEST standard (**Ex. B**) and once under the EN1822 standard (**Ex. C**).

56.    The results of the EN1822 test are used to group filters into one of three classes: Efficient Particulate Air Filters (EPA), High Efficiency Particulate Air Filters (HEPA), and Ultra Low Penetration Air Filters (ULPA).  For purposes of the test, efficiency is defined as the filtration efficiency against the "most penetrating particle size."  Each class has subdivisions as well, depending on the filter's efficiency.  Thus, a filter tested under the EN1822 standard which could filter between 85% and 95% of particles at the most penetrating size would be classified as an EPA 10, or "E10" filter.  A filter which captures the most penetrating particles at a rate of 99.999995% would be categorized as a ULPA 17, or "U17" filter.  HEPA filters can be H13 (99.95%) or H14 (99.995%) before bumping up to the U15 class (99.9995% efficiency).

57.    For the American IEST protocol, to be classified as a HEPA filter, the filter must have a filtration efficiency of at least 99.97% down to 0.1 microns.  This is the test Defendant utilized to classify its Air Purifiers.

58.    When Defendant's Core Series filter was tested under the EN1822 standard, the Product's filtration efficiency at the most penetrating particle size (0.0340 microns) was 98.701%, resulting in a grade of E11, the second lowest grade.  This demonstrates that Defendant's H13

claim is false.  Moreover, as depicted below in Figure 8, all of the particle ranges tested from 0.293 microns to 0.3398 microns fell below 99.97%.  As such, the testing also conclusively proves that Defendant's advertised efficiency claim of 99.97% at 0.3 microns is false.  The EN1822 test report is attached to this complaint as **Exhibit C**.

**EN1822 Results – Core Series Filter**

| *Classification:* | *E 11* |
|---|---|
| *Size Rang($\mu m$)* | *Initial Fractional Efficiency(%)* |
| 0.0165 | 99.625 |
| 0.0190 | 99.070 |
| 0.0221 | 98.827 |
| 0.0255 | 98.793 |
| 0.0294 | 98.776 |
| **0.0340** | **98.701** |
| 0.0392 | 98.909 |
| 0.0453 | 99.012 |
| 0.0523 | 99.144 |
| 0.0604 | 99.336 |
| 0.0698 | 99.457 |
| 0.0806 | 99.564 |
| 0.0931 | 99.682 |
| 0.1075 | 99.728 |
| 0.1241 | 99.770 |
| 0.1433 | 99.804 |
| 0.1655 | 99.794 |
| 0.1911 | 99.827 |
| 0.2207 | 99.844 |
| 0.2548 | 99.858 |
| 0.2943 | 99.841 |
| 0.3398 | 99.839 |
| 0.3924 | 99.822 |
| 0.4532 | 99.875 |
| 0.5233 | 99.846 |
| 0.6043 | 99.786 |

**Figure 8**

59.    The Core Series Products fared no better after two rounds of testing under the IEST-RP-CC001.7 standard (depicted in Figure 9, below).  At 0.1-0.2 microns the Products' filters had efficiencies of 99.589% and 97.831%; at 0.2-0.3 microns the Products' filters had an efficiencies of 99.699% and 98.229%; and at 0.3-0.5 microns the Products' filters had an efficiencies of 99.866%

and 98.652%.  Because the test results fell below the 99.97% threshold at and above 0.1 microns,
including at 0.3 microns, the Core Series filters failed to meet the HEPA standard.  The testing also
conclusively proves that Defendant's advertised efficiency claim of 99.97% at 0.3 microns is false.
The IEST reports are attached to this Complaint as **Exhibit B**.

**IEST Results – Core Series Filter**

| Flow Rate(cfm) | 130 cfm | Flow Rate(cfm) | 130 cfm |
|---|---|---|---|
| ΔP (" $H_2O$) | 0.374 | ΔP (" $H_2O$) | 0.299 |
| Size Range (μm) | Fractional Efficiency % | Size Range (μm) | Fractional Efficiency % |
| 0.1-0.2 | 99.589 | 0.1-0.2 | 97.831 |
| 0.2-0.3 | 99.699 | 0.2-0.3 | 98.229 |
| 0.3-0.5 | 99.866 | 0.3-0.5 | 98.652 |
| 0.5-0.7 | 99.901 | 0.5-0.7 | 98.716 |
| 0.7-1.0 | 99.924 | 0.7-1.0 | 98.795 |
| 1.0-2.0 | 99.940 | 1.0-2.0 | 99.114 |
| 2.0-3.0 | 99.976 | 2.0-3.0 | 99.306 |
| 3.0-5.0 | 99.985 | 3.0-5.0 | 99.589 |

**Figure 9 –** *Results of HEPA Tests Conducted on Two Random Samples of Core Series Filters*

60.    Further, Plaintiffs are in possession of ▮▮▮▮▮▮▮▮▮▮▮▮ that proves that
Defendant's EverestAir and Core Series Products failed to capture 99.97% of particles at 0.3
microns. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ *See* **Exhibit D**. ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮ *See id.*  Even more, Plaintiffs are informed and believe that Defendant knew through
its own testing—under IEST and EN1822 standards, which were in place at all times during the
Class Period—that its Products were being falsely advertised as having HEPA filters.

61.    Throughout the class period, Defendant made repeated express representations on
the Product's packaging and in its marketing (including in-store and on Amazon and other websites
carrying the Products) that the Products included a HEPA-grade filter that even exceeded the
HEPA standard.  Plaintiffs' testing, and the evidence submitted under seal, proves otherwise.
Defendant's advertising is thus false and highly misleading to consumers like Plaintiffs and the
members of the Classes they seek to represent.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.    But for Defendant's HEPA Misrepresentations, Plaintiffs and the proposed Classes would have paid less for their Air Purifiers.**

62.    By falsely claiming that its EverestAir and Core Series purifiers had HEPA filters, and selling its replacement filters as HEPA, Defendant was able to overcharge Plaintiffs and the class members in the amount of a HEPA-related premium associated with those claims.

63.    Defendant's HEPA claims appeared on the packaging that its Levoit Air Purifiers came in; appeared on the webpages where its products were sold; and were baked into the titles of the Levoit Air Purifiers themselves. Accordingly, those claims were seen by all purchasers of Levoit Air Purifiers and replacement filters.

64.    Defendant's HEPA claims misled reasonable consumers. Defendant is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendant's HEPA claims; consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier; and Defendant's HEPA claims were expressly false, not impliedly false (Defendant explicitly claimed that Defendant's air purifiers and filters meet the HEPA standard, when in fact they do not), *i.e.*, no reasonable consumer would interpret Defendant's claims as making some kind of implicitly true statement.

65.    If Defendant hadn't claimed that its purifiers and filters were HEPA-grade, then the market price of those purifiers and filters would have been lower, *i.e.*, those market prices would have been less than they were in the actual world, and closer to the price of non-HEPA filters.

66.    Accordingly, Plaintiffs and the proposed Classes paid for Defendant's Levoit Air Purifiers at artificially inflated prices. In other words, Defendant's misrepresentations allowed it to overcharge Plaintiffs and the Classes, who were damaged in the amount of that overcharge.

**CLASS ALLEGATIONS**

67.    ***Class Definition.***  Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of themselves and all other similarly situated consumers, and seek to represent a class (the "Nationwide Class") defined as:

> All natural persons in the United States who purchased a Levoit

Core 300, Core 300-RAC, Core 300S, P350, or EverestAir air
purifier or replacement filter during the applicable statutory period.

68.     Plaintiffs also seek to represent a California subclass defined as follows (the

"California Subclass"):

All natural persons who purchased in California a Levoit Core 300,
Core 300S, P350, or EverestAir air purifier or replacement filter
during the applicable statutory period.

69.     The Nationwide Class and California Subclass are collectively referred to as the

"Classes."  Excluded from the Classes are governmental entities; Defendant; and Defendant's

affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded

is any judicial officer presiding over this matter and the members of their immediate families and

judicial staff.

70.     Plaintiffs reserve the right to modify or expand the definition of the Classes to seek

recovery on behalf of additional persons as facts are learned in further investigation and discovery.

71.     ***Numerosity.***  Members of the Classes are so numerous that their individual joinder

herein is impracticable.  The precise number of Class members and their identities are unknown to

Plaintiffs at this time but will be determined through discovery of Defendant's records.  Class

members may be notified of the pendency of this action by mail, email, publication, and/or other

media, including social media.

72.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all

Class members and predominate over questions affecting only individual Class members.  These

common legal and factual questions include, but are not limited to:

a.   Whether the Products are in fact HEPA-grade;

b.   Whether Defendant's express representations about the capability of the
Products included false and/or misleading statements and/or omissions;

c.   Whether Defendant knowingly made false HEPA claims about the Products;

d.   Whether Defendant's representations were material;

e.   Whether an objectively reasonable consumer would have been misled by
Defendant's HEPA claims; and

f.   Whether Defendant's HEPA claims allowed it to charge more for the Products than it otherwise could have.

73.   ***Typicality.***  Plaintiffs' claims are typical of the claims of the proposed Classes because Plaintiffs, like all members of the Classes, were induced by Defendant's false and misleading warranties to purchase Defendant's Products without knowing that the Defendant's claims about the Products' filter were false and misleading.  The representative Plaintiffs, like all members of the Classes, have been damaged by Defendant's misconduct in the very same way as the members of the Classes.  Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

74.   ***Adequacy***.  Plaintiffs are adequate representatives of the Classes they seek to represent because their interests do not conflict with the interests of the members of the Classes; they have retained counsel competent and experienced in prosecuting class actions; and they intend to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

75.   ***Superiority***.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.  By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

1
2

<u>COUNT I</u>
**Violations of California's Unfair Competition Law ("UCL")**
**Business & Professions Code § 17200, *et seq.***

3

76.      Plaintiffs hereby incorporate by reference the allegations contained in all proceeding

4

paragraphs of this complaint.

5

77.      Plaintiffs bring this claim individually and on behalf of the members of the

6

Nationwide Class or, in the alternative, the California Subclass against Defendant.

7

78.      This claim is brought under the laws of California.

8

79.      Defendant violated California's UCL by engaging in unlawful, fraudulent, and

9

unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

10

***The Unlawful Prong***

11

80.      Defendant engaged in unlawful conduct by violating the CLRA and FAL as

12

referenced herein.

13

***The Fraudulent Prong***

14

81.      As alleged in detail above, Defendant misrepresented material facts about its

15

Products, including by misrepresenting to consumers that the Products had HEPA, H13, or "True

16

HEPA" filters, despite knowing that they did not.

17

82.      Defendant, as manufacturer and marketer of the Products, was in a position to know

18

(and did know) the true quality and capability of its Products but affirmatively warranted that the

19

Products had a greater purifying ability than they actually did.

20

83.      As a result of these false and misleading practices, Defendant induced Plaintiffs and

21

the members of the Classes to purchase the Products that Plaintiffs and the class members would

22

not have purchased, or would have paid substantially less for, had Defendant been truthful about

23

the quality and capability of its Products.

24

***The Unfair Prong***

25

84.      Defendant's conduct was unfair because, by claiming that its Products would purify

26

99.97% of airborne particulates, Defendant deceived consumers into believing that the Products'

27

filters and replacement filters were HEPA-grade—a high standard for air purifying—even though

28

they are not.  This is unfair because it led Plaintiffs and the members of the Classes to purchase the Products that they otherwise would not have, or would have paid substantially less for, had they not been advertised as "HEPA," "H13," or "True HEPA."  Defendant's misleading practice was also unfair because it gave Defendant an unfair advantage over competitors to the extent that Defendant's Core 300 series Air Purifier is the best-selling air purifier on Amazon.com, doing millions of dollars in sales per month.

85.     The FTC has determined that false representations regarding the efficacy of HEPA air purifiers and filters constitutes an unfair and deceptive trade practice.

86.     Plaintiffs and the Class and California Subclass members could not have reasonably avoided the injury.  Only Defendant was aware that its Air Purifiers did not possess HEPA filters.

***

87.      For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiffs and members of the Classes saw, read, and reasonably relied on Defendant's false and misleading warranties about the filtration capabilities of its Air Purifiers and replacement filters.  Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiffs', the Nationwide Class', and the California Subclass's purchasing decisions.

88.     Defendant's misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiffs and the members of the Classes.

89.     There was no benefit to consumers or competition from falsely claiming that the Products were of a quality that they were not.

90.     Plaintiffs and the members of the Classes have suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant advertised its Products truthfully.

## COUNT II
### Violations of California's False Advertising Law ("FAL")
### Business & Professions Code § 17500, *et seq.*

91.     Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

92.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass against Defendant.

93.     This claim is brought under the laws of California.

94.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or service, . . . or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

95.     During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by making false and misleading representations about its Products' filters being HEPA-grade to attract more purchasers than its Products would otherwise have received.  Likewise, Defendant's false advertising induced consumers to purchase the Products or pay more for the Products than consumers otherwise would have.

96.     Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' HEPA-grade filters were untrue and misleading.

97.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

98.     As a direct and proximate result of these acts, consumers have been and are being harmed, including Plaintiffs and the members of the Classes.  Plaintiffs and the members of the Classes have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiffs, and the members of the Classes would not have purchased Defendant's Products or would have paid substantially less for the Products had Defendant not advertised them as "HEPA," "H13," or "True HEPA"; (b) Plaintiffs and the members of the Classes paid an increased price for the Products based on this advertising; and (c) the Products did not confer the value they promised to confer because they did not actually contain HEPA filters.

99.     Plaintiffs, the Nationwide Class, and the California Subclass are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b)

interest at the highest rate allowed by law; and (c) the payment of Plaintiffs' attorneys' fees and costs.

## COUNT III
### Violations of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*

100. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

101. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass against Defendant.

102. This claim is brought under the law of California.

103. Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

104. Plaintiffs and members of the Nationwide Class and California Subclass are "consumers," as defined by Cal. Civ. Code § 1761(d).

105. The Products purchased by Plaintiffs, the Nationwide Class, and the California Subclass are "goods" as defined by Cal. Civ. Code § 1761(a).

106. The purchases by Plaintiffs, the Nationwide Class, and the California Subclass constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

107. As alleged more fully above, Defendant has violated the CLRA by furnishing false and misleading statements about the quality and capabilities of its Products to attract and induce more consumers to purchase its Products than would have otherwise been induced and attracted to the Products without those false and misleading statements.

108. As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

109. Defendant's conduct was likely to deceive, and did deceive, Plaintiffs, the members of the Classes, all of whom are reasonable consumers. Defendant knew or should have known through the exercise of reasonable care, that its claims about its Products' filtration capabilities were false and misleading.

110. Defendant's representations about its Products' HEPA filter were intended to induce reliance, and Plaintiffs and the members of the Classes, read, and reasonably relied on the false and

misleading affirmative representations when deciding to purchase Defendant's Products. Defendant's deceptive conduct was a substantial factor in Plaintiffs' purchase decisions and the purchase decisions of the proposed Nationwide Class and California Subclass.

111.    Plaintiffs and members of the Nationwide Class and California Subclass have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

112.    In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiffs  sent written notice to Defendant on August 29, 2023, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiffs and "all other persons similarly situated."  Defendant did not provide such relief.  Accordingly, Plaintiffs seek money damages under the CLRA to the fullest extent permitted.

## COUNT IV
### Fraud

113.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-75 of this Complaint.

114.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass.

115.    As alleged in detail above, Defendant misrepresented material facts about the Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

116.    Defendant was in a position to know (and did know) the true quality and capability of its Products, but it affirmatively warranted that the Products had HEPA filters, when in truth they did not.  In fact, Plaintiffs are informed and believe that Defendant knew through its own testing—under IEST and EN1822 standards, which were in place at all times during the Class Period—that its Products were being falsely advertised as having HEPA filters.

117.    The misrepresentations made by Defendant, upon which Plaintiffs and the members of the Classes relied, were intended to induce and actually did induce Plaintiffs and the members of the Classes to purchase the Products.  Defendant induced Plaintiffs and the members of the Classes to purchase the Products that Plaintiffs and the members of the Classes would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

118.    Defendant's fraudulent actions caused damages to Plaintiffs, the Nationwide Class, and the California Subclass, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

119.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-75 of this Complaint.

120.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, alternatively, the California Subclass.

121.    As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

122.    Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

123.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

124.    Defendant either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Products would contain true HEPA filters. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

125.     Defendant's acceptance and retention of these benefits of the payments from Plaintiffs and the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Classes.

126.     Plaintiffs and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

**COUNT VI**
**Breach of Express Warranty**

127.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-76 of this Complaint.

128.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass.

129.     As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had "HEPA," "H13," or "True HEPA" filters, despite knowing that they did not.

130.     Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

131.     Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all members of the proposed Classes the following relief against Defendant:

(a)     An order certifying the Nationwide Class, and California Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b)     An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c)     Compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)     Prejudgment interest on all amounts awarded;

1      (e)      Restitution and all other forms of equitable monetary relief;

2      (f)      An order requiring Defendant to undertake a corrective advertising campaign;

3      (g)      An order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit; and

4

5      (h)      Granting such other and further relief as many be just and proper.

6 **JURY TRIAL DEMANDED**

7      Plaintiffs demand a trial by jury on all claims so triable.

8

9 Dated: December 23, 2024      **BURSOR & FISHER, P.A**.

10      By:    _/s/ Luke Sironski-White_
         Luke Sironski-White

11

12      L. Timothy Fisher (State Bar No. 191626)
     Luke Sironski-White (State Bar No. 348441)

13      1990 North California Blvd., 9th Floor
     Walnut Creek, CA 94596

14      Telephone: (925) 300-4455
     Facsimile: (925) 407-2700

15      E-mail: ltfisher@bursor.com
         lsironski@bursor.com

16

17      **SINDERBRAND LAW GROUP, P.C**.
     Greg Sinderbrand (State Bar No. 179586)

18      2829 Townsgate Road, Suite 100
     Westlake Village, CA 91361

19      Telephone: (818) 370-3912
     E-mail: greg@sinderbrandlaw.com

20

21      **GEORGE FELDMAN MCDONALD, PLLC**
     Lori G. Feldman

22      Janine L. Pollack
     745 Fifth Avenue, Suite 500

23      New York, NY 10151
     Phone: (917) 983-2707

24      Fax: (888) 421-4173
     Email : lfeldman@4-justice.com

25      Email: jpollack@4-justice.com
     Email : Eservice@4-justice.com

26

27      **GEORGE FELDMAN MCDONALD, PLLC**
     David J. George

28

Brittany Sackrin
9897 Lake Worth Road, Suite 302
Lake Worth, Florida  33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BSackrin@4-justice.com
Email: EService@4-justice.com

**TAUS, CEBULASH & LANDAU, LLP**
Miles Greaves
Archana Tamoshunas
123 William Street
Suite 1900a
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
mgreaves@tcllaw.com
atamoshunas@tcllaw.com

**MIGLIACCIO AND RATHOD LLP**
Jason Samual Rathod
Nicholas A. Migliaccio
412 H Street N.E.
Washington, DC 20002
(202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Luke Sironski-White declare as follows:

1.      I am counsel for Plaintiffs, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiffs Rick Chen and Mindy Aiello reside in this District.

3.      Plaintiff Rick Chen is a resident of San Francisco, California.

4.      Plaintiff Mindy Aiello is a resident of Walnut Creek California.

5.      Defendant Vesync Corporation is a California company with its principal place of business in Anaheim, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on December 23, 2024, at Walnut Creek, California.

Luke Sironski-White

**EXHIBIT A**

Case #7222          (08/04/2023)
**Vesync Co., Ltd.**
**HEPA Air Purifiers**
***Challenger***:          *Dyson, Inc.*
***Product Type***:        *Appliances*
***Issues***:              *Efficacy Claims; Health & Safety Claims; Performance Claims*
***Disposition***:         *Modified / Discontinued*

## BBB NATIONAL PROGRAMS

### *NATIONAL ADVERTISING DIVISION*

| | |
|---|---|
| DYSON, INC.,<br>        *Challenger,*<br><br>VESYNC CO., LTD.,<br>        *Advertiser.* | Case No. 7222<br>Closed 08/04/2023 |

## FINAL DECISION

## I.      Basis of Inquiry

The advertising industry established the National Advertising Division ("NAD") and the National Advertising Review Board ("NARB") in 1971 as an independent system of self-regulation designed to build consumer trust in advertising. NAD reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. Its decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. Challenger Dyson, Inc. ("Dyson" or "Challenger") challenged express and implied claims made by Advertiser Vesync Co., Ltd. ("Vesync" or "Advertiser") for its HEPA Air Purifiers. The following are representative of the claims that served as the basis for this inquiry:

### A.     Express Claims

EverestAir® Smart True HEPA Air Purifier & Replacement Filters

- Levoit EverestAir® Smart True HEPA Air Purifier.
- To be considered True HEPA by US standards, the HEPA filter must trap at least 99.97% of 0.3-micron airborne particles. The EverestAir achieves this high standard of excellence, trapping fine dust, pollen, smoke particles, and pet dander, keeping your air as clean as possible.
- H13 True HEPA Filtration Traps at least 99.97% of 0.3-micron airborne particles.
- H13 True HEPA Filter with HEPASmart™ Technology Enhanced with statically charged fibers to trap at least 99.97% of 0.3-micron airborne particles, such as fine dust, smoke particles, pollen, and pet dander.
- H13 True HEPA Filter Captures 99.99% of Particles, Pet Allergies, Smoke, Dust
- ANTI-ALLERGENS & ODORS: Premium 3-stage filtration includes a Washable Pre-Filter, H13 True HEPA Filter, and High-Efficiency Activated Carbon Filter. Trap at least 99.97% of 0.3-micron airborne particles, as well as odors, VOCs, fumes, and smoke.

- The EverestAir provides premium filtration, trapping at least 99.97% of 0.3-micron airborne particles.
- H13 True HEPA Filter with HEPASmart Technology. Enhanced with statically charged fibers to trap fine dust, smoke particles, pollen, and pet dander, as well as bacteria, mold, and viruses*. *Testing Report No. 220614240GZU-001.

Core 300 and 300S True HEPA Air Purifier & Replacement Filters

- Levoit Core 300 True HEPA Air Purifier.
- Breathe in clean air with every breath using the Levoit Smart True HEPA Air Purifier.
- [Includes a] H13 True HEPA Filter.
- HEPASmart™ Technology enhances the H13 True HEPA filtration by capturing 99.99% of bacteria and mold, as well as 99.9% of viruses*.
- Remove 99.97% Dust Smoke Mold Pollen, Core 300.
- The H13 True HEPA Filter works alongside the Pre-Filter and High-Efficiency Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in size, such as dust, smoke, pollen, odor.
- High Filtration ≥ 99.97%* *Filters at least 99.97% of 0.3-micron airborne particles.
- Levoit Core 300 True HEPA 3-Stage Original Filter.
- Fill your environment with fresh, clean air using Levoit's Core 300-RF 3-Stage Original Filter. An effective 3-stage filtration system captures at least 99.97% of airborne particles 0.3 microns in size, so your surrounding air is free of harmful contaminants.

### B. Implied Claims

- The filters used in the Levoit EverestAir® and Core 300 air purifiers have been tested to and have passed "HEPA" standards.

## II.    Evidence Presented

The Challenger presented examples of product packaging and online advertising in which the challenged claims appeared.  The Challenger also presented (i) the Institute of Environmental Science and Technology's ("IEST") Contamination Control Division's Recommended Practice CC001.6 (HEPA and ULPA Filters) and CC007.3 (Testing ULPA Filters) that the Challenger argued are industry-recognized guides establishing the basic standards and definitions for HEPA-level filtration in the U.S.; (ii) third-party testing conducted by SGS IBR Laboratories on the filters used in the Levoit EverestAir® Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers that the Challenger argued demonstrate that the filters do not meet the IEST HEPA standards; (iii) EN 1822-1 (High-Efficiency Air Filters (EPA, HEPA, and ULPA), the European standard for performance classifications of air purification; and (iv) U.S. Department of Energy Guidelines (DOE Technical Standard "Specification for HEPA Filters used by DOE Contractors").

## III.    Decision

Dyson and Vesync are competing manufacturers of air purifiers.  Dyson challenged certain claims made by Vesync in advertising for Vesync's Levoit EverestAir® Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers and their respective replacement filters. Dyson argued that Vesync lacked adequate substantiation for its claims that the air purifiers filters have passed "HEPA" standards and that the challenged claims convey other false and misleading messages.

In its response, Vesync asserted its belief in the efficacy of its products and stated that the challenged claims were made based on pre-existing independent third-party data. Vesync informed NAD that it was in the process of updating its testing data, however, and that for reasons unrelated to Dyson's challenge, it had elected to permanently discontinue the challenged claims.

In reliance on Vesync's representation that the challenged claims had been permanently discontinued, NAD did not review the challenged claims on their merits. The discontinued claims will be treated for compliance purposes as though NAD recommended their discontinuance and Vesync agreed to comply.

## IV.    Conclusion

The discontinued claims will be treated for compliance purposes as though NAD recommended their discontinuance and the Advertiser agreed to comply.

## V.    Advertiser's Statement

Vesync thanks NAD for its attention to this matter and agrees to comply with its decision. We support the self-regulatory process and appreciate the opportunity to participate in it. The company does not concede that there was anything misleading about the claims but has decided to voluntarily discontinue the claims at this time.

Vesync is proud of the work it does to provide effective, high-quality appliances backed by rigorous research and engineering. The company will continue to devote its attention to bringing market-leading appliances to consumers across the globe. **(#7222 DR, closed 08/04/2023)**

© 2023  BBB National Programs

**EXHIBIT B**

**LMS Technologies, Inc.**
*6423 Cecilia Circle, Bloomington, MN 55439*
*(952) 918-9060  Fax: (952) 918-9061*

| | | | |
|---|---|---|---|
| Date : | October 26, 2023 | Requested By: | Bursor & Fisher |
| Test Type : | IEST-RP-CC001.6 | Maufacturer: | Levoit |
| Test Aerosol : | KCL, Neutralized | Filter ID: | Core 300-RAC Filter |
| Flow Rate: | **130 cfm** | Description: | True HEPA Filter |
| **Temp and Humidity: 72°F and 42%** | | LMS #: | 8753 |
| | | **B/N: 232731862332** | |

| Flow Rate(cfm) | 130 cfm |
|---|---|
| ΔP (" H₂O) | 0.374 |
| Size Range (μm) | Fractional Efficiency % |
| **0.1-0.2** | **99.589** |
| **0.2-0.3** | **99.699** |
| 0.3-0.5 | 99.866 |
| 0.5-0.7 | 99.901 |
| 0.7-1.0 | 99.924 |
| 1.0-2.0 | 99.940 |
| 2.0-3.0 | 99.976 |
| 3.0-5.0 | 99.985 |



$$F_{eff} = \frac{C_{up} - C_{down}}{C_{UP}} \, x100\%$$

F_eff = Fractional Efficiency

$C_{up}$ = Particle Concentration Upstream of Filter

$C_{down}$ = Particle Concentration Downstream of Filter



Fractional Efficiency versus Particle Diameter

| | |
|---|---|
| *TEST SUPERVISOR* | *ENGINEERING APPROVAL* |
| Emile Tadros | K.C. KWOK, PH.D. |
| ------------------------------ | ------------------------------------ |
| | *F-001* |

**LMS Technologies, Inc.**
*6423 Cecilia Circle, Bloomington, MN 55439*
*(952) 918-9060  Fax: (952) 918-9061*

| | | | |
|---|---|---|---|
| Date : | August 25, 2023 | Requested By: | Bursor & Fisher |
| Test Type : | IEST-RP-CC001.7 | Maufacturer: | Levoit |
| Test Aerosol : | Latex Beads, Neutralized | Filter ID: | Core 300-RF |
| Air Flow: | 130 cfm | Sample #: | Sample #1 |
| LMS #: | Research sample | Series #: | One year shelved sample |
| **Temp and Humidity: 72 F and 43%** | | Description: | True HEPA 3-Stage Filter |

| Flow Rate(cfm) | 130 cfm |
|---|---|
| ΔP (" H₂O) | 0.299 |
| Size Range (µm) | Fractional Efficiency % |
| **0.1-0.2** | **97.831** |
| **0.2-0.3** | **98.229** |
| 0.3-0.5 | 98.652 |
| 0.5-0.7 | 98.716 |
| 0.7-1.0 | 98.795 |
| 1.0-2.0 | 99.114 |
| 2.0-3.0 | 99.306 |
| 3.0-5.0 | 99.589 |



$$F_{eff} = \frac{C_{up} - C_{down}}{C_{UP}} x100\%$$

$F_{eff}$ = Fractional Efficiency

$C_{up}$ = Particle Concentration Upstream of Filter

$C_{down}$ = Particle Concentration Downstream of Filter



*TEST SUPERVISOR*
Emile Tadros
------------------------------

*ENGINEERING APPROVAL*
K.C. KWOK, PH.D.
------------------------------

*F-001*

**EXHIBIT C**

*October 26, 2023* **LMS#8753**

# EN1822 European HEPA Test
## LMS Technologies, Inc.

*6423 Cecilia Circle*
*Bloomington, MN 55439*

*Tel.: (952)-918-9060*
*Fax: (952) 918-9061*

| | | | |
|---|---|---|---|
| **Test Type :** | EN1822 | **Test Requested By:** | Bursor & Fisher |
| **Test Number:** | T102623A | **Filter Mfgr:** | Levoit |
| **Flow Rate/Velocity:** | 130 cfm | **Filter ID #:** | Core 300-RAC Filter |
| **Test Aerosol:** | KCL, Neutralized | **Filter Description:** | True HEPA Filter |
| **ΔP ("H2O):** | 0.374 | **Temp and Humidity:** 72°F and 42%** | |

**Classification:** **E 11**

**Serial Number:** **B/N: 232731862332**

| Size Rang(μm) | Initial Fractional Efficiency(%) |
|---|---|
| 0.0165 | 99.625 |
| 0.0190 | 99.070 |
| 0.0221 | 98.827 |
| 0.0255 | 98.793 |
| 0.0294 | 98.776 |
| **0.0340** | **98.701** |
| 0.0392 | 98.909 |
| 0.0453 | 99.012 |
| 0.0523 | 99.144 |
| 0.0604 | 99.336 |
| 0.0698 | 99.457 |
| 0.0806 | 99.564 |
| 0.0931 | 99.682 |
| 0.1075 | 99.728 |
| 0.1241 | 99.770 |
| 0.1433 | 99.804 |
| 0.1655 | 99.794 |
| 0.1911 | 99.827 |
| 0.2207 | 99.844 |
| 0.2548 | 99.858 |
| 0.2943 | 99.841 |
| 0.3398 | 99.839 |
| 0.3924 | 99.822 |
| 0.4532 | 99.875 |
| 0.5233 | 99.846 |
| 0.6043 | 99.786 |



Efficiency at most penetrating particle size: **98.701% @ 0.0340 μm**



*TEST SUPERVISOR*
EMILE TADROS_____

*ENGINEERING APPROVAL*
K.C. KWOK, PH.D._____

**EXHIBIT D**

**FILED UNDER SEAL**