**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK CHEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>VESYNC CORPORATION,<br><br>        Defendant. | Case No. 3:23-cv-004458-TLT<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date: September 16, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9 – 19th Floor<br>Judge: Hon. Trina L. Thompson |

**REDACTED VERSION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 16, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Courtroom 9, 19th Floor in the Courtroom of Judge Trina L. Thompson, Plaintiff Rick Chen ("Plaintiff") will and hereby does move the Court for an order granting his motion to certify the Classes described herein, appoint Mr. Chen as class representative, and appoint Bursor & Fisher, P.A., and Sinderbrand Law Group, P.C. as class counsel.

This motion is made on the grounds that Plaintiff has met each requirement of Rules 23(a) and 23(b)(3). This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all supporting declarations and exhibits, the pleadings and papers on file, and upon such matters as may be presented to the Court at the time of the hearing.

**CIVIL LOCAL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should appoint Plaintiff as the class representative, appoint Bursor & Fisher, P.A. and Sinderbrand Law Group, P.C. as class counsel, and certify the following Classes:

> **All persons in California who, within the relevant statute of limitations period, purchased one or more Levoit Core 300 True HEPA, Core 300-RAC True HEPA, Core P350 True HEPA, and Core 300S True HEPA home air purifiers or replacement filters bearing the "True HEPA" claim (the "California Class"); and**

> **All persons in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia who, within the relevant statute of limitations period, purchased one or more Levoit Core 300 True HEPA, Core 300-RAC True HEPA, Core P350 True HEPA, and Core 300S True HEPA home air purifiers or replacement filters bearing the "True HEPA" claim (the "Multi-State Express Warranty Class").**

Dated: May 2, 2025        **BURSOR & FISHER, P.A**.

                      By: ___*/s/ Luke W. Sironski-White*___
                             Luke W. Sironski-White

                      L. Timothy Fisher (State Bar No. 191626)
                      Luke Sironski-White (State Bar No. 348441)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman
Janine L. Pollack
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (917) 983-2707
Fax: (888) 421-4173
Email : lfeldman@4-justice.com
Email: jpollack@4-justice.com
Email : Eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George
Brittany Sackrin
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BSackrin@4-justice.com
Email: EService@4-justice.com

**TAUS, CEBULASH & LANDAU, LLP**
Miles Greaves
Archana Tamoshunas
123 William Street
Suite 1900a
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
mgreaves@tcllaw.com
atamoshunas@tcllaw.com

**MIGLIACCIO AND RATHOD LLP**
Jason Samual Rathod
Nicholas A. Migliaccio
412 H Street N.E.
Washington, DC 20002
(202) 470-3520
jrathod@classlawdc.com

nmigliaccio@classlawdc.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PAGE(S)

I.  INTRODUCTION .................................................................................................. 1

II. STATEMENT OF COMMON EVIDENCE ....................................................... 3

    A.   Background on HEPA ................................................................................ 3

    B.   Defendant's Common Claims ................................................................... 4

    C.   Common Evidence Shows That The Air Purifiers' Filters Are Not
         HEPA-Grade Under Any Of The Internationally Recognized
         Governing Standards ................................................................................ 6

    D.   The True HEPA Claim Is Material To Consumers ................................. 9

    E.   Class-Wide Relief Can Be Proven On A Common Basis ..................... 10

III. ARGUMENT ....................................................................................................... 12

    A.   Each Of Rule 23(a)'s Requirements Are Satisfied .............................. 12

         1.   The Numerosity Requirement Is Satisfied ................................ 12

         2.   The Commonality Requirement Is Satisfied ............................. 12

         3.   The Typicality Requirement Is Satisfied ................................... 14

         4.   The Adequacy Requirement Is Satisfied ................................... 15

    B.   The Proposed Class Satisfies Rule 23(b)(3) ........................................ 16

         1.   Common Questions Of Law And Fact Predominate ................. 16

              a.   Common Questions of Fact Predominate all of
                  Plaintiff's Claims ............................................................ 16

              b.   Common Questions of Law Predominate for
                  Plaintiff's Express Warranty Claims ............................. 17

              c.   Common Questions of Law Predominate Over the
                  California Consumer Protection Claims ......................... 20

              d.   Common Questions of Law Predominate As To
                  Plaintiff's Unjust-Enrichment Claims ........................... 21

              e.   Common Questions of Law Predominate Plaintiff's
                  Common Law Fraud Claims ........................................... 21

         2.   Plaintiff Presents A Viable Damages Model ............................. 22

         3.   Class Litigation Is Superior To Other Methods Of
             Adjudication .............................................................................. 23

         4.   While Not a Separate Requirement, The Class Is
             Ascertainable ............................................................................ 24

IV. CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ................................................................. 12

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) ............................................................... 12

*Alcantar v. Hobart Service*,
  2012 WL 5946129 (C.D. Cal. Nov. 28, 2012) ....................................... 13

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 23

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013) ......................................................................... 12, 17

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ...................................................... 17, 24

*Ballard v. Equifax Check Servs., Inc.*,
  186 F.R.D. 589 (E.D. Cal. 1999) ........................................................... 23

*Berrien v. New Raintree Resorts Int'l, LLC*,
  276 F.R.D. 355 (N.D. Cal. 2011) ........................................................... 15

*Blair v. Rent-A-Center, Inc.*,
  2018 WL 5728924 (N.D. Cal. Nov. 1, 2018) ......................................... 15

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................... 24

*Broomfield v. Craft Brew Alliance, Inc.*,
  2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ....................................... 21

*Brown v. Hain Celestial Grp., Inc.*,
  2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ....................................... 11

*Bruno v. Quten Rsch. Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ........................................................... 14

*Burton v. Gerber Prod. Co.*,
  703 F. App'x 468 (9th Cir. 2017) ........................................................... 24

*Cameron v. E.M. Adams & Co.*,
  547 F.2d 473 (9th Cir. 1976) ................................................................. 17

*Cartwright v. Viking Indus., Inc.*,
  2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ........................................................... 21

*Chavez v. Blue Sky Natural Beverages Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010) ........................................................................... 11

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Trust v. RH, Inc.*,
  2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) .......................................................... 11

*Clevenger v. Welch Foods Inc.*,
  342 F.R.D. 446 (C.D. Cal. 2022) ........................................................................... 14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................................. 10

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) .............................................................................. 23

*Delarosa v. Boiron, Inc.*,
  275 F.R.D. 582 (C.D. Cal. 2011) ........................................................................... 13

*Dyson, Inc. v. Bissell Homecare, Inc.*,
  951 F. Supp. 2d 1009 (N.D. Ill. 2013) ............................................................... 9, 10

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................ 15

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal. 4th 951 (1997) ......................................................................................... 21

*Forcellati v. Hylands, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .................................................. 13, 14, 16

*Gafcon, Inc. v. Ponsor & Assocs.*,
  98 Cal. App. 4th 1388 (2002) ................................................................................ 20

*Galvan v. KDI Distribuation Inc.*,
  2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ...................................................... 15, 24

*Gonzalez v. United States Immigr. & Customs,*
  *En't*, 975 F.3d 788 (9th Cir. 2020) ........................................................................ 14

*Guido v. L'Oreal, USA, Inc.*,
  2013 WL 3353857 (C.D. Cal. July 1, 2013) ............................................................ 24

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 13, 16, 19, 23

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................ 14

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) .................................................. 19

*Hawkins v. S2Verify*,
  2016 WL 3999458 (N.D. Cal. July 26, 2016) ................................................ 12

*Hilsley v. Ocean Spray Cranberries Inc.*,
  2018 WL 6300479 (S.D. Cal Nov. 29, 2018) ................................................ 13

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ............................................................... 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5429718 (N.D. Cal. June 20, 2013) .............................................. 11

*In re Diamond Foods, Inc., Sec. Litig.*,
  295 F.R.D. 240 (N.D. Cal. 2013) ............................................................... 11

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .................................................................... 21

*In re High-Tech Employee Antitrust Litig.*,
  289 F.R.D. ........................................................................................... 11

*In re Korean Ramen Antitrust Litig.*,
  2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ................................................ 17

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...................................................... 15

*In re Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .............................................. 22

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009) ............................................................................. 20

*Jacobo v. Ross Stores, Inc.*,
  2017 WL 9486150 (C.D. Cal. May 1, 2017) ................................................ 25

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) .................................................................. 10

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012) ............................................................... 14

*Johnson v. Gen. Mills, Inc.*,
  275 F.R.D. 282 (C.D. Cal. 2011) ............................................................... 24

*Joint Equity Comm. of Inv'rs. of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*,
  281 F.R.D. 422 (C.D. Cal. 2012) ............................................................... 22

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ............................................................................. 22, 24

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
  2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ............................................................ 22

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ..................................................................................................... 20

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (1996) ..................................................................................................... 21

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ..................................................................................... 10, 11

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) .................................................................................. 11

*Lytle v. Nutramax Lab'ys, Inc.*,
  2022 WL 1600047 (C.D. Cal. May 6, 2022) ................................................................ 22

*Martinelli v. Johnson & Johnson*,
  2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ........................................................ 19, 22

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
  97 Cal. App. 4th 1282 (2002) ....................................................................................... 20

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ......................................................................... 17, 18, 19

*McCrary v. Elations Co., LLC*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) .............................................................. 13

*Melgar v. Zicam LLC*,
  2014 WL 5486676 (E.D. Cal. Oct. 29, 2014) .............................................................. 16

*Melgar v. Zicam LLC*,
  2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ............................................................. 19

*Milan v. Clif Bar & Co.*,
  340 F.R.D. 591 (N.D. Cal. 2021) .................................................................................. 17

*Motors, Inc. v. Times Mirror Co.*,
  102 Cal. App. 3d 735 (1980) ......................................................................................... 20

*Mullins v. Premier Nutrition Corp.*,
  2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ............................................................. 24

*Odyssey Wireless, Inc. v. Apple, Inc.*,
  2016 WL 7644790 (S.D. Cal. Sept. 14, 2016) ............................................................ 22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
   31 F.4th 651 (9th Cir. 2022) .................................................................................. 13

*Otto v. Abbott Lab'ys Inc.,*
   2015 WL 9698992 (C.D. Cal. Sept. 29, 2015) .......................................................... 25

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) .......................................................................................... 17

*Prescott v. Reckitt Benckiser LLC,*
   2022 WL 3018145 (N.D. Cal. July 14, 2022) .......................................................... 13

*Pulaksi & Middleman, LLC v. Google, Inc.,*
   802 F.3d 979 (9th Cir. 2015) ............................................................................... 22

*Rush v. Nutrex Research, Inc.,*
   2012 WL 2196144 (N.D. Cal. June 13, 2012) ........................................................ 20

*Schmitt v. Younique, LLC,*
   2019 WL 1431906 (C.D. Cal. Jan. 10, 2019) .................................................. 22, 24

*Schneider v. Chipotle Mexican Grill, Inc.,*
   328 F.R.D. 520 (N.D. Cal. 2018) ......................................................................... 15

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft,*
   2023 WL 3569981 (N.D. Cal. May 19, 2023) ........................................................ 12

*Sidibe v. Sutter Health,*
   333 F.R.D. 463 (N.D. Cal. 2019) ......................................................................... 12

*Smith v. Cardinal Logistics Mgmt. Corp.,*
   2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ........................................................ 17

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) ............................................................................. 20

*Steroid Hormone Prod. Cases,*
   181 Cal. App. 4th 145 (2010) .............................................................................. 20

*Testone v. Barlean's Organic Oils, LLC,*
   2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ....................................................... 15

*Thurston v. Bear Naked, Inc.,*
   2013 WL 5664985 (S.D. Cal. Jul. 30, 2013) ......................................................... 24

*True Health Chiropractic, Inc. v. McKesson Corp.,*
   896 F.3d 923 (9th Cir. 2018) ............................................................................... 24

*Velazquez v. GMAC Mortg. Corp.,*
   605 F. Supp. 2d 1049 (C.D. Cal. 2008) ................................................................. 20

*Walker v. Life Ins. Co. of the Sw.*,
   953 F.3d 624 (9th Cir. 2020) ............................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................ 13

*Wash. Mut. Bank, FA v. Superior Ct.*,
   24 Cal. 4th 906 (2001) ................................................................... 18, 19

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) ........................................................... 18

*Williams v. Gerber Prods. Co.*,
   552 F.3d, 934 (9th Cir. 2008) ............................................................. 20

*Young v. Neurobrands, LLC*,
   2020 WL 11762212 (N.D. Cal. Oct. 15, 2020) .................................... 13

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................ 12

**STATUTES**

Cal. Bus. & Prof. Code § 17203 ............................................................... 22

Cal. Civ. Code § 1770 .............................................................................. 20

Cal.  Civ. Code § 1780 ............................................................................. 22

Cal.  Civ. Code § 1791.1(d) ..................................................................... 22

Cal.  Civ. Code § 1794(b)(2) .................................................................... 22

**RULES**

Fed. R. Civ. P. 23 ............................................................................. passim

## I.    INTRODUCTION

On March 11, 2020, the World Health Organization formally declared COVID-19 a global pandemic.  The virus spread by air and was highly contagious.  To combat transmission, the public was instructed—and often required—to wear masks whenever venturing outside of their "COVID bubble."  The masks themselves were a constant reminder of the potential danger that lurked around us, and consumers had never been more concerned with air quality and how to protect themselves from the virus.  Inevitably, public discussion[1] turned to air purifiers with HEPA filters, which are a class of air filter governed by rigorous industry standards and subject to exacting performance requirements.  *See* Declaration of Dr. R. Vijayakumar in support of Plaintiff's Motion for Class Certification, Exhibit A to ECF No. 111 ("Vijayakumar Decl.") ¶ 4.  Because of their exceptional air-purification capabilities, Google searches for HEPA filters **(Figure 1** below**)** spiked right as the pandemic was declared, hitting an all-time high in March of 2020.



**Figure 1**

Air-purifier manufacturers were quick to take note of the explosion in consumer demand for HEPA filters, and the growth opportunity it presented.  Defendant Vesync Corporation (d/b/a Levoit) ("Defendant" or "Levoit") was one of those manufacturers, with its Core 300 True HEPA, Core 300-RAC True HEPA, Core P350 True HEPA, and Core 300S True HEPA home air purifiers (collectively, the Air Purifiers or Products) and replacement filters.[2]  Third Amended Complaint, ECF No. 100 ("TAC") ¶ 1.  Defendant advertised the Air Purifiers and replacement filters as "True HEPA" next to the model names, and plastered the phrase throughout its marketing, including on

---

[1] *See, e.g.,* https://www.today.com/health/should-i-buy-air-purifier-experts-discuss-t238408

[2] The Air Purifiers are substantially similar in that they use the same replacement filters, and Defendant holds out its testing of one model as representative of other models' performance.

its packaging and online (the "True HEPA Claims").  Levoit also made sure to let consumers know that each of its air purifiers offered "3-Stage H13 True HEPA Filtration" and "air purification you can trust."[3]

The gambit worked: as the air-purifier market exploded, Levoit rode the wave and nearly tripled its Air Purifier and replacement-filter sales from about 340,000 units in 2019 to 912,000 units and $95 million in 2020, according to its publicly available financial reports.  2021 represented yet another banner year, with Levoit's revenue jumping to over $246 million. Defendant's success can be attributed, overwhelmingly, to the pandemic and consumer fear, which Defendant exploited to boost sales of its Air Purifiers and replacement filters.  Defendant did this by exploiting consumer demand for HEPA air purifiers and making "True HEPA" the centerpiece of its Air Purifier marketing.

The truth is, however, that Defendant was selling a lie.  Its Air Purifiers were not equipped with HEPA-grade filters, and ██████████████████████████████████████ ██████████████████████  Yet, it was not until its competitor Dyson, Inc., ("Dyson") independently tested the Air Purifiers and challenged Defendant's marketing in 2023 through the National Advertising Division of the Better Business Bureau ("NAD") that the truth was publicly revealed. After the NAD report was published, Plaintiff had Defendant's Air Purifiers tested and found similarly failing results.  Accordingly, Defendant's True HEPA Claims were false and materially misleading.

Based on Levoit's false True HEPA Claims, Plaintiff Rick Chen and the class members he seeks to represent bought the Air Purifiers at a premium price.  Thus, Plaintiff seeks certification of the following Classes:

> All persons in California who, within the relevant statute of limitations period, purchased one or more Levoit Core 300 True HEPA, Core 300-RAC True HEPA, Core P350 True HEPA, and Core 300S True HEPA home air purifiers or replacement filters bearing the "True HEPA" claim (the "California Class"); and

> All persons in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia who, within the relevant statute of limitations

---

[3] https://web.archive.org/web/20211129124529/https://www.amazon.com/LEVOIT-Core-300S-Air-Purifier/dp/B08L73QL1V

period, purchased one or more Levoit Core 300 True HEPA, Core 300-RAC True HEPA, Core P350 True HEPA, and Core 300S True HEPA home air purifiers or replacement filters bearing the "True HEPA" claim (the "Multi-State Express Warranty Class").

As detailed below, Plaintiff has met each requirement of Rule 23(a) and Rule 23(b), and this Court should grant class certification.

## II.    STATEMENT OF COMMON EVIDENCE

### A.    Background on HEPA

HEPA is an acronym that stands for High Efficiency Particulate Air and is a filtration-efficiency standard for air filters. Vijayakumar Decl. ¶ 4. According to the Centers for Disease Control and Prevention, HEPA filters "are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing."[4] TAC ¶ 25. HEPA filters are so efficient, in fact, that they are regularly employed in hospitals,[5] laboratories,[6] and nuclear facilities[7] — places where clean air can be a matter of life and death.

Because HEPA filters were developed to be used and relied upon in such critical contexts, they are held to exacting standards. In the United States, the Institute of Environmental Sciences and Technology's ("IEST") standards are "recognized and used by government agencies … as well as industries for specifying, defining, and using HEPA filters." Vijayakumar Decl. ¶ 16. The current IEST standard is IEST-RP-CC001.7 (previously CC001.6) and sets forth the test methods and performance metrics required of a filter to be classified as "HEPA." *Id.* ¶ 12. This standard — along with the European and ISO standards — comprise the three "internationally recognized standards" that exclusively govern HEPA classification (collectively, the "Industry Standards"). *Id.* ¶ 11. Thus, "for a filter to be classified, labeled and marketed as HEPA, it **must** meet the technical and performance requirements established by at least one of" the Industry Standards. *Id.* (emphasis

---

[4] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your Home, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilationhome (last accessed September 3, 2024).

[5] AMERICAN SOCIETY FOR HEALTH CARE ENGINEERING, Air Filtration in Hospitals, https://www.ashe.org/compliance/ec_02_05_01/01/airfiltration (last accessed April 26, 2025).

[6] *Id.*

[7] Vijayakumar Decl. ¶ 16 n.1.

added).

The Industry Standards share two primary requirements: "each and every filter — whether sold individually or installed in a device for end-use — must be: 1) tested to verify minimum particle removal efficiency[8] … and 2) leak tested to ensure that there are no defects" in the filter or gaps between the filter and the purifier through which unfiltered air can escape.[9] *Id.* ¶ 13.  As Dr. Vijayakumar notes, "[t]hese procedures are essential to confirm that *every filter* labelled as HEPA is tested and verified to perform" at the HEPA level.  *Id* (emphasis added).  Testing 100% of filters is a core part of the HEPA Industry Standards; it is not enough that a single filter from an air purifier product line was tested and shown to meet the HEPA standard — rather, each and every filter sold as HEPA must have been tested and verified under one of the Industry Standards.  "Without full compliance with these established Industry Standards, a filter cannot be legitimately labeled or advertised as a HEPA filter."  *Id.*

The defining attribute of a HEPA filter is superlative air purification (otherwise known as particle removal efficiency).  Plaintiff's expert Dr. R. Vijayakumar, who served as President of the IEST in 2010, explains that Particle removal efficiency describes how well a filter performs and is measured as a percentage of particles removed from the air.  Vijayakumar Decl. ¶ 14.  For a filter to qualify as HEPA under the IEST standards it must filter out **at least 99.97%** of sub-micron sized particles.[10] *Id.*  The HEPA label, and this 99.97% figure, are featured in nearly all consumer air-purifier marketing, including Defendant's.

**B.    Defendant's Common Claims**

During the relevant statutory periods (the "Class Period"), Defendant repeatedly and universally represented to consumers that its Air Purifiers came equipped with "True HEPA"

---

[8] The methodology for testing and measuring particle removal efficiency, along with the minimum filtration performance requirements, varies between the Industry Standards.  Vijayakumar Decl. ¶ 14.

[9] "Leak testing filters requires testing the filter, the seal between the filter and the filter frame, and the frame itself to ensure that no leak, blemishes, pin holes in the media, or other defects that can allow the air to bypass the filter."  Vijayakumar Decl. ¶ 15.

[10] The precise diameter ranges from 0.1 microns to 0.3 (mass median diameter) microns, depending on the test method employed.

filters. TAC. ¶¶ 38, 39; Weir Decl. ¶ 18; Fisher Decl. Ex. 1. For example, on the Core 300-RAC Air Purifier packaging, Defendant represented the following:

- "Levoit Core [] True HEPA Air Purifier"
- "H13 True HEPA Filtration"
- "3-Stage Filtration System uses a Pre-Filter [and] advanced H13 True HEPA Filter"
- "Traps at least 99.97% of airborne allergens, dust, and smoke particles"
- "H13 True HEPA Filter Filters at least 99.97% of airborne particles 0.3 microns in size"
- "The Levoit Core [] True HEPA Air Purifier takes up little space while powerfully cleansing the air in an entire room"
- Package contents: "1x True HEPA 3-Stage Original Filter"

Fisher Decl. Ex. 1.

Defendant made substantially similar representations on all other Air Purifier packaging. *Id*. Crucially, Defendant incorporated the True HEPA Claim into the Air Purifiers' names – that is, each Air Purifier was labeled and marketed as a Core "True HEPA" Air Purifier. *See* TAC ¶ 39. The same can be said for the Air Purifier replacement filters, which Defendant labeled as "True HEPA 3-Stage Replacement Filter[s]." Fisher Decl. Ex. 1. Given the ubiquity of this representation, it is clear Defendant knew the importance of the True HEPA Claim to consumers, including Plaintiff and the Classes. Indeed, on the Core 300 retail packaging (a portion of which appears as **Figure 2** below), the True HEPA Claim appears no less than five times. *Id.* Ex. 1.



**Figure 2**

The same can be said for the Air Purifiers sold on Amazon during the Class Period. *See* Fisher Decl. Ex. 2. Defendant also claimed its Air Purifiers "Do What Others Can't" with "Powerful … H13 True HEPA Filtration," delivering "Air Purification You Can Trust." *Id*. Defendant backed up its purported bona fides on its website, claiming that its Air Purifiers' "HEPA" filters adhered to the Industry Standards — as Defendant noted in a now-deleted blog post, "[t]o be considered '[] HEPA,' an air purifier must meet strict U.S. Department of Energy standards."[11] *See also* Declaration of Colin B. Weir in support of Plaintiff's Motion for Class Certification, Exhibit B to ECF No. 111 ("Weir Decl.") ¶ 17 (quoting same). Defendant was more specific with the Court, claiming that its Air Purifiers "were manufactured to meet IEST RP CC001.6 Class H and per the standard, were tested as manufactured to meet [the standard]." Defendant's Motion to Dismiss the First Amended Complaint, ECF No. 25 at 2 n.1. In truth, however, Defendant's True HEPA Claim was nothing but hot air.

**C.  Common Evidence Shows That The Air Purifiers' Filters Are Not HEPA-Grade Under Any Of The Internationally Recognized Governing Standards**

In August 2023 the National Advertising Division of the Better Business Bureau released its final decision regarding a dispute brought by Defendant's competitor, Dyson, Inc. ("Dyson"). Fisher Decl. Ex. 3. Dyson had challenged Defendant's True HEPA Claims as false and misleading, alleging that it had tested Defendant's Products and found that the filters did not qualify as HEPA under the IEST's standard. *Id*. Rather than challenge Dyson's allegations, Defendant tacitly admitted liability by agreeing to remove the True HEPA Claims from its packaging and advertisements. *Id*. In an attempt to save face, Defendant told the NAD that it made this decision for "reasons unrelated to Dyson's challenge." *Id*. But discovery in this case revealed why Defendant ultimately removed the True HEPA claims: the common evidence will show that the Products never complied with the very standards invoked by Defendant.

---

[11] Levoit website, https://web.archive.org/web/20230528024533/https://levoit.com/blog/what-is-a-true-hepa-air-purifier-and-can-you-benefit-from-one (accessed April 3, 2025). The webpage was active through at least May 28, 2023.

Dyson's testing was subpoenaed in connection with this litigation, and the results are damning — Defendant's Air Purifiers conclusively failed to meet the IEST's HEPA efficiency standard. *See* Fisher Decl. Ex. 4; *see also* Vijayakumar Decl. ¶¶ 17, 19[12].  One of Dyson's test reports is produced below, with filtration efficiency demarcated in red.

**Description of Samples: Levoit True HEPA 3-Stage Core 300-RF Filter**
Filter Dimensions: 192mm OD x 149mm L
Pleat Count: 122

Sample Source: Dyson Legal - Chicago, IL
Date Samples Received: 23 August 2022

Fluid: Air
Flow Rate: 124 SCFM
Challenge: DEHS Oil Aerosol

| SGS IBR Filter ID | Differential Pressure (kPa) | Port | Particles at: (in microns) | | | | Summed Data | |
|---|---|---|---|---|---|---|---|---|
| | | | 0.10-0.15 | 0.15-0.20 | 0.20-0.25 | 0.25-0.30 | 0.10-0.20 | 0.20-0.30 |
| 25864-6 | 0.07 | Upstream | 179884 | 198759 | 170656 | 169272 | 378643 | 339928 |
| | | Downstream | 6814 | 3968 | 2122 | 1413 | 10782 | 3535 |
| | | Efficiency_obs (%) | 96.21 | 98.00 | 98.76 | 99.17 | 97.15 | 98.96 |
| | | Efficiency_95% (%) | 96.19 | 97.99 | 98.75 | 99.16 | 97.08 | 98.92 |

**Figure 3**

Fisher Decl. Ex. 4.  As can be seen, at no point of measurement were Defendant's Air Purifiers able to achieve 99.97% filtration efficiency.  The Air Purifiers also failed to meet the IEST HEPA efficiency standard when Plaintiff's counsel had them tested between August and October of 2023. Vijayakumar Decl. ¶ 19; Fisher Decl. Ex. 5; TAC ¶¶ 58-60.  Most damning, however, is that ███████████████████████████████████ demonstrates that its Air Purifiers consistently failed to meet the IEST HEPA efficiency standard.  For example, one of ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

*See also* Vijayakumar Decl. at 6 ¶ 13 (analyzing the testing produced in this litigation).

---

[12] Due to a formatting error, Mr. Vijayakumar's declaration paragraph numbering reset to 10 after paragraph 18 on page 5.  Relevant paragraphs will be pin cited to avoid confusion.

**Figure 4**

But, as Dr. Vijayakumar makes clear in his report, testing is just one-half of the HEPA equation under the Industry Standards. Indeed, the Industry Standards require that *each and every* filter bearing the HEPA designation be tested for filtration efficiency <u>and</u> leaks. Section I.A, *supra*; Vijayakumar Decl. ¶ 13. Defendant only conducted ███████████ throughout the Class Period, none of which had the requisite leak testing. Vijayakumar Decl. ¶ 11 ("[T]he Test Reports do not establish that the [Air Purifiers] were subjected to mandatory leak testing or that 100% of the[m] were individually tested at any time."). Thus, even if every one of the tests conducted during the Class Period showed that the 99.97% filtration efficiency threshold was met (and they don't), Defendant's Air Purifiers — on the whole — would not have "met the requirements to be classified as [] HEPA" because they were not individually tested nor tested for leaks. Vijayakumar Decl. at 7 ¶ 19. Put another way, of the ████████████████████████████ ████████████████████████████████████████████ were actually

---

[13] *See* Fisher Decl. ¶ 8. This sales figure is extremely conservative, as Defendant still has not given Plaintiff all sales figures and is subject to change as discovery progresses.

tested (and universally failed) in accordance with the IEST standard that Defendant holds out as the basis for its True HEPA Claims.  Fisher Decl. Ex. 6.  Thus, the common evidence shows that at no point during the Class Period did the Air Purifiers and replacement filters qualify as HEPA under the very Industry Standards Defendant invokes, meaning that Defendant's True HEPA Claims were false and misleading.

Even if the Court were to disregard Defendant's repeated promises that its Air Purifiers adhered to Industry Standards, common evidence will show at trial that Defendant's True HEPA Claims — including its numerical claim of 99.97% removal efficiency at 0.3 microns — were provably false throughout the Class Period.  Third-party testing (Dyson), Plaintiff's independent testing, and ███████████████ demonstrate that filtration efficiencies routinely fell below the claimed 99.97% – even under Vesync's own criteria as demonstrated in **Figure 4** above.  *See* Fisher Decl. Exs. 4-6.  Thus, whether measured against the Industry Standards Defendant invoked or against Defendant's own stated specifications, the True HEPA Claims were false and misleading on a class-wide basis.

### D.     The True HEPA Claim Is Material To Consumers

The common evidence will show conclusively that the True HEPA Claim is highly material to consumers.  This contention is already supported by a multitude of facts.  For one, as discussed in the introduction, consumer interest in and desire for HEPA air purifiers is at an all-time high.  The COVID-19 pandemic and the historic wildfires this decade sparked an explosion in searches for "HEPA" and "air purifiers" on Google, indicating that consumers were actively seeking out the devices.  The truly massive jump in Air Purifier sales that Defendant enjoyed during precisely that same time period indicates that consumers were not merely curious about HEPA products, but actively purchasing them.

Indeed, a federal district court has already held it is plausible that "filtration efficiency [is] an important [material] feature to consumers."  *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1032 (N.D. Ill. 2013).  *Dyson* involved a challenge to Bissell's marketing of certain vacuum cleaners as providing "HEPA level performance" when in reality the filters in the vacuums did not perform at that level.  *Id.* at 1009.  The court found that "no reasonable trier of fact could

find other than that the [HEPA statements] were material to the consumers when deciding to purchase the [products]" because Bissell's *own* consumer studies showed that "filtration efficiency was one of the 'key features that a customer [is] interested in.'" *Id.* Indeed, Defendant appears to have conceded materiality in its own motion to dismiss the first amended complaint, stating that ***"[t]he term 'HEPA' gives assurance to consumers that their air filters have been tested in accordance with a recognized voluntary HEPA standard*."** ECF No. 25 at 4 (emphasis added).

Furthermore, Plaintiff's expert Dr. Steven Gaskin has proposed a conjoint survey that will show "whether the [True HEPA] Claim is economically material to a reasonable person." Weir Decl. ¶ 47. The survey is economically and scientifically sound and will provide common proof of the significant value that consumers attach to the True HEPA claim. Declaration of Steven P. Gaskin in Support of Class Certification, Exhibit C to ECF No. 110 ("Gaskin Decl."), at ¶ 55 ("The scientific methodology I used to design and intend to use to execute and analyze the survey in this Declaration is scientifically and economically sound, reliable, and valid. … Any price premium calculated through the conjoint analysis will be equally applicable across the Class Products for which this survey is performed.").

**E.     Class-Wide Relief Can Be Proven On A Common Basis**

According to the Ninth Circuit, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Damage calculations for individual class members do not defeat certification. *Id.* at 514-15 (interpreting *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) and concluding that the district court abused its discretion by basing "manageability concerns on the need to individually calculate damages"); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-69 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."). Additionally, according to controlling Ninth Circuit precedent, at class certification Plaintiff need only propose a valid method for calculating damages and need not perform an actual calculation of damages. *Leyva*, 716 F.3d at 514 (stating that at the class certification stage, a plaintiff need only establish that "damages could feasibly and efficiently be calculated once the common liability questions are

adjudicated" (emphasis added)); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at \*22 (N.D. Cal. June 20, 2013) ("*Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage." (citations omitted)); *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at \*19 (N.D. Cal. Nov. 18, 2014) ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide approach, not to actually calculate under that approach before liability is established."). Often, proposing a method for calculating damages "will impose only a very limited burden." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (relying on *Leyva*, 716 F.3d at 514). As such, Plaintiff's damages experts need not show that their methods will work with certainty at this time. *See City of Miami Gen. Employees' & Sanitation Employees' Ret. Trust v. RH, Inc.*, 2018 WL 4931543, at \*4 (N.D. Cal. Oct. 11, 2018) ("[T]he Ninth Circuit has held that plaintiffs are not required to prove their damages with 'exact proof' at the certification stage."); *Chavez v. Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010); *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013); *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. at 582–83.

Plaintiff's central allegation is that the True HEPA Claim is false and misleading because the Air Purifiers' filters were not HEPA under the Industry Standards. *See supra* § I. As a result, Plaintiff alleges that he and the class members paid a premium based on Defendant's misrepresentation that the Air Purifiers came equipped with HEPA filters. *See, e.g.*, TAC ¶¶ 7, 8, 10, 11, 29, 62, 66, 83, 84, 98, 107, 117. Plaintiff's measure of damages rests on the fact that a certain percentage of the price consumers paid for the Air Purifiers constituted a price premium solely attributable to the True HEPA Claim. Weir Decl. ¶¶ 12, 22, 24-46. Plaintiff's expert, Dr. Steven Gaskin, has described in detail how his proposed conjoint survey will be able to measure the price premium attributable to the True HEPA Claim. Gaskin Decl. ¶¶ 11, 12-55. Using the premium calculated by Dr. Gaskin, Plaintiff's damages expert, Mr. Colin Weir, will calculate damages with the following formula: "Total Sales of the Products x Price Premium % = Price Premium Damages." Weir Decl. ¶ 71.

## III.    ARGUMENT

"To obtain class certification, plaintiffs bear the burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b)." *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2023 WL 3569981, at *2 (N.D. Cal. May 19, 2023) (quoting *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001)). On appellate review, orders granting class certification receive "noticeably more deference" from the Ninth Circuit than orders denying certification. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013). A plaintiff need not show that he or she will prevail on the merits of the claims to certify the class. *See Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). Instead, the merits should be examined only to the extent needed to examine Rule 23's requirements. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013). As set forth below, Plaintiff satisfies each of the requirements for certification under Rules 23(a) and 23(b)(3).

### A.    Each Of Rule 23(a)'s Requirements Are Satisfied

#### 1.    The Numerosity Requirement Is Satisfied

Rule 23(a)(1) requires that a class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find the numerosity requirement satisfied when a class includes at least forty members." *Hawkins v. S2Verify*, 2016 WL 3999458, *3 (N.D. Cal. July 26, 2016); *accord*, *e.g.*, *Sidibe v. Sutter Health*, 333 F.R.D. 463, 485 (N.D. Cal. 2019) (citing cases). The requirement is also satisfied "where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large." *Id.* (internal quotation omitted). █████████████████████████████████████████████

██████████████ Fisher Decl. ¶ 8. Given California's size, the Court can reasonably conclude that sales within the state alone number in the ██████████████. Thus, the numerosity requirement is easily satisfied. The same can be said for the Multi-state Express Warranty Class States: Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginial.

#### 2.    The Commonality Requirement Is Satisfied

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

23(a)(2). "The commonality requirement is construed liberally, and the existence of some common legal and factual issues is sufficient." *Alcantar v. Hobart Service*, 2012 WL 5946129, at *2 (C.D. Cal. Nov. 28, 2012). "'All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). And "[i]n determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is ***capable*** of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) ("[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue.") (emphasis added).

Where, as here, a plaintiff challenges false and misleading product labeling, the commonality requirement is satisfied because "a determination of the truth or falsity" of the labeling "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011); *see also, e.g., Forcellati v. Hylands, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (commonality satisfied in class action challenging product labeling); *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014) (same); *Young v. Neurobrands, LLC*, 2020 WL 11762212, at *4 (N.D. Cal. Oct. 15, 2020) ("In misbranding and false advertising cases, courts routinely find that commonality has been satisfied based on the question of whether the label would be deceptive to a reasonable consumer."); *Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at *4 (N.D. Cal. July 14, 2022) (commonality exists where, as here, all class members are exposed to the same allegedly false claim); *Hilsley v. Ocean Spray Cranberries Inc.*, 2018 WL 6300479, at *4 (S.D. Cal Nov. 29, 2018) (collecting cases). This case is no different. A central issue in this case is whether the True HEPA claim on every unit of the Air Purifiers is false or misleading. Other common issues include

the amount of the price premium attributable to the True HEPA Claim and whether the True HEPA Claim is material to reasonable consumers. *See* TAC ¶ 72. That is more than sufficient to establish commonality.

### 3.   The Typicality Requirement Is Satisfied

Plaintiff satisfies the typicality requirement of Rule 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "This 'inquiry focuses on the *nature of the claim* . . . of the class representative, and not . . . the specific facts from which it arose.'" *Gonzalez v. United States Immigr. & Customs En't*, 975 F.3d 788, 809 (9th Cir. 2020) (emphasis in original) (the typicality requirement is "permissive" and requires only that the representative's claims are reasonably coextensive with those of the absent class members; they need not be substantially identical). A plaintiff who purchases products with the same or similar false and misleading labeling claims is "sufficiently similar" to other class members to satisfy the typicality requirement. *See, e.g.*, *Forcellati*, 2014 WL 1410264, at *9 (typicality met where misrepresentations spanned defendants' product line).

Here, Plaintiff's claims are typical of the proposed Classes. He read and relied on the True HEPA claim, which led him to believe that the Air Purifiers came equipped with HEPA filters, and on that basis he purchased certain Air Purifiers. Chen Decl. ¶¶ 4-5. Similarly, reasonable consumers were uniformly exposed to the True HEPA claim on the Air Purifiers' front labels at the time they purchased the products, just like Plaintiff. Fisher Decl., Ex. 1; TAC ¶ 39. Due to the uniformity of labeling and objectivity of the reasonable-consumer standard, none of Plaintiff's or the Class's claims are based on conduct unique to them or the Defendant. *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements."); *Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (a plaintiff's individualized experience with the product is irrelevant); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 456 (C.D. Cal.

2022) (holding that "the typicality requirement [wa]s satisfied" in a false labeling case because "Plaintiffs and the proposed class members suffered the same injury—namely, they overpaid [for the product] . . . ."); *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *4 (S.D. Cal. Sept. 28, 2021) ("[I]t is an error of law for a court to inquire into the motives of each individual class member at the class certification stage."). Plaintiff also seeks to recover damages under the same legal theories as the proposed Classes. If his claims are successful, he "would be entitled to the same remedies as the absent class members: damages . . . or restitution." *Galvan v. KDI Distribution Inc.*, 2011 WL 5116585 at *7 (C.D. Cal. Oct. 25, 2011). Hence, the typicality requirement is satisfied.

### 4. The Adequacy Requirement Is Satisfied

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement involves a two-prong test: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). As for the first prong, "the mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 359 (N.D. Cal. 2011). As for the second prong, "[it] imposes only a modest burden" that the plaintiffs be "familiar with the basis for the suit and their responsibilities as lead plaintiffs." *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017); *see also Blair v. Rent-A-Center, Inc.*, 2018 WL 5728924, at *3 (N.D. Cal. Nov. 1, 2018) ("[A] named plaintiff need not have a detailed understanding of the legal or factual basis of a class action suit so long as she has some minimal familiarity with the litigation."); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 538 (N.D. Cal. 2018) ("To establish adequacy lead plaintiffs need only be familiar with the basis for the suit and their responsibilities as lead plaintiffs.").

Rule 23(a)(4)'s requirements are satisfied here. Plaintiff intends to fairly and adequately represent the interests of the Classes. Chen Decl. ¶ 7. Plaintiff's individual and class claims arise from Levoit's same misconduct of falsely labeling and advertising the Air Purifiers as True HEPA.

*Id.* ¶¶ 3-5. Plaintiff seeks remedies equally applicable and beneficial to the Classes. *Id.* ¶ 7. Plaintiff has no conflicts of interest with the proposed Class and has demonstrated his adequacy through his participation thus far in litigation. *Id.* Plaintiff has performed numerous searches for any documents (such as purchase receipts and internet searches from the past five years) relevant to this action, has been actively involved in the prosecution of this matter, responded to Levoit's discovery demands, and reviewed and approved documents filed on his behalf. *Id.* ¶ 8. Plaintiff is therefore an adequate representative.

Rule 23(g) also requires that a district court appoint class counsel for any class that is certified. *See* Fed. R. Civ. P. 23(g)(1)(A). Plaintiff is represented in this case by Bursor & Fisher, P.A., and Sinderbrand Law Group, P.C., prominent law firms with extensive experience in complex and class-action litigation. *See* Fisher Decl. Ex. 7, Declaration of Greg Sinderbrand In Support Of Appointment As Class Counsel (Sinderbrand Decl."), Ex. A. Neither firm has any conflicts of interest with the Classes. Fisher Decl. ¶ 9; Sinderbrand Decl. ¶ 4. The firms intend to continue vigorously prosecuting this action. *Id.* These facts demonstrate that proposed Class Counsel will fairly and adequately represent the interests of the Classes. *See e.g., Melgar v. Zicam*, 2014 WL 5486676, at *2 (E.D. Cal. Oct. 29, 2014); *Forcellati*, 2014 WL 1410264, at *11.

### B. The Proposed Class Satisfies Rule 23(b)(3)

#### 1. Common Questions Of Law And Fact Predominate

##### a. *Common Questions of Fact Predominate all of Plaintiff's Claims*

The predominance requirement focuses on whether "'common questions present a significant aspect of the case and [whether] they can be resolved for all members of the class in a single adjudication;' if so, 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "A district court's assessment of predominance begins, of course, with the elements of the underlying cause of action." *Id.* (internal quotation omitted). "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide

proof.' . . . What the rule does require is that common questions "*predominate* over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469 (emphasis and brackets in original; citation omitted). Thus, "federal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question." *Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008); *see also Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (individualized defenses did not defeat certification because there was a "sufficient nucleus of common questions").

> b. <u>Common Questions of Law Predominate for Plaintiff's Express Warranty Claims</u>

Common questions of law also predominate with respect to Plaintiff's claim for breach of express warranty that he brings on behalf of himself and the Classes. *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 599 (N.D. Cal. 2021) ("There will be a common, objective inquiry asking whether the challenged statements created warranties that were breached, and whether the products failed to 'conform to the promises or affirmations of fact made on the container or label.'"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (finding that common issues predominated for claims of breach of express warranties on labels).

When seeking certification of a multi-state class under California law, a plaintiff bears the initial burden of showing that application of California law to the claims of the class is constitutional. *See, e.g., Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-90 (9th Cir. 2012). "Due process requires a showing of either sufficient contacts or absence of conflict between laws before one state's laws can be exported and apply to the claims of class members in other states." *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) (emphasis added). As the Supreme Court explained, "[t]here can be no injury in applying [forum] law if it is not in conflict with that of any other jurisdiction connected to this suit." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985). As discussed below, since the express-warranty laws of the states in the Multi-State Express Warranty Class are materially similar to California's, application of California express-warranty law is appropriate.

"California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 921 (2001)).  California uses a three-step government-interest test to resolve choice-of-law questions:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

> Second, *if there is a difference*, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

> Third, *if the court finds that there is a true conflict*, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* (emphasis added).  "The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem.  . . .  Indeed, *if the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable to class claims*." *Wash. Mut. Bank*, 24 Cal. 4th at 919-20 (emphasis added).

Here, a claim for breach of express warranty under California law, which governs Plaintiff's claims in the first instance, requires proof that "(1) the seller's statements constitute an affirmation of fact or promise . . .; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks omitted); *see also id.* (noting a "presumption that the seller's affirmations go to the basis of the bargain" and reversing order decertifying breach of express warranty class).  Reliance is not an element of express warranty claims under California law.  *Id.* (reversing order decertifying breach of express warranty class and noting that the UCC does not require proof of reliance on specific promises made by the seller).  This claim is therefore susceptible to common proofs described above.  *See supra* §§ I-II.

As there are no conflicts in the laws of the states within the Multi-State Express Warranty

Class, certifying this class does not pose any new or novel legal issues. In fact, courts across the country have certified similar multi-state express warranty Classes in numerous cases. *See, e.g., Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *10 (E.D. Cal. Mar. 29, 2019) (certifying multi-state warranty class, in a case brought by Bursor & Fisher); *Hart v. BHH, LLC*, 2017 WL 2912519, at *9 (S.D.N.Y. July 7, 2017) (same); *Melgar v. Zicam LLC*, 2016 WL 1267870, at *11 (E.D. Cal. Mar. 31, 2016) (same). Additionally, class-wide damages for the California and Multi-State Express Warranty Class can be tied to Plaintiff's theory of liability such that "a common nucleus of potential legal remedies dominates this litigation." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998); *supra* § II.C. (showing compliance with *Comcast*).

That said, Plaintiff has identified just two material differences in the breach-of-express-warranty law in certain other jurisdictions excluded from the Multi-State Class, where purchasers of the Air Purifiers may reside – vertical privity and reliance. However, no actual conflict exists between the express warranty jurisdictions included in the Multi-State Class because the law on vertical privity and reliance is identical for purposes of this case. *See* Fisher Decl. Ex. 8. Indeed, the showing is the same for all states that do not require vertical privity for economic damages and that permit a presumption of reliance. *See id.* An actual conflict only exists where the variations make a difference in the instant litigation. *See Mazza*, 666 F.3d at 590. Since the laws of California and these states are "identical" for purposes of this litigation, "there is no problem and the trial court may find California law applicable to class claims." *Wash. Mut. Bank*, 24 Cal. 4th at 919-20. Therefore, application of California law to the Multi-State Express Warranty Class is appropriate. *See, e.g., Martinelli*, 2019 WL 1429653, at *10 (certifying multi-state express warranty class of "Benecol purchasers . . . in California, . . . Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia"); *Melgar*, 2016 WL 1267870 (certifying multi-state express warranty class of "[p]urchasers who bought RapidMelts Original, RapidMelts Ultra, Oral Mist, Ultra Crystals, Liqui-Lozenges, Lozenges Ultra, and Chewables . . . after February 15, 2011 in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia and West Virginia").

*c.*    *Common Questions of Law Predominate Over the*
*California Consumer Protection Claims*

Common questions of law also predominate with respect to Plaintiff's CLRA, UCL, and FAL claims brought on behalf of himself and the other California class members. The CLRA makes it unlawful to use "unfair methods of competition and unfair or deceptive acts or practices" in the sale of goods or services to a consumer. Cal. Civ. Code § 1770. Under the CLRA, while individual reliance by Plaintiff is required, reliance may be inferred as to the entire class if the representations were objectively material. *See Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010); *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002). Evidence of the materiality of the True HEPA Claim is manifest. *See supra* § II.D; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332–33 (2011).

Under the "fraudulent" prong of the UCL and FAL, Plaintiff must demonstrate his individual reliance on Defendant's labeling claims resulted in injury in fact, *In re Tobacco II Cases*, 46 Cal.4th 298, 325-27 (2009), and show that "members of the public are likely to be deceived" by Defendant's misrepresentations, which is an objective test subject to common proof. *See Williams v. Gerber Prods. Co.*, 552 F.3d, 934, 938 (9th Cir. 2008). For class members, relief "is available without individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *Tobacco II*, 46 Cal. 4th at 320). Plaintiff can prove that he relied on Levoit's false and misleading representations and that those representations were objectively material to the Classes. *See Chen Decl. ¶¶ 4-5; supra* § II.D.

Under the "unfair" prong of the UCL, "[t]he court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n. 15 (2002) (same). Under the "unlawful prong," unlawful business acts include "any practices forbidden by law," which includes Defendant's breach of express warranties and violation of the CLRA. *See Rush v. Nutrex Research, Inc.*, 2012 WL 2196144, at *8 (N.D. Cal. June 13, 2012); *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

Here, again, these are inquiries common to all California Class members. The harm resulting from the purchase of the misrepresented products is not unique to Plaintiff.

> ### d. Common Questions of Law Predominate As To Plaintiff's Unjust-Enrichment Claims

Common questions of law also predominate with respect to Plaintiff's claims for unjust enrichment that he brings on behalf of himself and the California Class. To prevail on a claim for unjust enrichment under California law, "a plaintiff must demonstrate a defendant's (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *Cartwright v. Viking Indus., Inc.*, 2009 WL 2982887, at *13 (E.D. Cal. Sept. 14, 2009). Class certification of unjust enrichment claims is appropriate where, as here, "the crux of plaintiffs' claims is that defendant unjustly retained the benefits of its sale of . . . products to consumers after it failed to disclose material facts about the defective nature of those products.'" *Id.* (certifying California unjust enrichment claim).

> ### e. Common Questions of Law Predominate Plaintiff's Common Law Fraud Claims

The elements of a California common law fraud claim are: (1) a misrepresentation (*e.g.*, false representation, concealment, or nondisclosure), (2) speaker's knowledge of falsity (*i.e.*, scienter), (3) intent to defraud or induce reliance, (4) justifiable reliance, and (5) resulting damage. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "[A] presumption, or at least an inference of reliance arises wherever there is a showing that a misrepresentation was material." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997), as modified (July 30, 1997). The analysis of common law fraud claims is similar to that undertaken for UCL and FAL claims. *See Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519, at *12–*13 (N.D. Cal. Sept. 25, 2018) (applying UCL and FAL analysis to common law fraud claims and collecting similar cases).

With respect to Plaintiff's California common law fraud claim, the Ninth Circuit has made clear that the predominance requirement is met where, as here, common law fraud claims are based on uniform representations made to all class members. *See, e.g., In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) ("This court has followed an approach that favors class treatment of

fraud claims stemming from a "common course of conduct"); *Joint Equity Comm. of Inv'rs. of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 429-434 (C.D. Cal. 2012). In such situations, purported individualized issues regarding reliance, causation, or damages do not defeat certification. *See Joint Equity*, 281 F.R.D. at 429-34 (certifying class where sales brochures were "sufficiently similar to justify an inference of class-wide reliance").

## 2. Plaintiff Presents A Viable Damages Model

Predominance requires Plaintiff to "present a damages model that demonstrates that damages can be reliably calculated on a class-wide basis." *Schmitt v. Younique, LLC*, 2019 WL 1431906, at *8 (C.D. Cal. Jan. 10, 2019). "At the class certification stage, 'Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability.'" *Id.* (quoting *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017)).

If Plaintiff prevails on liability, he will be entitled to damages (under the CLRA, fraud, and express warranty claims) and restitution (under the UCL, FAL, and unjust enrichment claims). *See* Cal. Civ. Code §§ 1780, 1791.1(d), 1794(b)(2); Cal. Bus. & Prof. Code § 17203. Under either remedy, class members' recovery would be calculated by subtracting the actual value of the product at the time of purchase from the price paid. *See Pulaksi & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). "The calculation need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase." *Id.*

"District courts have recognized conjoint analysis as 'a generally accepted method for valuing the individual characteristics of a product,' and have certified Classes where plaintiffs used conjoint analysis." *Martinelli*, 2019 WL 1429653, at *4 (citing *Odyssey Wireless, Inc. v. Apple, Inc.*, 2016 WL 7644790, at *2 (S.D. Cal. Sept. 14, 2016), and *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)); *see also Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *6 (C.D. Cal. Sept. 23, 2020) ("Conjoint analysis has been used for decades as a way of estimating the market's willing[n]ess to pay for various product features." (internal quotations omitted)); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 370 (N.D. Cal. 2018) ("[C]onjoint analysis is a well-accepted economic methodology[.]"); *Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at *17 (C.D. Cal. May 6, 2022) ("Conjoint surveys, like

the one proposed by plaintiffs' expert, are a well-established method for measuring class-wide

damages in . . . mislabeling cases."). The damages model developed by Plaintiff's experts Gaskin

and Weir is described more fully in Section II.C. above, and in their previously filed declarations.

*See* Gaskin Decl. ¶¶ 51-54; Weir Decl. ¶¶ 24-36; 64-72. These conjoint analysis models show that

damages can be reliably calculated on a class-wide basis under the foregoing authorities.

### 3. Class Litigation Is Superior To Other Methods Of Adjudication

In addition to predominance, Rule 23(b)(3) looks to whether a class action is superior to

other available methods for a fair and efficient adjudication. *See* Fed. R. Civ. P. 23(b)(3).

Relevant factors include: "(1) the class members' interest in prosecuting their actions individually;

(2) the extent and nature of pre-existing litigation by class members concerning the controversy;

(3) the desirability of concentrating the litigation in this particular forum; and (4) the difficulties in

managing the class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). Absent a class action most class

members in this case will not recover at all. *See, e.g., Culinary/Bartender Trust Fund v. Las Vegas

Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some –

perhaps most – will be unable to proceed as individuals because of the disparity between their

litigation costs and what they hope to recover."). As explained by the Ninth Circuit:

> [The superiority] [d]etermination necessarily involves a
> comparative evaluation of the alternative mechanisms of dispute
> resolution. In this instance, the alternative methods of resolution are
> individual claims for a small amount of consequential damages . . .
> . Litigation costs would dwarf potential recovery. In this sense, the
> proposed class action is paradigmatic. A fair examination of
> alternatives can only result in the apodictic conclusion that class
> action is clearly the preferred procedure in this case.

*Hanlon*, 150 F.3d at 1023. Similarly, the Supreme Court emphasized that the policy "at the very

core of the class action mechanism is to overcome the problem that small recoveries do not provide

the incentive" for individuals to bring claims. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617

(1997). Further, "[c]lass action certifications to enforce compliance with consumer protection laws

are desirable and should be encouraged." *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589,

600 (E.D. Cal. 1999).

Here, the average price for the Air Purifiers was around $100. Such a small dollar amount does not provide an incentive for consumers to bring individual claims. *See Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) (cases "'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution"); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *17 (C.D. Cal. July 1, 2013) ("[G]iven that Serum sells for less than $10.00 per bottle, there is no realistic alternative to a class action." (quotations omitted)). A class action is superior because it would not otherwise be economically feasible to obtain relief for each class member given the small size of each class member's claim. The only alternative is no recovery. *See, e.g., Mullins*, 2016 WL 1535057, at *8 (finding superiority where "individual suits for small recovery amounts would overwhelm the courts and prove uneconomic for potential litigants"); *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *11 (S.D. Cal. Jul. 30, 2013); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 289-90 (C.D. Cal. 2011); *Astiana*, 291 F.R.D. at 506–07.

### 4. While Not a Separate Requirement, The Class Is Ascertainable

The predominance requirement requires Plaintiff to "present a damages model that demonstrates that damages can be reliably calculated on a class-wide basis." *Schmitt*, 2019 WL 1431906, at *8. "At the class certification stage, 'Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability.'" *Id.* (quoting *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017)).

Some courts have held that "ascertainability" is an implied requirement for certification. *See, e.g., Galvan*, 2011 WL 5116585, at *3. In a series of later decisions, however, the Ninth Circuit held that there is no such requirement and that it is reversible error to deny certification on that basis. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018) ("[T]here is no free-standing requirement above and beyond the requirements specifically articulated in Rule 23."); *Burton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("The district court erred when it held that the class could not be certified because it was not 'ascertainable.'"); *accord Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

Nonetheless, even if ascertainability remains a requirement, it is satisfied here because the class definition includes an objective way to ascertain membership: a person is a class member if he or she bought one or more of the Air Purifiers or replacement filters during the class period. That simple definition allows class members to self-identify themselves. *See Jacobo v. Ross Stores, Inc.*, 2017 WL 9486150, at *5 (C.D. Cal. May 1, 2017) ("[T]he proposed class is administratively feasible because class members can self-identify."); *see also Otto v. Abbott Lab'ys Inc.*, 2015 WL 9698992, at *2 (C.D. Cal. Sept. 29, 2015) ("[A] class is usually ascertainable because putative class members can self-identify based on whether they purchased the product – a simple, objective criterion for identifying class membership.").

## IV. CONCLUSION

For the reasons stated above, Plaintiff respectfully asks the Court to certify the Classes described herein, appoint him as class representative, and appoint Bursor & Fisher, P.A. and Sinderbrand Law Group, P.C. as class counsel.


Dated: May 2, 2025

**BURSOR & FISHER, P.A**.

By:   */s/ Luke W. Sironski-White*
        Luke W. Sironski-White

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman
Janine L. Pollack
745 Fifth Avenue, Suite 500
New York, NY 10151

Phone:  (917) 983-2707
Fax: (888) 421-4173
Email : lfeldman@4-justice.com
Email: jpollack@4-justice.com
Email : Eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George
Brittany Sackrin
9897 Lake Worth Road, Suite 302
Lake Worth, Florida  33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BSackrin@4-justice.com
Email: EService@4-justice.com

**TAUS, CEBULASH & LANDAU, LLP**
Miles Greaves
Archana Tamoshunas
123 William Street
Suite 1900a
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
mgreaves@tcllaw.com
atamoshunas@tcllaw.com

**MIGLIACCIO AND RATHOD LLP**
Jason Samual Rathod
Nicholas A. Migliaccio
412 H Street N.E.
Washington, DC 20002
(202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Attorneys for Plaintiff and the Putative Class*