**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICK CHEN, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>VESYNC CORPORATION,<br><br>                      Defendant. | Case No. 3:23-cv-004458-TLT<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**<br><br>Date: September 16, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9 – 19th Floor<br>Judge: Hon. Trina L. Thompson |

**REDACTED VERSION**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I. THE MULTI-STATE EXPRESS WARRANTY CLASS SHOULD BE CERTIFIED ..............................................................................................................1

    A. Defendant Fails to Identify Any Conflict That Would Change the Outcome Under Applicable State Law .......................................................1

II. PLAINTIFF HAS SHOWN THAT MATERIALITY AND RELIANCE ARE COMMON QUESTIONS SUSCEPTIBLE TO COMMON PROOF ..........................3

    A. Plaintiff Has Offered Common Evidence of Materiality ..........................3

III. INDIVIDUALIZED INQUIRIES DO NOT PREDOMINATE BECAUSE WHETHER THE "TRUE HEPA" CLAIM WAS MISLEADING IS A COMMON QUESTION ..................................................................................................6

    A. Plaintiff Is Not Required to Establish a Uniform Understanding of HEPA ............................................................................................................6

    B. Whether the Products Were Mislabeled as "True HEPA" Is a Common Question That Can Be Answered With Common Proof .............8

IV. PLAINTIFF HAS PRESENTED A VIABLE DAMAGES MODEL ................................11

V. THE REPLACEMENT FILTERS ARE NOT EXCLUDED FROM THE PUTATIVE CLASSES ......................................................................................................13

VI. PLAINTIFF IS AN ADEQUATE PROPOSED CLASS REPRESENTATIVE ..................................................................................................13

VII. DEFENDANT'S ARBITRATION CONCERNS ARE EASILY HANDLED ....................14

CONCLUSION ..................................................................................................................15

| | | |
|---|---|---|
| 1 | **TABLE OF AUTHORITIES** | **PAGE(S)** |
| 2 | | |
| 3 | **CASES** | |
| 4 | *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013) | 4 |
| 5 | | |
| 6 | *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) | 3 |
| 7 | *Banh v. American Honda Motor Co., Inc.*, 2020 WL 4390371 (C.D. Cal. July 28, 2020) | 3 |
| 8 | | |
| 9 | *Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) | 3 |
| 10 | *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) | 6 |
| 11 | | |
| 12 | *Coleman v. Bos. Sci. Corp.*, 2011 WL 381173 (E.D. Cal. 2011) | 1 |
| 13 | | |
| 14 | *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) | 3 |
| 15 | *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009 (N.D. Ill. 2013) | 5 |
| 16 | | |
| 17 | *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018) | 7, 9 |
| 18 | | |
| 19 | *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052 (C.D. Cal. Apr. 4, 2023) | 7 |
| 20 | *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) | 11, 12 |
| 21 | | |
| 22 | *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) | 13 |
| 23 | | |
| 24 | *In re JUUL Labs, Inc.*, 2022 WL 2343268 (N.D. Cal. June 28, 2022) | 6, 7 |
| 25 | *In re MyFord Touch Consumer Litig.*, 46 F.Supp.3d 936 (N.D. Cal. 2014) | 2 |
| 26 | | |
| 27 | *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050 (C.D. Cal. 2015) | 9 |
| 28 | | |

*Johnson v. Nissan N. Am., Inc.*,
 2022 WL 2869528 (N.D. Cal. July 21, 2022) .................................................................. 11

*Lytle v. Nutramax Lab'ys, Inc.*,
 2022 WL 1600047 (C.D. Cal. May 6, 2022) ..................................................................... 7

*Martinelli v. Johnson & Johnson*,
 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ......................................................... 2, 3, 12

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
 97 Cal. App. 4th 1282 (2002) ........................................................................................... 6

*Mazza v. American Honda Motor Co.*,
 666 F.3d 581 (2012) .......................................................................................................... 1

*McMorrow v. Mondelez Int'l, Inc.*,
 2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ....................................................................... 7

*Melgar v. Zicam, LLC*,
 2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ................................................................... 2

*Pettit v. Procter & Gamble Co.*,
 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) .................................................................... 7

*Pulaski & Middleman, LLC v. Google, Inc.*,
 802 F.3d 979 (9th Cir. 2015) .......................................................................................... 12

*Quatela v. Stryker Corp.*,
 820 F. Supp. 2d 1045 (N.D. Cal. 2010) ............................................................................ 2

*Red v. Kraft Foods, Inc.*,
 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ................................................................ 12

*Sinatro v. Barilla Am., Inc.*,
 2024 WL 2750018 (N.D. Cal. May 28, 2024) ................................................................... 3

*Steroid Hormone Prod. Cases*,
 181 Cal. App. 4th 145 (2010) ........................................................................................... 6

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
 308 F.R.D. 630 (N.D. Cal. 2015) ...................................................................................... 3

*Testone v. Barlean's Organic Oils, LLC*,
 2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) .................................................................. 4

*Weiner v. Snapple Beverage Corp.*,
 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) .................................................................. 12

*Willis v. Colgate Palmolive Co.*,
 2023 WL 11915708 (C.D. Cal. Jan. 5, 2023) .................................................................... 6

**INTRODUCTION**

Defendant's opposition (ECF No. 143) ("Opp.") fails to undermine Plaintiff's showing that the requirements of Rule 23 are satisfied. Common evidence—including Defendant's own documents, uniform product labeling, expert analyses, and internal consumer surveys—confirms that the central questions in this case are capable of resolution on a classwide basis. Defendant's scattered objections—many of which rely on misstatements of law or the evidentiary record, and ad hominem attacks—do not defeat predominance, typicality, or adequacy. Nor has Defendant shown that any outcome-determinative conflicts exist among the relevant state laws that would preclude certification of the Multi-State Express Warranty Class.

Further, Rule 23 does not require Plaintiff to prove his claims now, only to show that they can be adjudicated efficiently and fairly for the class as a whole. Plaintiff has met that burden. Courts in this Circuit regularly certify class actions involving uniform misrepresentations—especially where, as here, the Defendant's own internal evidence confirms the materiality of the challenged claims. Defendant's attempt to manufacture complexity or individualized issues is unavailing and contrary to controlling precedent.

**ARGUMENT**

**I. THE MULTI-STATE EXPRESS WARRANTY CLASS SHOULD BE CERTIFIED**

    **A. Defendant Fails to Identify Any Conflict That Would Change the Outcome Under Applicable State Law**

Defendant argues that California's express warranty law is "materially different" from the express warranty laws of the other states in the Multi-State Class because "California requires reliance if there is no contractual [vertical] privity." Opp. at 7 (relying on *Coleman v. Bos. Sci. Corp.*, 2011 WL 381173, at *5 (E.D. Cal. 2011). Defendant, however, fails to show that differences in state express warranty law would lead to different outcomes for class members. That is the dispositive question under *Mazza v. American Honda Motor Co.*, in which the 9th Circuit held that a conflict of law is only "material" if it would affect the result. 666 F.3d 581, 590 (2012). Here, it would not. No state in the proposed Multi-State Class affirmatively requires proof of reliance where a written express warranty is presented directly to consumers, as occurred here. The

alleged conflict is therefore illusory.  Indeed, several courts – including numerous courts in this District – have held that reliance is not required even if the parties are not in privity.  *See*, *e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F.Supp.3d 936, 973 (N.D. Cal. 2014) ("According to Ford, … without reliance, no express warranty claim is viable.  The Court does not agree.").  Judge Seeborg of this District has observed that "California case law generally has abolished the requirement of privity for express warranty claims" and "the earliest California decisions suggesting that privity may not be required for express warranty claims did so for the very reason that an end consumer should be entitled to rely on written representations that are communicated to him or her, regardless of where in the supply chain those representations originated."  *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1048 (N.D. Cal. 2010).

Even if there were differences in state law, a problem only arises if such differences "have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law."  *Id.* at 590-591.  Here, a reliance requirement would not have any effect on the outcome of the trial because Plaintiff has made a showing of reliance, and Defendant has not contested that evidence. *See* Declaration of L. Timothy Fisher in Support of Plaintiff's Reply in Support of Class Certification ("Fisher Reply Decl."), Exh. 1, Chen Dep. at 38:17-20 ("I bought a Levoit air filter and air purifier, actually two systems, and I found out later that they were not HEPA, *which is why I bought the air purifiers and the air filters in the first place*."); *id*. at 46:9-10 ("I decided to buy the air purifier because I understood it to be HEPA, and it was not HEPA.").

Accordingly, application of California law to the multi-state class is appropriate.  *See*, *e.g.*, *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *10 (E.D. Cal. Mar. 29, 2019) (certifying multi-state express warranty class of "purchasers … in California, … Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia"); *Melgar v. Zicam, LLC*, 2016 WL 1267870, at *1, 11 (E.D. Cal. Mar. 31, 2016) (certifying multi-state express warranty class of purchasers "in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia and West Virginia").  As the court in *Martinelli* recognized, this should not even be a topic of discussion: "the express warranty laws of California and the other states" (the same states which

Plaintiff seeks to certify here) "are the same, applying California law to the Multi-State Express Warranty Class claims is not arbitrary or unfair." *Martinelli*, 2019 WL 1429653, at *8.

The cases Defendant cites are distinguishable. For instance, plaintiffs in *Banh v. American Honda Motor Co., Inc.,* sought certification of a *20-state* express warranty class. 2020 WL 4390371, at *28 (C.D. Cal. July 28, 2020). Naturally the court declined to certify such a class because it encompassed states with materially different laws. The other cases Defendant cites are *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc*., 308 F.R.D. 630, 638 (N.D. Cal. 2015), *Astiana v. Kashi Co.,* 291 F.R.D. 493 (S.D. Cal. 2013), and *Darisse v. Nest Labs, Inc*., 2016 WL 4385849, at *12 (N.D. Cal. Aug. 15, 2016). What Defendant neglects to mention is that in both cases the plaintiffs sought certification of a *nationwide class*, not just the limited multi-state class that Plaintiff seeks to certify here, and which have been repeatedly certified by courts in the Circuit.

## II. PLAINTIFF HAS SHOWN THAT MATERIALITY AND RELIANCE ARE COMMON QUESTIONS SUSCEPTIBLE TO COMMON PROOF

### A. Plaintiff Has Offered Common Evidence of Materiality

Defendant argues that "Plaintiff puts forth no common evidence to show the HEPA claim was material or that putative class members relied on the HEPA claim when making their purchase," implying that *proof* of materiality is required at this stage. Opp at 10. Defendant is wrong on the facts and the law.

First, Plaintiff is not required to prove materiality at this stage. Instead, the question is "whether the materiality inquiry is a common question susceptible to common proof." *Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018). In a case like this, "[b]ecause materiality is an objective question based on the reasonable consumer, it is common to the class and 'ideal for certification.'" *Id.*; *see also Astiana*, 291 F.R.D. at 505 ("For the purposes of class certification, it is sufficient that the alleged material misstatement and omission was part of a common advertising scheme to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question."); *Sinatro v. Barilla Am., Inc.*, 2024 WL 2750018, at *8 (N.D. Cal. May 28, 2024) ("Plaintiffs are not required to prove materiality at this stage."). Indeed, "even a definitive rebuttal on the issue of

materiality would not undermine the predominance of questions common to the class." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013). "Thus, in light of *Amgen*, the Court finds more persuasive those cases requiring proof only of a common question of materiality and reliance rather than proof of those issues on the merits at the class certification stage." *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391 at *14 (S.D. Cal. Sept. 28, 2021).

Regardless, Plaintiff has offered ample common evidence of materiality. For one, the fact that air purifier manufacturers (including Defendant) have been bringing NAD complaints against one another for *years* for falsely advertising their products as HEPA is on its face evidence that these companies (including Defendant) know the HEPA claim is material to consumers. *See* Exh. B to Motion for Class Certification, Weir Decl. ¶ 16. The materiality of the HEPA claim is further bolstered by Defendant's repeated use of the term on its packaging and marketing. *See* Exh. 1 to Fisher Decl. ISO Mtn for Class Certification (lay-flat Product packaging designs). Lending even more credence are Defendant's ▮▮▮▮▮▮▮▮▮▮ (produced by Defendant on Saturday May 3 at 9 a.m., nine hours after Plaintiff's deadline to file his Motion for Class Certification), where Defendant's employees ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *See* Exh. 2 to Fisher Reply Decl. Even more recently, Defendant posted an article on its website on June 16, 2025 entitled "The Benefits of HEPA Filters."[1] In that article, Vesync declared that "True HEPA filters are **renowned** for their effectiveness against allergens and pollutants." *Id.* (emphasis added). Defendant also boasted that "HEPA air purifiers have become indispensable in our quest for healthier environments" and that "[k]ey advantages of HEPA filter technology include[s]: … [the] [a]bility to improve overall indoor air quality." *Id.*

Plaintiff's expert Mr. Steven Gaskin also analyzed the survey conducted by Defendant's expert Sarah Butler and concluded that "[b]uying an air purifier that meets the HEPA standard is clearly *one of the most important factors in customers' purchasing decisions*, based upon Ms. Butler's own data and analysis." Gaskin Reply Decl. ¶ 71 (emphasis added); *see also* Weir Reply

---

[1] https://levoit.com/blogs/levoit-blog/benefits-of-hepa

Decl. ¶ 100 ("Contrary to her assertions, Butler's survey of past purchasers actually reveals that the use of the True HEPA Claim is indeed important to consumers when purchasing Levoit air filter products.").

Similarly, in *Dyson, Inc. v. Bissell Homecare, Inc.,* 951 F. Supp. 2d 1009, 1032 (N.D. Ill. 2013), the court found that "no reasonable trier of fact could find other than that the [HEPA statements] were material to the consumers when deciding to purchase the [products]" because Bissell's *own* consumer studies showed that "filtration efficiency was one of the 'key features that a customer [is] interested in." *Id.* Despite the obvious parallels between this action and *Dyson* (both concern HEPA claims made regarding consumer home cleaning products in relatively similar price categories), Defendant attempts to paint *Dyson* as entirely irrelevant because "Plaintiff has presented no evidence … that a reasonable consumer of vacuum cleaners is the same as one for air purifiers" and that materiality was found in *Dyson* due to "defendant's studies showing filtration efficiency was important to consumers." Opp. at 13, n.13. Defendant contends that "[n]o such facts exist here." *Id.* Defendant knows this is untrue because it has produced internal consumer surveys showing precisely what was shown in *Dyson*: filtration efficiency is highly important to consumers. *See* ECF No. 142-4 at Vesync_Chen_00001633 ▅▅▅▅▅▅▅▅▅▅ ECF No. 142-5 at Vesync_Chen_00001659 ▅▅▅▅▅▅▅▅▅▅ These are precisely the types of common evidence of materiality that supported certification in *Dyson*.

Defendant baldly claims that "Plaintiff has no intention" of putting forward "common evidence" that the HEPA claim was material. Opp. at 10. That is strictly false, as demonstrated above; but Defendant also ignores that materiality will also be shown through the conjoint survey proposed by Plaintiff's expert Mr. Gaskin, which will elucidate "whether the [True HEPA] Claim is

---

[2] Defendant only produced these documents after Plaintiff's motion for class certification was filed, despite the fact that they were requested in January of 2024.

economically material to a reasonable person." Exh. B to ECF No. 110, Weir Decl. ¶ 47. Despite Defendant's protestations, surveys demonstrating that consumers are willing to pay more for a product based on the inclusion of a specific attribute or claim (*i.e.*, a price premium conjoint survey) are evidence of materiality. *Willis v. Colgate Palmolive Co.*, 2023 WL 11915708, at *17 (C.D. Cal. Jan. 5, 2023) ("Plaintiff has presented evidence regarding the materiality of the "deeply whiten(s)" statement and that consumers are likely to be misled. … For example, Plaintiff states that Colgate's own study demonstrates that purchasers are willing to pay a price premium over other toothpastes because of the "deeply whitens" labeling claim."). Defendant further chides Plaintiff and his expert Mr. Gaskin for not having conducted his own survey. Opp. at 10. But, Plaintiff "[is] not required to perform customer surveys or empirical research—at least at the class certification stage under the case law." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 1009 (N.D. Cal. 2022). Nor is he required to do so to prove his claims. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) ("Surveys and expert testimony regarding consumer assumptions and expectations may be offered but are not required.").

Because Plaintiff has demonstrated, at a minimum, that materiality of the True HEPA claim is susceptible to common proof, "reliance may be inferred as to the entire class." *See Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010); *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002) ("Thus, [i]t is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.") (internal punctuation and citations omitted).

III. **INDIVIDUALIZED INQUIRIES DO NOT PREDOMINATE BECAUSE WHETHER THE "TRUE HEPA" CLAIM WAS MISLEADING IS A COMMON QUESTION**

A. **Plaintiff Is Not Required to Establish a Uniform Understanding of HEPA**

Next, Defendant argues that "Plaintiff has not shown a likeliness to be deceived under the UCL and FAL because … there is no common understanding as to the meaning of HEPA among consumers." Opp. at 10. That is also wrong.

Numerous courts, including courts in this District, have rejected Defendant's argument that a plaintiff must prove a single uniform understanding of the challenged advertisement to

demonstrate Defendant's liability and, accordingly, establish a damages model consistent with *Comcast*. *See*, *e.g.*, *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017) (granting class certification and ruling that plaintiffs "ha[ve] no burden to establish that there is a uniform understanding among putative class members as to the meaning of" the Challenged Representation, "or that all or nearly all of [the class members] shared any specific belief."); *In re JUUL Labs, Inc.,* 609 F. Supp. 3d at 995 (holding that "plaintiffs do not have the 'burden to establish that there is a uniform understanding among putative class members as to the meaning of [the challenged advertisements], or that all or nearly all of them shared any specific belief'"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) (noting that the "alleged misrepresentations were made ... to the entire class" and that "the standard requires only that the Court find there is a probability that reasonable consumers could be misled, *not that they all believed 'Made From Real Ginger' means the same thing*") (emphasis added); *see also Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at *15 (C.D. Cal. May 6, 2022) ("However, defendants "point[ ] to no controlling authority showing that a plaintiff must establish at the class certification stage that consumers have a uniform interpretation of the term that gives rise to the alleged deception[,]" and "[c]ourts ... routinely hold to the contrary."); *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, at *15 (S.D. Cal. Mar. 8, 2021) ("Plaintiffs' damages model need not isolate and test the various possible interpretations of the term 'nutritious.'"). To be sure, "Defendant's argument amounts to a contention that [Plaintiff's] damages model must test *Defendant's* theory of the case—but *Comcast* requires no such thing." *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052, at *21 (C.D. Cal. Apr. 4, 2023) (granting class certification, reasoning that "because the damages model assumes Plaintiffs' only theory of liability, it inevitably tests the price premium of *Plaintiffs'* theory") (emphasis in the original).

Defendant lobs a volley of arguments that neither Plaintiff nor any class members had a "common" understanding of True HEPA. *See, e.g.,* Opp. at 10-12. But there *is* a common understanding that Defendant's espouses on its website: "True HEPA filters are *renowned* for their

effectiveness against allergens and pollutants" and "significantly improve indoor air."[3] Defendant hits the nail on the head: HEPA filters are filters that are highly effective at purifying the air. That is the general consensus. Consumers may vary in the words they use to describe their understanding, but there is a consensus among consumers that HEPA is "very good at purification." Defendant wrongly implies that the common understanding of HEPA must be tied to knowledge about specific standards or filtration efficiencies, and dings Plaintiff for only offering up his lay understanding of the term: "Plaintiff thought HEPA meant that 'it is the most effective in purifying or cleaning air' … [h]e did not think HEPA referred to a specific filtration standard being met, and was not aware of what standard must be met to be considered HEPA." Opp. at 12. But this is precisely Plaintiff's point. The average consumer may not know the technicalities of the HEPA standard, but they do know that it means the filter is premium and highly effective. TAC ¶ 31. Defendant's survey bares this out. In imposing an overwrought and highly technical definition of HEPA, the Butler survey merely proves what Plaintiff has alleged all along – consumers are unfamiliar with the technicalities. *See* ECF No. 129, Butler Declaration ¶¶ 86-88. In fact, Ms. Butler's survey "reflect[s] a layperson's understanding that HEPA filters provide superior air purification." Gaskin Reply Decl. ¶ 77; *see also* Weir Reply Decl. ¶ 102 ("Individual interpretation of the Claim is irrelevant to the determination of class-wide price premium damages. Individual interpretations of the Claim do not change the price paid by an individual."). In short, the Butler survey does not disprove the existence of a common understanding. Instead, it merely shows that consumers are not HEPA experts and its results are not relevant to this action.

**B.     Whether the Products Were Mislabeled as "True HEPA" Is a Common Question That Can Be Answered With Common Proof**

Defendant asserts that individual issues predominate because each and every filter must be tested to show whether or not it was HEPA-grade at purchase. Opp. at 19. Defendant's argument fails for multiple reasons.

---

[3] https://levoit.com/blogs/levoit-blog/benefits-of-hepa (emphasis added)

First, the testing commissioned by Plaintiff, Defendant, and Dyson is common evidence that can be evaluated by the jury on a classwide basis.[4] This is because, by Defendant's own admission, the design of the Air Purifiers and filters did not change over the Class Period, and Defendant has not produced any evidence that its filters varied in their materials, construction, or design over the Class Period either. Exh. 3 to the Fisher Reply Decl. (Defendant's Response to Interrogatory No. 19). Because the Products were uniformly manufactured with the same components and materials, testing of each and every filter is not required and the testing commissioned by the parties and by Dyson constitutes common evidence that applies to the class as a whole.[5] Courts routinely certify classes in product mislabeling cases based on representative testing and common mislabeling practices. *See Fitzhenry-Russell*, 326 F.R.D. at 612 (certifying class despite product variability because the misrepresentation was the same); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1110 (C.D. Cal. 2015) (common issues predominated despite differing consumer experiences with product efficacy).

Second, the focus of this case is Defendant's misrepresentation, made *at the point of sale*, that the Products were HEPA grade, not how the Products performed post-purchase. *See* TAC ¶ 2. Accordingly, the peregrinations Defendant and Dr. Siegel take into post-purchase performance and environmental variability are entirely irrelevant to the Court's analysis and have no bearing on damages. *See* Opp. at 20-21; ECF No. 134, Siegel Report ¶¶ 49-50. Rather, what is relevant is whether the Products were truthfully labeled as "HEPA" when they were sold.

Defendant also argues that individual issues predominate because Plaintiff's expert Dr. Vijayakumar opined that 100% of filters must be tested to qualify as HEPA, which Defendant takes to mean that every consumer must have their air purifier tested to prove out their injury. Opp. at 19. Defendant has it backwards. As Dr. Vijayakumar noted, under the IEST standard, a HEPA

---

[4] This evidence will show that Defendant's Products did not meet the industry standard it tested under, nor did they meet its own (disputed) definition of HEPA, i.e., 99.97% at 0.3 microns.

[5] It should be noted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. 4 to the Fisher Reply Decl., Siegel Dep. 73:24-74:2 ("Q. [I]n your view, is a single test sufficient to ensure ongoing compliance [with the HEPA standards]? A. In general, no.").

filter is one that *has been tested* and shown to meet the efficiency requirements of the standard. Exh. A to ECF No. 110, Vijayakumar Decl. ¶ 13. Defendant has claimed that its Products "were manufactured in accordance with IEST RP CC001.6 Class H" (ECF No. 25 at 2 n.1), and Dr. Siegel testified at his deposition that Vesync tested its fully assembled filters pursuant to IEST 1.6 Type H. Exh. 4 to the Fisher Reply Decl., Siegel Dep. at 64:7-14. Under IEST 1.6, a Type H HEPA filter is "a filter that has been efficiency tested." ECF No. 24-2, Exh. 1, at 14. Individual testing is therefore incorporated into the definition of a Type H HEPA filter. Thus, any filter that was not tested was, by definition, out of compliance with the IEST Type H definition and improperly labeled as HEPA. In essence, even if a filter passes a HEPA test post-purchase, the very fact that it was labeled as "HEPA" without such testing is in and of itself a false claim. An illustrative example would be someone who claims to be an attorney but has not passed the bar exam. Even if they could adequately represent someone in court or theoretically pass the bar, they cannot market themselves as an attorney until they have passed the requisite test.

       Defendant's expert Dr. Siegel argues that imposition of a 100% testing requirement for HEPA filters would be too financially burdensome. ECF No. 134 ¶ 32 ("While I agree that critical applications require individual filter testing … there are several reasons why 100% testing is not feasible for consumer applications. … The first is [that] …The cost of individually testing and tracking individual filters for room air cleaners would make such devices unaffordable."). This may be true, but Defendant chose to market its air purifiers as HEPA. If it did not want to abide by the HEPA standards, or if the cost of adhering to the HEPA standard by conducting 100% testing is too high, then Defendant can simply stop marketing its Products as HEPA. Indeed, as Dr. Siegel himself notes, there are other filtration standards out there that do not require 100% testing. *Id*. ¶ 32 ("Many manufacturers use filter and air cleaner standards (e.g., ASHRAE 52.2, AHAM AC-1), which provide for testing a sample of units and relying on those results for marketing materials."). Defendant could test its Products under more lenient standards and market them accordingly. But it does not because it understands the commercial value of the "HEPA" claim.

## IV. PLAINTIFF HAS PRESENTED A VIABLE DAMAGES MODEL

Defendant asserts that Plaintiff's proposed conjoint survey "does not match [his] liability theory." Opp. at 15. Defendant misrepresents Plaintiff's theory of liability by reframing it as a dispute over marginal differences in filtration performance. But that is not this case. The central issue is whether Defendant's uniform "True HEPA" representation was false or misleading. TAC ¶ 65-66. Thus, Defendant's HEPA claim is binary: the filters either satisfied the HEPA standard, or they did not. The theory of harm turns on the economic value consumers placed on that representation—not on fractional differences in filtration efficiency. That value is quantified using a well-established method: conjoint analysis.

Courts have long accepted conjoint analysis as a reliable means of isolating the economic value consumers attribute to specific product features. Here, Mr. Gaskin's proposed survey measures how much more consumers would pay for a Levoit air purifier labeled "True HEPA" compared to one that lacks that representation. This directly captures the price premium associated with the challenged claim. As the court in *Johnson v. Nissan N. Am., Inc.*, 2022 WL 2869528 at *9 (N.D. Cal. July 21, 2022) explained, "[t]he point of the conjoint analysis is to take into account a multitude of factors then determine the value difference between the product with and without the revealed information, all else held equal."

Plaintiff's expert economist, Colin Weir, confirms that his damages model fully accounts for price variability. He testified that the survey was designed to incorporate "a range of real-world market-based prices," and that the resulting price premium could be applied to transaction-level sales data that includes discounts, retailer differences, and promotional pricing. Exh. 5 to the Fisher Reply Decl., Weir Depo at 28:23–29:17, 191:4–12. Numerous courts, including in this District, have held that conjoint analyses can adequately account for supply-side factors so long as they reflect real-world prices and quantities. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105–08 (N.D. Cal. 2018) (collecting cases, certifying class, and specifically accepting Mr. Gaskin's proposed methodology, noting that "courts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia"). Mr. Weir's damages model satisfies both criteria.

Defendant's assertion that the damages model fails because "it is nearly impossible to determine the threshold issue of how much each class member paid" misunderstands the purpose of conjoint analysis. Opp. at 17. The analysis is designed precisely to calculate the incremental value attributable to a product claim across a spectrum of prices. *Hadley*, 324 F. Supp. 3d at 1107 (holding that objections to "real-world" accuracy of conjoint go to weight, not admissibility).

Defendant further contends that the proper comparator in the survey should have been a filter capturing at least 99.97% of 0.3-micron particles versus one that does not. But that argument misunderstands both Plaintiff's theory and how conjoint works. The relevant comparison is not between underlying technical performance levels—which consumers neither understand nor measure—but between products labeled as "True HEPA" and those that are not. The claim is categorical, not quantitative. Courts routinely approve conjoint surveys that isolate the value of labels like "heart healthy," "100% natural," or "organic," even where consumers may lack scientific understanding of the terms. *See, e.g.*, *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015); *Hadley*, 324 F. Supp. 3d at 1112; *Martinelli,* 2019 WL 1429653, at *6.

Defendant's reliance on *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) and *Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) is unavailing. In both cases, the plaintiffs lacked a viable, common method for calculating damages. In *Weiner*, the expert could not account for pricing variation or show a uniform price premium. 2010 WL 3119452, at *9. In *Red*, damages required highly individualized inquiries. 2012 WL 8019257, at *11. By contrast, Plaintiff here offers a reliable, court-validated methodology that isolates the price premium attributable to a single, uniform misrepresentation—"True HEPA"— across all class members, using a survey tied directly to real-world prices and supported by transaction-level data. Exh. 5 to the Fisher Reply Decl., Weir Depo at 28:23–29:17, 191:4–12; *see also* Gaskin Reply Declaration.

To the extent Defendant argues that variations in individual filter performance or consumer use affect injury, those arguments go to restitution amounts, not classwide impact. Courts have consistently held that variation in the degree of harm does not defeat predominance where a

common method exists to quantify the price premium attributable to a uniform misrepresentation. *See In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919, 1031–32 (C.D. Cal. 2015).

Accordingly, Plaintiff's damages model aligns precisely with the theory of liability and satisfies *Comcast*. It isolates the premium paid for the "True HEPA" claim, incorporates real-world market conditions, and uses a proven economic method grounded in expert testimony and accepted by courts nationwide.

## V. THE REPLACEMENT FILTERS ARE NOT EXCLUDED FROM THE PUTATIVE CLASSES

Defendant contends that "Plaintiff's proposed classes cannot include purchasers of replacement filters because Mr. Gaskin does not propose any method for calculating a price premium for them." Opp. at 18. But this objection ignores both the pleadings and the record. The Third Amended Complaint expressly includes *replacement filters* within the scope of the proposed class definitions. *See* TAC ¶ 67 (defining "Class Products" to include both Levoit air purifiers and replacement filters).

Given the identical "True HEPA" claims at issue between the Air Purifiers and the replacement filters, Mr. Gaskin was not initially asked to specifically address replacement filters in his proposed survey. However, Mr. Gaskin has now clarified that replacement filters can be easily incorporated into a separate survey employing the same methodologies proposed in his opening report. Gaskin Reply Declaration ¶ 130 ("Actually, there would be another similar survey for replacement filters, and I will design and execute this survey when asked to do so by Plaintiffs' counsel. It will utilize the same choice-based conjoint methodology, survey design, and analysis, but it will have different Class Products, competitors, and attributes appropriate to the air filter category."). Plaintiff has even agreed to reopen Mr. Gaskin's deposition to the extent that Defendant requires further inquiry into a replacement filter conjoint survey. As such, there is no basis to exclude the replacement filters from the class.

## VI. PLAINTIFF IS AN ADEQUATE PROPOSED CLASS REPRESENTATIVE

Next, Defendant argues that Plaintiff is not an adequate proposed class representative because (1) Plaintiff "is dissimilar from other putative class members because HEPA was not a

significant purchase driver for the majority of consumers" (opp. at 22); (2) Plaintiff "relied" on a New York Times article in making his purchases (*id.*); (3) Plaintiff "still uses the Product today" (*id.* at 23); and (4) Plaintiff does not know the technical definition of HEPA (*id.* at 24). All of these arguments fail.

First, as discussed above, the question of materiality should not be resolved at this stage, but regardless, Plaintiff has offered ample evidence that the HEPA claim *was* a significant purchase driver for consumers, including himself. *See supra* Section II.A.

Second, the fact that Plaintiff found his way to the Levoit air purifier through a New York Times article is irrelevant. As Plaintiff himself stated, the reason he was induced into purchasing the Products was because of the "True HEPA" claims. *See* ECF No. 116, Chen Declaration ¶ 5 ("I made these air purifier and replacement filter purchases based on Defendant's promises on the product label that the products had genuine HEPA filters."). Moreover, the survey conducted by Ms. Butler showed that the number one reason people purchased a Levoit air purifier was "reviews/recommendations." *See* ECF No. 129, Butler Report ¶ 75 and Table 7. Thus, even if Defendant's characterization of Mr. Chen's purchase was accurate (and it is not), it was typical of many other Levoit air purifier purchasers.

Third, that Plaintiff still uses the Products today (years outside of the return window) says nothing about the economic loss suffered when he made his purchase. As Plaintiff states, had he known the HEPA claim was false he would not have purchased the Air Purifiers. *Id.* ¶ 4. Crucially, Defendant offers no evidence, nor can it, that Plaintiff made any of his purchases *after* learning about the falsity of Defendant's True HEPA claims.

Last, Plaintiff's non-technical understanding of HEPA does not make him an inadequate representative or uncommon consumer. Indeed, Plaintiff's lay-understanding of HEPA is what makes him an adequate and typical class member. *See supra* Section III.A.

## VII. DEFENDANT'S ARBITRATION CONCERNS ARE EASILY HANDLED

Finally, Defendant makes a passing argument regarding arbitration for purchasers of Products on its website. That argument is easily dismissed. To the extent any putative class members may be subject to arbitration, Defendant is in possession of their identifying information,

and they can be easily excluded from any certified class. Defendant's argument regarding arbitration with Target are nonsensical and unavailing. This dispute is not between consumers and Target; it is between consumers and Defendant Vesync. Any arbitration agreement Target may have is unenforceable here.

## CONCLUSION

Plaintiff respectfully requests that the Court grant his motion and certify the proposed Classes under Rule 23(b)(3).

Dated: July 25, 2025　　　　　　　　**BURSOR & FISHER, P.A**.

　　　　　　　　　　　　　　　　　　By:   /s/ *L. Timothy Fisher*
　　　　　　　　　　　　　　　　　　　　　　L. Timothy Fisher

　　　　　　　　　　　　　　　　　　L. Timothy Fisher (State Bar No. 191626)
　　　　　　　　　　　　　　　　　　Luke Sironski-White (State Bar No. 348441)
　　　　　　　　　　　　　　　　　　1990 North California Blvd., 9th Floor
　　　　　　　　　　　　　　　　　　Walnut Creek, CA 94596
　　　　　　　　　　　　　　　　　　Telephone: (925) 300-4455
　　　　　　　　　　　　　　　　　　Facsimile: (925) 407-2700
　　　　　　　　　　　　　　　　　　E-mail: ltfisher@bursor.com
　　　　　　　　　　　　　　　　　　　　　　　lsironski@bursor.com

　　　　　　　　　　　　　　　　　　**SINDERBRAND LAW GROUP, P.C.**
　　　　　　　　　　　　　　　　　　Greg Sinderbrand (State Bar No. 179586)
　　　　　　　　　　　　　　　　　　2829 Townsgate Road, Suite 100
　　　　　　　　　　　　　　　　　　Westlake Village, CA 91361
　　　　　　　　　　　　　　　　　　Telephone: (818) 370-3912
　　　　　　　　　　　　　　　　　　E-mail: greg@sinderbrandlaw.com

　　　　　　　　　　　　　　　　　　**GEORGE FELDMAN MCDONALD, PLLC**
　　　　　　　　　　　　　　　　　　Lori G. Feldman
　　　　　　　　　　　　　　　　　　Janine L. Pollack
　　　　　　　　　　　　　　　　　　745 Fifth Avenue, Suite 500
　　　　　　　　　　　　　　　　　　New York, NY 10151
　　　　　　　　　　　　　　　　　　Phone: (917) 983-2707
　　　　　　　　　　　　　　　　　　Fax: (888) 421-4173
　　　　　　　　　　　　　　　　　　Email : lfeldman@4-justice.com
　　　　　　　　　　　　　　　　　　Email: jpollack@4-justice.com
　　　　　　　　　　　　　　　　　　Email : Eservice@4-justice.com

　　　　　　　　　　　　　　　　　　**GEORGE FELDMAN MCDONALD, PLLC**
　　　　　　　　　　　　　　　　　　David J. George
　　　　　　　　　　　　　　　　　　Brittany Sackrin
　　　　　　　　　　　　　　　　　　9897 Lake Worth Road, Suite 302
　　　　　　　　　　　　　　　　　　Lake Worth, Florida 33467

| | |
|---|---|
| 1 | Phone: (561) 232-6002 |
| 2 | Fax: (888) 421-4173<br>Email: DGeorge@4-justice.com |
| 3 | Email: BSackrin@4-justice.com<br>Email: EService@4-justice.com |
| 4 | **TAUS, CEBULASH & LANDAU, LLP** |
| 5 | Miles Greaves<br>Archana Tamoshunas |
| 6 | 123 William Street<br>Suite 1900a |
| 7 | New York, NY 10038<br>Telephone: (646) 873-7654 |
| 8 | Facsimile: (212) 931-0703<br>mgreaves@tcllaw.com |
| 9 | atamoshunas@tcllaw.com |
| 10 | **MIGLIACCIO A]ND RATHOD LLP**<br>Jason Samual Rathod |
| 11 | Nicholas A. Migliaccio<br>412 H Street N.E. |
| 12 | Washington, DC 20002<br>(202) 470-3520 |
| 13 | jrathod@classlawdc.com |
| 14 | *Attorneys for Plaintiff and the Putative Class* |